

**U. S. Department of Justice**

*United States Attorney*
*Northern District of Iowa*

*111 Seventh Avenue SE*  *319-363-6333*
*Box 1*  *319-363-1990 (fax)*
*Cedar Rapids, IA 52401-*  *319-286-9258 (tty)*
*2101*

March 24, 2024

Mr. Christopher J Nathan
Assistant Federal Public Defender
222 Third Avenue SE
Suite 290
Cedar Rapids, IA 52401

Re:   *United States v. Matthew David Keirans, No. 23-CR-1020*

Dear Mr. Nathan:

This letter will serve as a SECOND REVISED memorandum of a proposed plea agreement between the United States Attorney's Office for the Northern District of Iowa and Matthew David Keirans, defendant. All references to the "United States" or "government" in this proposed plea agreement refer to the United States Attorney's Office for the Northern District of Iowa and to no other governmental entity. This plea offer will expire on March 29, 2024, unless otherwise extended by the government.

## CHARGES AND PENALTIES

1. _____ Defendant will plead guilty to Counts 5 and 7 of the Indictment filed on December 12, 2023. Count 5 charges False Statement to a National Credit Union Administration Insured Institution, in violation of 18 U.S.C. § 1014. Count 7 charges Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

2. _____ Defendant understands that Count 5 of the Indictment is punishable by the following maximum penalties: (1) not more than 30 years' imprisonment without the possibility of parole; (2) a fine of not more than $1 million; (3) a mandatory special assessment of $100; and (4) a term of supervised release of up to 5 years.

3. _____ Defendant understands that Count 7 of the Indictment is punishable by the following penalties: (1) a mandatory minimum sentence of two years of imprisonment without the possibility of parole; (2) a fine of not more than

Government
Exhibit
1
Case
23-CR-1020
Plea Hrg

$250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of up to one year. The two-year prison sentence imposed on Count 7 must run consecutively to any prison sentence imposed on Count 5.

4. \_\_\_\_ Defendant may be subject to the alternative fine provisions of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on defendant for each count is the greatest of the following amounts: (1) twice the gross gain to defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offense.

5. \_\_\_\_ Defendant understands restitution and a term of supervised release following incarceration may be imposed in addition to any other sentence. Defendant further acknowledges that, if defendant violates, at any time, any condition of supervised release, defendant could be returned to prison for the full term of supervised release and the Court is not required to grant credit for any amount of time defendant may have successfully completed on supervised release. Defendant also understands the U.S. Sentencing Guidelines will provide advisory guidance to the Court in determining a sentence in this case.

6. \_\_\_\_ At the time the guilty plea is entered, defendant will admit that defendant is guilty of the charges specified in Paragraph 1 of this agreement. After sentencing, the government will move for dismissal of any remaining counts. The U.S. Attorney's Office for this District will file no additional Title 18 fraud- and identity-theft-related criminal charges based solely upon information now in our possession. If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution.

7. \_\_\_\_ Defendant understands and agrees defendant has the absolute right to plead guilty before a United States District Court Judge. However, if convenient to the Court, defendant agrees to waive and give up this right and to plead guilty before a United States Magistrate Judge. Defendant understands defendant will not be found guilty unless the United States District Court Judge accepts the plea of guilty or adopts a recommendation of the Magistrate Judge to accept such plea. Defendant agrees to execute the attached consent to proceed before the United States Magistrate Judge.

## NON-COOPERATION

8. ⟨initials⟩ Defendant understands and concedes that, although defendant is not required by the terms of this plea agreement to testify before any Court or grand jury, the United States may take the prescribed actions under 18 U.S.C. § 6001, *et. seq.* or any other applicable provision of law to compel defendant's testimony. Defendant agrees that, if defendant refuses to testify after being granted immunity and ordered by the Court to testify, defendant may be found to be in contempt of court and may be punished in accordance with Federal Rule of Criminal Procedure 42 and 18 U.S.C. §§ 401 and 402. Further, the United States Attorney's Office shall be permitted to pursue any other action available to require defendant's testimony or punish defendant's refusal to testify subsequent to any order requiring defendant to testify. Defendant understands and agrees that, because defendant is not cooperating with the government, the United States will not recommend any decrease under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

## STIPULATION OF FACTS

9. ⟨initials⟩ By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees these facts are true and may be used to establish a factual basis for defendant's guilty plea, sentence, and any forfeiture. Defendant has been advised by defendant's attorney of defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agrees this stipulation may be used against defendant at any time in any proceeding should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court. Defendant agrees that the stipulation below is a summary of the facts against defendant and does not constitute all of the facts the government would be able to prove at trial and may be able to prove to the Court in accordance with this agreement.

### Introduction

⟨initials⟩ A. Defendant was born in January 1966, and he was raised by his adoptive parents in California. Defendant has one brother, whom defendant's parents also adopted. Defendant's adoptive parents died in 1986 and 2000, respectively. Defendant's true social security number ends in 1824.

