IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (DUBUQUE) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-CR-1020-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| MATTHEW DAVID KEIRANS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSIVE SENTENCING MEMORANDUM AND RESISTANCE TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE**

**I.   INTRODUCTION**

The government hereby responds to defendant's "Motion for Downward Departure and Sentencing Memorandum" ("Memorandum") (R. Doc. 44).

**II.   ADDITIONAL EXHIBITS**

The government will offer the following additional exhibits at defendant's sentencing hearing:

12.   W.W.'s Victim Impact Statement[1]

13.   LAPD Arrest Report (Aug. 20, 2019)

---

[1] W.W. recently submitted a written Victim Impact Statement to the government. The government understands W.W. will still be present at the sentencing hearing but now may choose to rely on this written statement in lieu of orally addressing the Court.

14A. Transcript from *People v. Kierans*, No. BA480543 (Oct. 16 & 17, 2019)[2]

14B. Transcript from *People v. Kierans*, No. BA480543 (Nov. 19, 2019)

14C. Transcript from *People v. Kierans*, No. BA480543 (Dec. 10, 2019)

14D. Transcript from *People v. Kierans*, No. BA480543 (Dec. 19, 2019)

14E. Transcript from *People v. Kierans*, No. BA480543 (Jan. 24, 2020)

### III. THE GOVERNMENT'S RESPONSE

The government will not respond here to all of the arguments in defendant's Memorandum. For now, the government would emphasize four primary points:

*First*, the Court should reject defendant's unsupported assertion that "W.W. tried to steal the Defendant's money" when he approached the assistant bank branch manager in Los Angeles on August 20, 2019. (R. Doc. 44, at 17.) Exhibit 13 is a copy of the responding LAPD officers' police report. In that report, the officers reported that the assistant branch manager stated W.W. "told him that he wanted to make a report for identity theft"; "recently discovered that someone was using his credit and had accumulated large amounts of debt"; and "did not want to pay the debt and went to [the bank] to close his accounts."

Likewise, Exhibit 14A is a transcript of W.W.'s preliminary hearing in the California criminal proceedings on October 17, 2019. The assistant branch manager testified at this preliminary hearing. Ex. 14A, at 7-14. The assistant branch manager repeatedly testified that W.W. was trying to close out accounts in his

---

[2] Exhibits 14A through 14E are transcripts from the California criminal proceedings against W.W. (falsely charged as "Kierans" in that case). These exhibits correspond to defendant's previously filed excerpts at Ex. F, I, J, K, and L.

name. Ex. 14A, at 10, 13. The assistant branch manager did not testify W.W. was attempting to "steal" from defendant.

*Second*, the Court should decline defendant's invitation to rely on the opinions of named and unnamed LADA assistant district attorneys that, as defendant proffers in his Memorandum, W.W. supposedly is "deserving of a conviction and punishment for trying to steal the Defendant's money" and could have been charged with grand theft instead of fully exonerated (*see* R. Doc. 44, at 18, 36 & n.13; Def.'s Ex. H).

To the contrary, the undisputed facts in the sentencing record before this Court show beyond any doubt that **defendant was the primary impetus** behind W.W.'s false arrest, wrongful conviction, and attendant suffering. Defendant is attempting to minimize his role in this egregious crime, and the Court should not speculate upon some hypothetical world in which W.W. were—again, wrongly based on the record before this Court—somehow also charged with grand theft, held without bail, hospitalized, forcibly medicated, and ordered to not use his true name. *Cf.* Ex. 14C, at 5; PSR ¶ 57.

The State of California now agrees that **W.W. is innocent** of the felony criminal charges that defendant instigated against him through defendant's fraud, deceit, and lies. *See* PSR ¶ 57 (detailing the Iowa detective's repeated attempts to exonerate W.W. throughout 2023, and W.W.'s ultimate exoneration after defendant pled guilty in this case). Defendant is in no position to collaterally attack that decision here. Defendant should be held responsible at his sentencing for all the

harm resulting from his criminal activity. *See* 18 U.S.C. § 3553(a)(1); USSG §1B1.3. This harm includes W.W.'s wrongful convictions, incarceration, hospitalization, and forcible medication.

*Third*, the Court should reject defendant's argument that "it is arguably debatable whether the Defendant knew or should have known that W.W. was vulnerable." (R. Doc. 44, at 26.)[3] Defendant met W.W. when they were both homeless in 1988. PSR ¶ 8. Defendant would not have been able to successfully execute his identity theft scheme over the years if W.W. were not vulnerable. In any event, in the last four years of the scheme, defendant closely followed W.W's situation and suffering. For example, on May 13, 2020, defendant sent an email to the assistant district attorney and stated, "So, is this the process going forward? Court every 2 months to determine competence?" PSR ¶ 35. The assistant district attorney responded, "Yes, until he regains competency." *Id.* Defendant responded, "This is assuming he does." *Id.* Later, in September 2022, as part of an ongoing attempt to have W.W.'s probation revoked, defendant contacted the Santa Monica Police Department to report that W.W. had stolen defendant's identity and could be

---

[3] Defendant argues Application Note 3 to USSG §2B1.6 forbids application of any Chapter 3 enhancement with respect to Count 5, but Application Note 3 merely states that Chapter 3 and 4 enhancements do not apply "to any offense sentenced under this guideline" because "the relevant statute determines the offense." This is a reference to Count 7, not Count 5. Application Note 3 only concerns the calculation of defendant's guidelines range for Count 7, his conviction under 18 U.S.C. § 1028A. Unlike Application Note 2, which is *ultra vires* with respect to Count 5 for the reasons previously discussed in the government's Sentencing Memorandum, Application Note 3 does not purport to restrict the application of guidelines enhancements for an underlying fraud offense, which is Count 5 here.

found "residing in a 'Drop-In Center' for homeless persons that was located in Santa Monica." PSR ¶ 46. And shortly before he finally confessed in July 2023, defendant told the investigating Iowa detective that W.W. was "crazy" and "needed help and should be locked up." PSR ¶ 52. There can be no doubt defendant knew, during the commission of his offense, that W.W. was especially vulnerable.

*Fourth*, the Court should deny defendant's request for a downward departure and/or variance. The government would incorporate its prior arguments in support of an upward departure and/or variance here. Further, the government would emphasize that Note 21 to the Guidelines specifically identifies as separate grounds for an above-guidelines sentence a case in which a victim is "erroneously arrested" or a case in which the defendant "essentially assumed [the victim's] identity." USSG §2B1.1, cmt. (n.21)(A)(vi)(II), (III).

## IV. CONCLUSION

The government requests that the Court grant its motions for upward departure and variance, deny defendant's motions for downward departure and variance, and sentence defendant to 15 years of imprisonment on Count 5 and a consecutive 2 years of imprisonment on Count 7.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By: */s/ Timothy L. Vavricek*

TIMOTHY L. VAVRICEK
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, Iowa 52401-2101
319-363-6333
319-363-1990 – Fax
Tim.Vavricek@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ TLV*