B. W.W. was born in May 1968. W.W. was born in Kentucky. W.W.'s true social security number ends in 1061.

### Identity Theft-The Early Years

C. In about 1988, defendant and W.W. were working together in Albuquerque, New Mexico. Defendant then assumed the identity of W.W.

D. For the next three decades, and until at least July 17, 2023, defendant used W.W.'s identity in every aspect of his life. Defendant obtained employment, insurance, a social security number, driver's licenses, titles, loans, and credit using W.W.'s identity. Defendant also paid taxes and obtained credit under W.W.'s identity. After 1988, there is no record of defendant ever using his own name, date of birth, or social security number.

E. In December 1990, for example, defendant obtained a fraudulent Colorado identification card bearing W.W.'s name and date of birth. Defendant obtained a job at a fast-food restaurant in W.W.'s name and also opened a Colorado bank account under W.W.'s name and date of birth.

F. In September 1991, defendant bought a vehicle for $600 with two $300 checks in W.W.'s name that bounced. Defendant absconded with the stolen vehicle to Idaho, where the car broke down and he abandoned it. Defendant made two automatic teller machine (ATM) withdrawals, drawn on the Colorado bank, to withdraw the remaining funds in his account, and left Idaho. As a result of defendant's criminal conduct and identity theft, an arrest warrant was issued in W.W.'s name in Colorado.

G. In about 1994, defendant married his wife. Defendant also had a child in Oregon bearing W.W.'s last name.

H. On or about June 13, 2012, defendant fraudulently obtained a certified birth certificate from the State of Kentucky in W.W.'s identity.

### The Iowa City Hospital

I. In about 2013, again using W.W.'s identity, defendant began working at a hospital in Iowa City, Iowa. Defendant was a high-level administrator in the hospital's information technology department. At all relevant times, the hospital permitted defendant to work remotely from his home in eastern Wisconsin.

J. Defendant earned no less than $700,000 from the Iowa City hospital over a ten-year period and, at the time his employment ended in 2023, defendant was earning over $100,000 a year in his high-level position. In order to obtain employment at the Iowa City hospital, defendant provided the hospital with false identification documents during the hiring process, including a fictitious I-9 form, social security number, date of birth, and identification documents that were all in W.W.'s name. Defendant passed the hospital's background check.

K. Defendant's access to, and roles in, the system architecture of the Iowa City hospital's computer infrastructure "was the highest it could be" and defendant "was the key administrator of critical systems."

### The Credit Unions and the Loans

L. CU-1 is a credit union that is headquartered in Dubuque, Dubuque County, Iowa, within the Northern District of Iowa. At all relevant times, the National Credit Union Administration has insured the deposits of CU-1.

M. CU-2 is a credit union that is headquartered in Waterloo, Black Hawk County, Iowa, within the Northern District of Iowa. At all relevant times, the National Credit Union Administration has insured the deposits of CU-2.

N. Between August 2016 and May 2022, defendant repeatedly obtained vehicle and personal loans from CU-1 and CU-2 using W.W.'s name, social security number, and date of birth. Defendant did so without lawful authority. Defendant knew that W.W. was an actual person and that the social security number and date of birth belonged to W.W. Defendant used W.W.'s name, social security number, and date

of birth in connection with applications for the loans identified in the following chart:

| Approximate Date | Credit Union | Last Four Digits of Loan/ Application Number | Loan Amount | Loan Type |
|---|---|---|---|---|
| March 10, 2014 | CU-2 | 3257 | $37,038.43 | Vehicle |
| June 12, 2014 | CU-2 | 3240 | $41,019.87 | Vehicle |
| January 26, 2015 | CU-2 | 9349 | $44,280.00 | Vehicle |
| August 19, 2016 | CU-1 | 6122 | $25,400.00 | Vehicle |
| July 3, 2018 | CU-1 | 4948 | $32,404.00 | Vehicle |
| July 18, 2018 | CU-1 | 5639 | $27,029.87 | Vehicle |
| October 23, 2019 | CU-1 | 5688 | $15,771.77 | Personal |
| May 23, 2022 | CU-1 | 8848 | $27,182.24 | Vehicle |

### W.W.'s Arrest, Prosecution, Conviction, and Incarceration

O. On August 20, 2019, W.W. entered the branch of a national bank in Los Angeles, California. At the time, W.W. was a homeless transient. Defendant was living in Hartland, Wisconsin, and maintained an account at Bank-1 in W.W.'s identity.

P. Upon entering the bank branch in Los Angeles, W.W. approached an assistant branch manager's window and told the assistant branch manager that he had recently discovered that someone was using his credit and had accumulated large amounts of debt. W.W. stated to the assistant branch manager he did not want to pay the debt and wished to close his accounts at the bank. Specifically, W.W. stated

unknown suspects had used his name a social security number, causing $130,000 in debt, and requested to know his full account numbers so he could close them. W.W. provided the assistant branch manager with his true social security card, as well as an authentic State of California identification card. W.W.'s name and social security number matched the name and social security number associated with the bank accounts.

Q. Due to the large amounts of U.S. currency in the bank accounts, the assistant branch manager asked W.W. a series of security questions associated with the accounts, including details about the location and date of the opening of the accounts. When W.W. was unable to answer the security questions correctly, and noting the address associated in the customer profile was in Wisconsin, the assistant branch manager called the phone number associated with the accounts, which was defendant's phone number. Defendant answered the phone and stated there was no one in California that should have access ot his bank account. Defendant then correctly answered the security questions. The assistant branch manager then contacted the Los Angeles Police Department (LAPD), which dispatched officers to the bank branch to investigate.

R. LAPD officers spoke with defendant on the telephone. Defendant stated he was living in Wisconsin and did not give anyone in California access to his bank accounts. Defendant then faxed to the LAPD officers a copy of a social security card, a Wisconsin driver's license, and the Kentucky birth certificate. As a result, LAPD officers arrested defendant or a violation of California Penal Code § 530.5 (Unauthorized Use of Personal Information), a felony under California law. LAPD booked W.W., and a state court judge remanded W.W. to the Los Angeles County Jail without bail.

S. On August 21, 2019, a LAPD officer called defendant, and defendant confirmed his statements of August 20, 2019. When the officer questioned defendant why one of the three identifying documents that he had faxed to LAPD had a different middle name than the other two documents, defendant falsely stated "he sometimes goes by the middle name of [Da.], but his name is [W.Do.W.]. Defendant then emailed the LAPD officer a color copy of the Kentucky birth certificate, which was in the name W.Do.W. The LAPD officer

forwarded the case to the Los Angeles County District Attorney's
Office (LADA) for review.

T. On October 31, 2019, the LADA filed a two-count felony information
against W.W. The LADA filed the information against W.W. in the
name, "Matthew Kierans [sic]," in the Superior Court for the County
of Los Angeles, California. Count 1 of the information alleged
"Kierans" committed the felony crime of identity theft, in violation of
California Penal Code § 530.5(a), when he "did willfully and
unlawfully obtain personal identifying information of [W.W.] and
used that information for an unlawful purpose and to obtain, and
attempt to obtain credit, goods, services, real property, and medical
information without the consent of [W.W.]." Count 2 of the
information alleged "Kierans" committed the felony crime of false
impersonation, in violation of California Penal Code § 529(a)(3), when
he "did unlawfully and falsely personate [W.W.] in a private and
official capacity and in such assumed character did an act whereby, if
done by the person falsely personated, he or she might, in any event,
become liable to a suit or prosecution, and to pay a sum of money, and
to incur a charge, forfeiture and penalty, and whereby a benefit might
accrue to the defendant, and to another." Count 1 and Count 2 were
each punishable by no less than 16 months, and as much as three
years, of incarceration in a county jail.

U. On December 23, 2019, W.W.'s state public defender informed the
Court that she doubted the mental competency of "Kierans" to stand
trial. Throughout the proceedings, W.W. insisted he was W.W. and
not "Kierans." On February 10, 2020, after receiving a report of a
doctor, a California state court judge found W.W. was not mentally
competent to stand trial and ordered W.W. to a publicly funded
California mental hospital so that he could be restored to competency.
The state court also ordered W.W. to receive psychotropic medication.
On October 20, 2020, after a number of delays due to bedspace and
COVID-19 issues, W.W. was transported from the jail to the hospital.

V. While defendant was in the jail and the hospital, defendant contacted
the LAPD and LADA numerous times requesting updates on
"Kierans's" criminal case. For example, on March 18, 2020,
defendant emailed an assistant district attorney and falsely stated:

> I am [W.W.], we spoke before regarding this case. I am
> the person who had their ID compromised. I have left
> several voice mails at your office trying to find out was is
> happening with the case. Can you call me at 502-XXX-
> XXXX and let me know the status of the case. Thank you.

The assistant district attorney responded that [W.W.] had been
deemed incompetent, and the case was suspended or tolled until he
regained competency, and with the pandemic and the process, it was
unclear how long that would take.

W. On April 20, 2020, defendant wrote an email to the assistant district
attorney, in which defendant asked the assistant district attorney to
"represent my concerns" with the delay in the criminal proceedings.

X. On May 13, 2020, defendant wrote an email to the assistant district
attorney and asked, "So, is this the process going forward? Court
every 2 months to determine competence?" The assistant district
attorney responded, "Yes, until he regains competency." Defendant
responded, "This is assuming he does."

Y. On March 17, 2021, W.W. was convicted of the felony charges in the
information. W.W. pled "no contest" to both charges in exchange for a
time-served sentence and immediate release from custody. At his
plea and sentencing hearing, the state judge referred to W.W. by his
true name, W.W., throughout the proceedings, and the court reporter
captioned the transcript with W.W. as the name of the defendant in
the case. The court sentenced W.W. to two years of imprisonment in
the county jail, with credit for time served in the jail and the mental
hospital. W.W. received credit for a total of 1,003 days in custody
(428 actual credit in county jail, 428 days of good time credit, and 147
days credit for time spent in the hospital). The court also ordered
W.W. to pay $400 in fines and special assessments. On May 11, 2021,
the court entered a further order that W.W. "use only their true
name, Matthew Keirans, and to not use [W.W.]"

Z. W.W. spent 428 days in jail, and 147 days in a mental hospital,
following his arrest on August 20, 2019.

<u>Other False Reports</u>

AA. After his release from jail and hospital, W.W. made numerous attempts to regain his identity. For his part, defendant persisted in the fiction that W.W. was Matthew Keirans, and defendant was W.W. and repeatedly made false reports and statements to law enforcement officials in Wisconsin and California.

BB. In June 2021, the State of California began an attempt to collect costs incurred at the mental hospital from defendant. Defendant emailed a representative of the State of California, "I was the victim of identity theft and fraud approx. 3 years ago." Defendant copied an LAPD officer and a LADA assistant district attorney on the email.

CC. In August 2021, W.W. contacted the local police department where defendant was residing, the Village of Hartland (Wisconsin) Police Department ("Hartland PD"). W.W. complained that defendant had stolen W.W.'s identity.

DD. On August 21, 2021, after learning of the Hartland PD's investigation, defendant wrote an LAPD detective:

> The person who was convicted of stealing my ID and then attempting to alter my bank accounts, sent the below attached email to the Hartland PD, the town where I live. I asked the officer here to contact the DA out there regarding this, but because the case is closed, understandably there is nothing that office can do. I am emailing this to you more for informational purposes, but I am concerned that he now knows approximately where I live.

EE. On August 26, 2021, defendant filed a complaint with the Hartland PD, falsely alleging that W.W. had stolen defendant's identity.

FF. In September 2022, W.W. filed a series of customer disputes in an attempt to clear his credit report of defendant's fraudulent activities.

GG. On September 20, 2022, defendant filed a second identity theft complaint with the Hartland PD. Defendant "stated Matthew Keirans was sent to a mental facility in which he spent two years and

then was released." Defendant stated "someone was attempting to use his ID and information to try and defraud him on his Experian Credit Report." Defendant also stated "the suspect, who he identified as a previous suspect when his ID was compromised, Matthew Keirans, had attempted to dispute charges on his bank and auto accounts." Defendant "requested this incident be forward[ed] to the Los Angeles Police Department where Matthew Keirans resides." Defendant was complaining that Matthew Keirans was making disputes on banking and auto policies and "also attempting to change his address on his Experian Credit Report" but confirmed "no accounts were accessed, and all the disputed charges were confirmed as legitimate by the businesses" and defendant "is not out any money at this time." Defendant said W.W. (whom defendant referred to as "Kierans") "was homeless during that last incident in which he was prosecuted but was now frequenting a "Drop-In Center" for homeless people." Defendant also provided a Hartland PD officer with prior e-mail correspondence with LAPD and LADA. On September 21, 2022, defendant submitted a false and fraudulent notarized statement in support of his false claim that W.W. had stolen defendant's identity.

HH. Contemporaneously, defendant emailed a LADA assistant district attorney and complained that W.W. was living in a homeless shelter and "in the last 2 days he has filed 30 disputes with information on my credit report and I just spend the last 2hrs clearing all that up. I need some advice on what steps to take at this point." Defendant told the assistant district attorney that he had called the Hartland PD "and they are going to start an ID theft report. When I spoke to LA County . . . they asked me if there was any court order he would be violating by doing this, restraining etc. Is that something you can tell me." At the time, W.W. was on probation for his two felony convictions and under the California state court's standing order to not use the name of W.W.

II. In September 2022, defendant wrote an email to an LADA assistant district attorney that W.W. was continuing to "defraud me on my Experian credit report." Defendant pointed out that "this person" was listing his address as a "'Drop in Center' for homeless people" in Santa Monica, California. Defendant then contacted the Santa Monica Police Department.

### The Iowa Investigation

JJ. On January 13, 2023, after learning where defendant was employed, W.W. contacted the Iowa City hospital's security department about defendant. W.W. complained that defendant had stolen his identity and was working at the hospital under in W.W.'s name. The hospital's senior compliance coordinator referred W.W.'s complaint to a local law enforcement agency, which assigned an experienced detective to investigate W.W.'s identity theft complaint. The detective conducted an investigation and, over the course of the ensuing months, unraveled defendant's identity theft scheme. Defendant repeatedly made false statements and presented false documents to the detective during the investigation.

KK. On January 23, 2023, defendant wrote an LADA assistant district attorney and stated, "This individual has contacted my place of employment, and now they have launched an internal investigation on this." Defendant copied the hospital's senior compliance coordinator.

LL. On February 3, 2023, defendant contacted the investigating detective via telephone. Defendant falsely insisted to the Iowa detective that defendant was W.W. Defendant told the detective his social security number ended in 1061 and was issued in Kentucky. Defendant stated that, prior to four years ago, he never knew someone in California had stolen his identity and he had been fighting this battle ever since. Defendant told the detective that four years ago he had received a call from a Los Angeles branch of a national bank asking to confirm if he wanted to close his bank account. Defendant stated he learned there was a man in the branch "pretending to be him." Defendant stated that the person he believes to be "Matthew Kierans," living in California, had been trying to get into his bank accounts, change addresses, and close or open accounts. Defendant stated he was concerned "Kierans" has a social security number and identification card with his name on it. Defendant stated he did not think the detective would be able to do anything about the identity theft issue since so many other people have worked on his case and he was fine "just dealing with it" from here on out. Defendant stated the detective was welcome to help him out and keep investigating this but did not think he would get very far with it.

MM.  The Iowa detective obtained DNA from W.W. and W.W.'s father in Kentucky.  On June 20, 2023, a DNA comparison was completed, which proved conclusively that W.W. was the son of W.W.'s father. This genetic paternity comparison proved W.W. was the true W.W.

NN.  On July 17, 2023, the Iowa detective interviewed defendant a second time.  Defendant continued to falsely insist that he was W.W. Defendant stated W.W. was "crazy" and "needed help and should be locked up."  Ultimately, when the Iowa detective asked defendant what his father's name was, defendant made a mistake and gave the first name of his own adoptive father.  The Iowa detective then confronted defendant with the DNA evidence, and defendant stated, "my life is over" and "everything is gone." Defendant admitted to criminal acts starting in 1988 under the false identity of W.W. Defendant admitted to using W.W.'s identity in every aspect of his life requiring identification, including but not limited to taxes, insurance acquisition and claims, social security, drivers' licenses, vehicle registration, titles, deeds, loans, credit, purchase agreements, and official reports and documents entered into the public record using W.W.'s name, or variants thereof.

OO.  During the interview, defendant also admitted to providing fraudulent documents to authorities in Los Angeles County, California, from his residence in Wisconsin, to aid in the arrest, prosecution, and incarceration of the real W.W.  Defendant further admitted to filing an additional false report to the Hartland, Wisconsin, Police Department.

PP.  Defendant stated he used Ancestry.com com to obtain W.W.'s birth certificate in 2012 by researching his family.  Defendant stated that he had run away from home at 16 and traveled across the country. Defendant stated he had stolen a car in San Francisco, got arrested in Oregon, but never appeared in court.  Defendant stated he obtained an identification document in W.W.'s name in the State of Colorado in 1990 while working for the Denver Post as a newspaper carrier and started using W.W.'s identity.

QQ.  On July 18, 2023, the Iowa detective interviewed defendant a third time.  The Iowa detective asked defendant about the false police reports defendant had filed in Wisconsin and California.  Defendant

admitted he had misled the detective in Los Angeles with the intent to get W.W. arrested. Defendant stated he sent a picture of his Wisconsin drivers' license in the name of [W.W.] and the same Kentucky birth certificate he had provided to the Iowa detective and explained away the middle name discrepancy.

## SENTENCING PROVISIONS

10. Defendant understands and agrees to be sentenced based on facts to be found by the sentencing judge by a preponderance of the evidence and agrees facts essential to the punishment need not be (1) charged in the Indictment; (2) proven to a jury; or (3) proven beyond a reasonable doubt. The Court may also consider other information concerning the background, character, and conduct of defendant.

11. During plea negotiations the parties may have discussed how various factors could impact the Court's sentencing decision and the determination of the advisory sentencing guidelines range. The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the Court. Defendant understands the Court is not bound by the stipulations of the parties, nor is it bound by the sentencing range as determined pursuant to the sentencing guidelines. This plea agreement provides for no guarantee concerning the actual sentence to be imposed. Defendant further understands defendant will have no right to withdraw defendant's guilty plea if the sentence imposed is other than defendant hoped for or anticipated.

12. The parties stipulate and agree the United States Sentencing Guidelines should be applied, at least, as follows:

Count 5

    A. **Base Offense Level - Fraud (Chapter 2):** For Count 5, pursuant to USSG §2B1.1(a)(1), **the appropriate base offense level is 7.**

    B. Defendant understands the government intends to seek additional offense level increases under USSG §2B1.1, including but not limited to at least a ten-level increase for loss under USSG §2B1.1(b)(1), because defendant obtained more than $150,000 in loans using W.W.'s identity. Defendant does not stipulate to any loss enhancement in this plea agreement.

C. **Unlawful Restraint (Chapter 3):** For Count 5, pursuant to USSG §3A1.3, at least a two-level increase is appropriate for unlawful restraint of W.W. Defendant understands the government intends to seek an additional upward departure at sentencing due to the egregious nature of the restraint in this case. *See* USSG §3A1.3, cmt. (n.3); USSG §5K2.4.

D. **Acceptance of Responsibility (Chapter 3 adjustment):** The United States agrees for purposes of USSG §3E1.1(b) that defendant timely notified authorities of defendant's intention to enter a guilty plea. However, the United States may withhold a motion under USSG §3E1.1(b) based on any interest identified in USSG §3E1.1 or the commentary thereto.

E. **Criminal History (Chapter 4):** No agreement has been reached regarding defendant's criminal history. The parties reserve the right to contest the Probation Office's determination of defendant's criminal history and criminal history category under Chapter Four of the sentencing guidelines. In addition, defendant understands that, if defendant's criminal history would result in a higher base offense level under any guideline, the government is free to seek such a base offense level.

F. **Departure – USSG §5K1.1 and 18 U.S.C. § 3553(e):** The United States will not make a motion for downward departure under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

G. No other agreements have been reached, and the parties are free to litigate in the district court any and all other applicable adjustments, departures, or cross-references under the United States Sentencing Guidelines, and any variances of any kind from the advisory guideline range, in any amount, in either direction. Defendant understands the government intends to seek an upward departure and/or variance in this case for, among other things, defendant's conduct towards his victim. *See, e.g.,* USSG §5K2.3 (extreme psychological injury); USSG §5K2.4 (unlawful restraint); USSG §5K2.8 (extreme conduct); 18 U.S.C. § 3553(a).

Count 7

**H. Statutory Mandated Sentence (Chapter 2):** For Count 7, pursuant to USSG §2B1.6, defendant's guideline sentence is the sentence mandated by statute, 18 U.S.C. § 1028A, that is, a two-year term of imprisonment that is consecutive to any sentence imposed on Count 5.

13. Defendant, defendant's attorney, and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing, or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information and controlling authority to the Probation Office and Court for use in preparing and litigating adjustments, enhancements, or departures scored in the presentence report, including offering statements made by defendant at any time.

14. The parties are free to contest or defend any ruling of the Court, unless otherwise limited by this agreement, on appeal or in any other post-conviction proceeding.

15. Defendant understands that, pursuant to the Victim and Witness Protection Act, Title I of the Justice for All Act, and the regulations promulgated under the Act by the Attorney General of the United States:

   A. The victim of a crime is given the opportunity to comment on the offense and make recommendations regarding the sentence to be imposed. Defendant understands the victim's comments and recommendations may be different from those of the parties to this agreement.

   B. The government is required to consult with victims of serious crimes to obtain their views regarding the appropriate disposition of the case against defendant and to make any such information regarding sentencing known to the Court. Defendant understands any victim's opinions and recommendations may be different from those presented by the government.

   C. The government is required to "fully advocate the rights of victims on the issue of restitution unless such advocacy would unduly complicate

the sentencing proceeding," and the Court is authorized to order
restitution by defendant to victims of crime, including, but not limited
to, restitution for property loss, personal injury, or death.

## CONDITIONS OF SUPERVISION

16. _____ If probation or a term of supervised release is ordered, the parties
are free to seek whatever conditions they deem appropriate.

## FINANCIAL MATTERS

17. _____ Defendant agrees to pay a special assessment of $100 per count,
for a total of $200, as required by 18 U.S.C. § 3013. Defendant may pay the special
assessment to the Clerk of Court using the enclosed payment coupon. Defendant or
defendant's representative will send or deliver the special assessment payment to
the U.S. District Clerk of Court, 111 Seventh Avenue, SE, Box 12, Cedar Rapids, IA
52401. If payment is made in the form of a check or money order, it should be made
out to the "U.S. District Clerk of Court."

18. _____ Defendant agrees that defendant will be required to pay
restitution for the full amount of the victims' losses to all victims of the offenses to
which defendant is pleading guilty pursuant to any applicable restitution
statute. In addition, defendant agrees that defendant will pay restitution for the
full amount of the victims' losses to all victims of any offense(s) dismissed as a
result of this plea agreement. Defendant agrees that defendant will pay restitution
for the full amount of the victims' losses to all victims of the following
conduct: stealing W.W.'s identity for any purpose. Defendant agrees that the
victims entitled to restitution include but are not limited to the following: CU-1,
CU-2, any creditor of defendant while he was using the identity of "W.W.," and
W.W. For purposes of this paragraph, the term "victim" includes both statutory
victims and persons directly and proximately harmed as a result of the conduct
outlined in this paragraph; defendant agrees to pay restitution to non-statutory
victims pursuant to 18 U.S.C. §§ 3663 and 3663A. Defendant further understands
the amount of loss sustained by each victim will be investigated during the course of
preparation of the presentence investigation report. Defendant agrees to cooperate
in the investigation of the amount of loss and the identification of
victims. Defendant agrees that full restitution will be ordered regardless of
defendant's financial resources. Any restitution obligation should be paid to the
Clerk of Court for eventual disbursement to the victim. Complete restitution shall
be due and payable at or before the time of sentencing. Defendant agrees to
cooperate in efforts to collect the restitution obligation, by any means the United

States deems appropriate. Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

19. _____ Defendant agrees to assist in mitigating any damages W.W. has incurred as a result of defendant's identity theft of W.W. This requirement includes, for example, cooperating with credit reporting agencies and financial institutions to assist in repairing W.W.'s credit and removing W.W.'s name from any accounts defendant has opened and/or used. This paragraph does not require defendant to transfer title or interest in property to W.W.

20. _____ Defendant agrees to fully complete the enclosed Authorization to Release Credit Information pursuant to 15 U.S.C. § 1681b(a)(2). Further, upon request, defendant agrees to provide the U.S. Attorney's Office with any supporting information or documentation in defendant's possession or control regarding the information contained in the consumer credit report. In addition, defendant agrees to take any additional action requested by the United States to obtain financial information about defendant in the hands of third parties. This request includes, but is not limited to, mortgages, financial statements, loan applications or requests for extension of credit, financing statements, security agreements, subordinations, promissory notes, account information, tax returns, W2s, child support obligations, and any other document that may be held by a third party containing financial information about defendant. Defendant agrees to provide this information whenever requested until such time any judgment or claim against defendant, including principal, interest, and penalties, is satisfied in full. This information will be used to evaluate defendant's capacity to pay any claim or judgment against defendant as well as satisfy any forfeiture obligations. Defendant further understands and agrees the United States can and will release such information to the United States Probation Office for the Northern District of Iowa.

21. _____ Defendant agrees to fully and truthfully complete the enclosed financial statement form. Further, upon request, defendant agrees to provide the U.S. Attorney's Office with any information or documentation in defendant's possession or control regarding defendant's financial affairs and agrees to submit to a debtor's examination when requested. Defendant agrees to provide this information whenever requested until such time any judgment or claim against defendant, including principal and interest, is satisfied in full. This information will

be used to evaluate defendant's capacity to pay any claim or judgment against defendant.

## FORFEITURE AND ABANDONMENT

22. _MN_ Defendant agrees to voluntarily disclose, forfeit, abandon, give up, give away, and produce to the United States, or any law enforcement agency designated by the United States, prior to the date of sentencing herein, the following items, in any format, not validly issued to defendant:

    A.    Any real or fraudulent Social Security Account Number card, U.S. Passport or U.S. Passport Card, Permanent Resident Card or Alien Registration Receipt Card (Form I-551), Employment Authorization Document (I-766), driver's license or ID card issued by a State or by federal, state or local government agencies or entities, U.S. Citizen ID Card (Form I-197), birth certificate (original or copy), voter's registration card, financial documents, tax documents, and any other identification documents.

Defendant understands that, from this date forward, any local, state, or federal law enforcement agency may take custody of and use, dispose of, and transfer these items in any way the agency deems appropriate.

23. _MN_ Defendant agrees to forfeit and abandon any and all claim to items seized by law enforcement from defendant at the time of any arrest or search, including defendant's arrest and the search of defendant's person and residence. Defendant also waives any right to additional notice of the forfeiture and abandonment of such property. Defendant stipulates this plea agreement constitutes notice under Local Criminal Rule 57B(f) regarding the disposal of any exhibits or evidence related to this matter. Defendant understands that, from this date forward, any local, state, or federal law enforcement agency may take custody of and use, dispose of, and transfer these items in any way the agency deems appropriate.

24. _MN_ By this agreement defendant not only agrees to forfeit all interests in the property referred to in the above paragraphs, but agrees to take whatever steps are necessary to convey any and all of defendant's right, title, and interest in such property to the United States. These steps include, but are not limited to, the surrender of title, the signing of a quit claim deed, the signing of a consent decree, the signing of abandonment papers, the signing of a stipulation of facts regarding the transfer and basis for the forfeiture, and the signing any other documents

necessary to effectuate such transfers. Defendant further agrees to fully assist the government in the recovery and return to the United States of any assets or portions thereof as described above wherever located. Defendant further agrees to make a full and complete disclosure of all assets over which defendant exercises control and those held or controlled by a nominee. Defendant further agrees to be polygraphed on the issue of assets if it is deemed necessary by the United States before defendant's sentencing.

25. ⟨initials⟩ Defendant agrees not to waste, sell, dispose of, or otherwise diminish the value of any items or property referred to in the above paragraphs or allow others to do so. Defendant further agrees not to contest any forfeiture action or proceeding brought on behalf of any government agency involved in this investigation that seeks to forfeit property described in the above paragraphs.

26. ⟨initials⟩ Defendant agrees and understands that, should defendant fail to truthfully account for all of defendant's holdings, proceeds, assets, or income, whether derived from a legal source or not, for the period charged, defendant shall be deemed to have materially breached this agreement. The decision as to whether defendant has been complete, forthright, and truthful in this regard shall be in the sole discretion of the United States Attorney's Office, taking into consideration the totality of the circumstances and the totality of the evidence developed in the course of the investigation.

## GENERAL MATTERS

27. ⟨initials⟩ Defendant shall not violate any local, state, or federal law during the pendency of this agreement. Any law violation, with the exception of speeding or parking violations, committed by defendant will constitute a breach of this agreement and may result in the revocation of the entire agreement or any of its terms. Defendant or defendant's attorney shall notify this office within 48 hours if defendant is questioned, charged, or arrested for any law violation.

28. ⟨initials⟩ If defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. Defendant understands, however, the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. If defendant does breach this agreement, defendant faces the following consequences: (1) all testimony and other information defendant has provided at any time (including any stipulations in this agreement) to attorneys, employees, or law enforcement officers of the government, to the Court, or to the federal grand jury may and will be used

against defendant in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements, or restrictions imposed upon it under this plea agreement.

29. ⟍⟍ Defendant waives all claims defendant may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution. Defendant also agrees any delay between the signing of this agreement and the final disposition of this case constitutes excludable time under 18 U.S.C. § 3161 et seq. (the Speedy Trial Act) and related provisions.

30. ⟍⟍ Any dismissal of counts or agreement to forego filing charges is conditional upon final resolution of this matter. If this agreement is revoked or defendant's conviction is ultimately overturned, the United States retains the right to reinstate previously dismissed counts and to file charges that were not filed because of this agreement. Dismissed counts may be reinstated and uncharged offenses may be filed if: (1) the plea agreement is revoked, or (2) defendant successfully challenges defendant's conviction through a final order in any appeal, cross-appeal, habeas corpus action, or other post-conviction relief matter. A final order is an order not subject to further review or an order that no party challenges. The United States may reinstate any dismissed counts or file any uncharged offenses within 90 days of the filing date of the final order. Defendant waives all constitutional and statutory speedy trial rights defendant may have. Defendant also waives all statute of limitations or other objections or defenses defendant may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph.

## ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING

31. ⟍⟍ Defendant acknowledges defendant has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with defendant's attorney. Defendant understands that, by entering a plea of guilty, defendant will be giving up the right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in defendant's defense; to remain silent and refuse to be a witness by asserting defendant's privilege against self-incrimination; and to be presumed innocent until proven guilty beyond a reasonable doubt. Defendant agrees

defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation. Defendant states defendant is not now on or under the influence of, any drug, medication, liquor, or other substance, whether prescribed by a physician or not, that would impair defendant's ability to fully understand the terms and conditions of this plea agreement.

32. _____ Defendant acknowledges that prior plea offers including those dated March 11, 2024 have expired or been rejected. Defendant agrees defendant was notified of the plea offer(s) and defendant had a full and complete opportunity to discuss these offer(s) with defense counsel prior to the expiration or rejection date.

33. _____ Defendant acknowledges defendant is entering into this plea agreement and is pleading guilty freely and voluntarily because defendant is guilty and for no other reason. Defendant further acknowledges defendant is entering into this agreement without reliance upon any discussions between the government and defendant (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement), and without threats, force, intimidation, or coercion of any kind. Defendant further acknowledges defendant's understanding of the nature of each offense to which defendant is pleading guilty, including the penalties provided by law.

34. _____ Defendant further understands defendant will be adjudicated guilty of each offense to which defendant will plead guilty and will thereby be deprived of certain rights, including, but not limited to, the right to vote, to hold public office, to serve on a jury, and to possess firearms and ammunition. Defendant understands the government reserves the right to notify any state or federal agency by whom defendant is licensed, or with whom defendant does business, of the fact of defendant's conviction.

## VERIFICATION

35. _____ This letter constitutes the entire agreement between the parties. No other promises of any kind, express or implied, have been made to defendant by the United States or its agents. No additional agreement may be entered into unless in writing and signed by all parties. The agreement will not be deemed to be valid unless and until all signatures appear where indicated below.

If this agreement is acceptable, please have your client indicate acceptance by placing initials on the line preceding each of the above paragraphs and by signing

below where indicated. By initialing each paragraph and signing below, defendant acknowledges defendant has read, fully understands, and agrees to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Please complete the enclosed Consent to Proceed Before the Magistrate Judge. This document is needed to allow the Magistrate Judge to receive defendant's guilty plea. Finally, please remember to pay the special assessment as agreed above. Thank you for your cooperation.

Sincerely,

TIMOTHY T. DUAX
United States Attorney

By, */s/ Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney

**ENCLOSURES:**
Financial Statement Form
Special Assessment Payment Coupon
Abandonment Declaration
Authorization to Release Credit Information
Consent to Proceed Before Magistrate Judge

The undersigned defendant, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

| | | |
|---|---|---|
| MATTHEW DAVID KEIRANS | 3-28-24 | TIMOTHY L. VAVRICEK |
| Defendant | Date | Assistant United States Attorney    Date |

Digitally signed by TIMOTHY VAVRICEK
Date: 2024.03.29 09:07:05 -05'00'

Mr. Christopher J. Nathan
*United States v. Matthew David Keirans, No. 23-CR-1020*
March 24, 2024
Page 24

_____     3/28/24
CHRISTOPHER J. NATHAN            Date
Attorney for Defendant