1      IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF IOWA
2

3   UNITED STATES OF AMERICA,    )
                                 )
4                 Plaintiff,     )
                                 )
5       VS.                      )   23-CR-1020
                                 )
6   MATTHEW KEIRANS,             )   *Redacted Transcript*
                                 )
7                 Defendant.     )

8

9                      APPEARANCES:

10  ATTORNEY TIMOTHY LAWRENCE VAVRICEK, U.S. Attorney's
    Office, 111 Seventh Avenue S.E., Box 1, Cedar Rapids,
11  Iowa 52401, appeared on behalf of the United States.

12  ATTORNEY CHRISTOPHER J. NATHAN, Federal Public Defender's
    Office, 222 Third Avenue S.E., Suite 290, Cedar Rapids,
13  Iowa 52401, appeared on behalf of the Defendant.

14

15                  SENTENCING HEARING,

16        HELD BEFORE THE HON. C.J. WILLIAMS,

17  on the 31st day of January, 2025, at 111 Seventh Avenue

18  S.E., Cedar Rapids, Iowa, commencing at 9:00 a.m., and

19  reported by Patrice A. Murray, Certified Shorthand

20  Reporter, using machine shorthand.

21  Transcript Ordered:  2/7/25
    Transcript Completed:  2/13/25
22

23              Patrice A. Murray, CSR, RMR, FCRR
                       Court Reporter
24                      PO Box 10541
                  Cedar Rapids, Iowa 52410
25               PAMurrayReporting@gmail.com

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*

## INDEX

**EXHIBITS**                                                      **PAGE**

Exhibits 1 through 14E                                             12

                          * * * * *


Exhibits A through Y                                               11

                          * * * * *

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 2 of 116

1    (The following proceedings were held in open court.)

2         THE COURT:  The matter now before the Court is

3    the United States of America versus Matthew Keirans, Case

4    23-CR-1020.  This matter comes on for a sentencing

5    hearing.  The United States is represented by Assistant

6    United States Attorney Tim Vavricek.  The defendant is

7    personally present and represented by Assistant Federal

8    Public Defender Chris Nathan.  Participating by telephone

9    is United States Probation Officer Jill Freese.  She

10   authored the presentence investigation report filed at

11   document 37 in the court's file.

12      On April 1, 2024, the defendant pled guilty to two

13   counts of a seven-count indictment.  He pled guilty to

14   Count 5, which charged him with making a false statement

15   to a National Credit Union Administration insured

16   institution in violation of Title 18 United States Code

17   Section 1014.  And he pled guilty to Count 7, which

18   charged him with the crime of aggravated identity theft

19   in violation of Title 18 United States Code Section

20   1028A(a)(1).

21      By statute, those crimes are punishable as follows:

22   Count 5, the false statement, is punishable by up to

23   30 years in prison without the possibility of parole;

24   Count 7 is punishable by a mandatory consecutive 2-year

25   sentence to be imposed in addition to any other term of

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 3 of 116

1  imprisonment.

2      After the defendant has served his prison sentence,

3  the Court can place him on a term of supervised release

4  for up to 5 years on Count 5 and up to 1 year on Count 7.

5  Probation is not an option under these statutes.

6      The defendant can receive a fine -- or the Court can

7  impose a fine of up to $1 million on Count 5 and up to

8  $250,000 on Count 7, for a total maximum possible fine of

9  $1,250,000.  And the Court must impose a mandatory

10 special assessment of $100 on each count of conviction,

11 for a total of $200.

12      Mr. Vavricek, on behalf of the United States, have

13 you had a full and fair opportunity to review this

14 report?

15          MR. VAVRICEK:  Yes, Your Honor.

16          THE COURT:  And does the government -- well,

17 the government has a number of objections, so let me go

18 through them.  At paragraph 62 the government is

19 objecting to the loss amount as calculated by the

20 probation office.  The government is also asking for an

21 enhancement under section 2B1.1(b)(2) for causing

22 substantial financial hardship.  At paragraph 63 the

23 government is objecting for the failure to enhance the

24 defendant's sentence under section 2B1.1(b)(11) for use

25 of an identification to obtain additional false

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 4 of 116

identifications.  At that same paragraph the government's objecting to the failure of the probation office to assess the defendant with an enhancement for risk of serious bodily injury under section 2B1.1(b)(16).  At paragraphs 89 and 90 the government has objected to the defendant's personal history narrative; at paragraphs 93 and 94 to the defendant's history of physical condition; at paragraph 95 to mental health history; at paragraph 106 to his work history; and at 109 to his financial condition.

First of all, are those all of the objections the government originally had to this presentence report?

MR. VAVRICEK:  Yes, Your Honor.

THE COURT:  Are there any changes in the objections the government is making?

MR. VAVRICEK:  No, Your Honor.

THE COURT:  Very good.  Thank you.

Mr. Nathan, on behalf of Mr. Keirans, have you and your client had a full and fair opportunity to review this report?

MR. NATHAN:  Yes, Your Honor.

THE COURT:  And I noted he had some objections as well; first, to the allegation that he has used aliases in the past, as set out in the personal identifying section on page 2.  He's objected at

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 5 of 116

1 paragraphs 25 and, the PSR notes, 43 having to do with

2 his denying that the credit unions were defrauded or they

3 suffered any loss amount.

4     I think the objection at 43 is misplaced.  Perhaps

5 you meant another objection because paragraph 43 talks

6 about the victim in this case filed a series of customer

7 disputes in an attempt to clear his credit report of the

8 defendant's fraudulent activities.  So I'm not sure what

9 additional paragraph you intended to object to there.  I

10 understand generally that you are objecting to any loss

11 amount and any assertion that a credit union has been

12 defrauded.

13        MR. NATHAN:  Yeah.  The defense agrees that the

14 reference to paragraph 43 is misplaced.  The defense asks

15 that the Court accept our objection as a general

16 objection to any information inconsistent with our

17 objection and denial.

18        THE COURT:  The Court will so do that.  The

19 defendant also objected at paragraphs 26, 45, and 50

20 having to do with portions of the narrative of the

21 offense conduct; at paragraph 58 to the victim impact, to

22 the extent the assertion is that the credit unions are

23 victims; at paragraph 62 to any loss amount enhancement;

24 at paragraph 64 to the enhancement for a vulnerable

25 victim; originally, you had an objection at 65 -- and

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 6 of 116

we'll talk about that in a moment -- to physical
restraint of the victim; at paragraph 90 to the
defendant's personal history narrative; at paragraph 109
to the defendant's financial conditions; at 110, his
ability to pay a fine; at 127, his mental health
evaluation condition of supervised release; at
paragraph 128, the financial conditions of supervised
release; and then at paragraph 143 on whether there are
grounds for departure.

      Have I identified all the objections that
Mr. Keirans originally had to this presentence report?

               MR. NATHAN:  Yes, Your Honor.

               THE COURT:  And I understand the defendant is
withdrawing his objection at paragraph 65?

               MR. NATHAN:  That's correct, Your Honor.  In
our brief, we did formally withdraw that objection.  And
in lieu of the objection, we did simply brief the issue
for the benefit of the Court regarding the upward
departure under that subsection.

               THE COURT:  Very good.  Thank you.  Could you
make a brief record of how you went through this
presentence report with your client.

               MR. NATHAN:  My office mailed a copy of the
draft PSR to Mr. Keirans.  I then drove up to Waverly,
where Mr. Keirans and I met.  We went through the draft

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 7 of 116

1    PSR paragraph by paragraph.  And our objections were as

2    Your Honor stated and as they are now as well.

3             THE COURT:  Thank you.

4        So, Mr. Keirans, it sounds like you had an

5    opportunity to go through this presentence report on your

6    own, sir; is that true?

7             THE DEFENDANT:  That is correct, Your Honor.

8             THE COURT:  And do you feel like you've had

9    sufficient time to review this presentence report with

10   Mr. Nathan?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  Has he been able to answer any

13   questions you might have had about this report?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  So today do you have any remaining

16   questions about this presentence report?

17            THE DEFENDANT:  No, Your Honor.

18            THE COURT:  Very good.

19       All right.  Well, let's turn, then, first to the

20   calculation of the advisory guidelines as determined by

21   the probation office.  That calculation begins on

22   page 18.  And the calculation is, as to Count 7, the

23   guidelines for Count -- I'm sorry -- to Count 5.  The

24   guidelines to Count 7, of course, is the 2-year mandatory

25   consecutive sentence.  So the calculation here is to

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 8 of 116

1  Count 5, the false statements to the credit union.

2      The probation office began with a base offense level

3  of 7.  This is under guideline section 2B1.1(a)(1).  The

4  probation office then assessed the defendant with an

5  8-level enhancement under guideline section

6  2B1.1(b)(1)(E) because the loss amount was more than

7  $95,000 but less than $150,000.  Here the probation

8  office deemed the loss amount to be $112,135.25.

9      The probation office then assessed the defendant

10  with a 2-level enhancement under guideline section

11  2B1.1(b)(10)(C) for the use of sophisticated means.

12      The probation office then assessed the defendant

13  with a 2-level enhancement under guideline section

14  3A1.1(b)(1) because the victim was vulnerable.

15      The probation office then assessed the defendant

16  with a 2-level enhancement under guideline section 3A1.3

17  because of physical restraint of the victim.  That gives

18  us an adjusted offense level of 21.

19      Mr. Keirans pled guilty to this offense, and so the

20  probation office then awarded him with a 2-level

21  reduction for acceptance of responsibility under

22  guideline section 3E1.1(a).

23      Mr. Vavricek, what is the government's position

24  about whether the defendant should receive an additional

25  1-level reduction for acceptance under section 3E1.1(b)?

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 9 of 116

 1          MR. VAVRICEK:  Pursuant to the plea agreement,

 2    Your Honor, the United States moves for the third level

 3    reduction under guideline 3E1.1(b).

 4          THE COURT:  The Court grants that motion.  So

 5    with 3 levels off for acceptance of responsibility, the

 6    defendant's total offense level is 18, as calculated by

 7    the probation office.

 8      The defendant has some criminal history, which the

 9    probation office has summarized and scored beginning at

10    paragraph 73 and carrying over to paragraph 78.  The

11    defendant's convictions, though, did not score any

12    criminal history points, and so he remains in criminal

13    history category I.  So with a total offense level of 18,

14    criminal history category I, the advisory guideline range

15    of imprisonment on Count 5 is 27 to 33 months.  And as I

16    mentioned, on Count 7, the advisory guideline range is

17    the statutory range, which is 24 months to be imposed

18    consecutive to all other counts.

19      In preparation for today's hearing, I have reviewed

20    in detail, of course, this presentence investigation

21    report.  I've also reviewed the pleadings filed by the

22    parties.  At document 44 the defense filed a sentencing

23    memorandum and a motion for a downward variance and

24    provided the Court with Exhibits A through Y.

25          At document 49 the government filed a sentencing

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 10 of 116

memorandum and provided the Court with Exhibits 1 through
11.  At document 56 the government filed a resistance to
the defendant's motion for a downward variance.  I should
note, the government's sentencing memo also includes a
motion for an upward departure or, alternatively, an
upward variance.  The government's resistance also
attached Exhibits 12 through 14E.

     And then at document 57-1 the defense supplemented
their exhibits with Exhibits G1 and G2.

     Mr. Nathan, have I identified all of the relevant
pleadings, documents, and exhibits?

          MR. NATHAN:  Yes, Your Honor.

          THE COURT:  And are you moving your exhibits
into evidence?

          MR. NATHAN:  Yes, Your Honor.

          THE COURT:  Exhibits A through Y, including all
subparts, are admitted.

     (Whereupon, Exhibits A through Y were received.)

          THE COURT:  Mr. Vavricek, have I identified all
the relevant pleadings, documents, and exhibits pertinent
to today's hearing?

          MR. VAVRICEK:  Yes, Your Honor.

          THE COURT:  And are you moving your exhibits
into evidence?

          MR. VAVRICEK:  Yes, Your Honor.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR   Document 69-1   Filed 02/19/25   Page 11 of 116

1          THE COURT:  Any objection, Mr. Nathan?

2          MR. NATHAN:  No, Your Honor.

3          THE COURT:  Exhibits 1 through 14E are

4  admitted.

5      (Whereupon, Exhibits 1 through 14E were received.)

6          THE COURT:  I will tell the parties that a

7  number of the exhibits both sides submitted were YouTube

8  videos involving the victim that were hours long, and I

9  did not watch all of the length of each of those videos.

10  I watched portions of each of them.  So if there's

11  anything in those videos that you want to draw my

12  attention to, you're going to have to do so at this

13  hearing.  But I wasn't going to spend hours watching

14  YouTube videos of interactions with the victim in this

15  case.  Unless the parties pointed out to me something

16  that they thought I needed to see in those videos, I

17  couldn't figure out what it is the parties wanted me to

18  focus on.  And so that will be up to you, if you think

19  there's something you want to draw to my attention in

20  those videos.

21      There are a number of guideline issues the Court's

22  going to have to resolve here.  Both -- well, at least

23  the government, at least initially, indicated that it was

24  intending to call witnesses in this case.  But I

25  understand from an email that the government sent to the

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 12 of 116

```
 1  Court, copying Mr. Nathan on it, that the government's no
 2  longer planning on calling witnesses.
 3      Is that correct, Mr. Vavricek?
 4          MR. VAVRICEK:  Yes, Your Honor.  It would be
 5  our intent that I would make just a brief proffer about
 6  each of our exhibits, to identify them.  And if that was
 7  acceptable, we would not have any need for testimony,
 8  given the stipulations.
 9          THE COURT:  All right.  And, Mr. Vavricek --
10  I'm sorry.  Mr. Nathan, is your position still you are
11  not intending to call any witnesses here today?
12          MR. NATHAN:  That's correct, Your Honor.
13          THE COURT:  All right.  Mr. Vavricek, this is a
14  victim case.  Does any victim wish to address the Court
15  as part of this hearing?  I do note that one of the
16  government's exhibits was, in fact, a written victim
17  impact statement by the victim in this case, and I have
18  reviewed that.  But other than that, he has a right to
19  speak in court, if he wishes to.
20          MR. VAVRICEK:  He wishes to do so, Your Honor.
21          THE COURT:  All right.  And so we'll make an
22  appropriate time -- at the appropriate time, we'll make
23  an opportunity for him to do that.
24      There's also at dispute in this case the defendant's
25  financial condition, ability to pay a fine, and
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 13 of 116

```
 1   restitution that I want to have addressed as part of this
 2   hearing as well, and we'll make sure we cover that.
 3       At the appropriate time, we'll take a break as well.
 4   If this case -- if this hearing keeps going for a while,
 5   the court reporter's going to need a break.  So we'll go
 6   until about 10:30.  And if we've not resolved the
 7   sentencing by that time, we'll take a break to allow the
 8   court reporter to rest.
 9       Mr. Vavricek, it seems to make sense first to start
10   with your proffer.  We'll find out if there's any
11   objection to that proffer, and, if so, then we can
12   proceed accordingly.
13           MR. VAVRICEK:  Thank you, Your Honor.  With
14   respect to the government's exhibits, I would proffer
15   that, if called to testify, Agent Peczuh -- who is here
16   with me at the table today -- would testify that
17   Exhibit 1 is the California Department of Hospitals bill,
18   as referenced in the presentence report, relating to the
19   victim's hospitalization.
20       Exhibits 2 through 10 are various accounts from
21   American Express, U.S. Bank, and Goldman Sachs, as
22   reflected in those exhibits.
23       Exhibit 10A are attempted account openings and
24   credit increases related to the Apple Card issued by
25   Goldman Sachs to the defendant.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 14 of 116

    1        Exhibits 11A through 11E are the vlogs from Fousey.

    2   The dates on those are as stated in the government's

    3   list.  11A is November 11th, 2015.  11B is November 12th.

    4   11C is November 13th.  11D is November 14th.  11E is

    5   November 15th.  And then Exhibit 11F is a vlog from

    6   MidoTV Adventure from December 9th, 2016.

    7            THE COURT:  And the previous Exhibit 11

    8   subparts were all of 2015, correct?

    9            MR. VAVRICEK:  Correct.  The first five are

   10   2015, the Fousey ones.  And then MidoTV is from 2016.

   11            THE COURT:  Very good.

   12            MR. VAVRICEK:  With respect to Exhibit 12, as

   13   the Court correctly identified, that is a written victim

   14   impact statement that we received from -- I'll refer to

   15   the victim as "W" today.

   16        13 is an LAPD, Los Angeles Police Department, arrest

   17   report from August 20, 2019.

   18        And then Exhibits 14A through 14E are transcripts

   19   from the underlying state court matter in California,

   20   People v. Kierans, spelled I-E, number BA480543.  The --

   21   Exhibit 14A are hearings on October 16th and 17th, 2019;

   22   14B, November 19th, 2019; 14C, December 10th, 2019; 14D,

   23   December 19th, 2019; and 14E, January 24th of 2020.

   24            THE COURT:  All right.  Thank you.  Let me ask

   25   you about Exhibit 1.  Is the State of California

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 15 of 116

```
 1   realistically still going after the victim in this case

 2   to collect over $100,000 for hospitalization costs?

 3           MR. VAVRICEK:  I do not know the answer to that

 4   question as of today.  The victim was completely

 5   exonerated, as indicated in the presentence report, after

 6   the defendant pled guilty in this case.  But I do not

 7   know the answer to what the State of California intends

 8   to do as of right now.

 9           THE COURT:  But you don't know -- as far as you

10   know, right now they're still pursuing this against the

11   victim.

12           MR. VAVRICEK:  We just don't -- we don't know,

13   Your Honor.

14           THE COURT:  I can't imagine that they're going

15   to continue to pursue this, but if we don't know, we

16   don't know.

17       All right.  Mr. Nathan, any objection to the

18   government's proffer?

19           MR. NATHAN:  No, Your Honor.

20           THE COURT:  All right.  Mr. Nathan, do you have

21   any proffer you wish to make at all?

22           MR. NATHAN:  Yes, Your Honor.  The defense is

23   proffering the information at footnote 13 initially,

24   unless there's an objection.

25           THE COURT:  Mr. Vavricek?
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 16 of 116

```
 1            MR. VAVRICEK:  We have no objection that the
 2   defense counsel and ██████████ defense counsel had that
 3   conversation.
 4            THE COURT:  And this is footnote 13 to your
 5   brief, Mr. Nathan?
 6            MR. NATHAN:  Correct, Your Honor.  Docket
 7   number 44, footnote 13.
 8            THE COURT:  I just want to make sure I'm
 9   tracking with you.
10            MR. NATHAN:  Yes, Your Honor.
11            THE COURT:  Bear with me a moment.
12            MR. NATHAN:  On page 36.
13            THE COURT:  Thank you.  I'm getting there.  All
14   right.  Thank you.
15            MR. NATHAN:  Otherwise, Your Honor, the defense
16   believes that our exhibits are fairly straightforward and
17   identifiable.  To the extent they're not, the defense is
18   happy to provide any proffer or context for the Court.
19   But otherwise, I'll sit down.
20            THE COURT:  All right.  Very good.  No, I found
21   the defense exhibits to be self-explanatory and
22   understandable, and so I don't at this point see any
23   additional proffer.
24       I am interested -- I'm assuming Exhibits G1 and G2,
25   which have to do with the defendant's financial
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 17 of 116

```
 1  situation, may be updates to his finances.  Maybe.  I'm
 2  not quite sure what the purpose of those are.  So at the
 3  appropriate time, you can make sure I understand that.
 4          MR. NATHAN:  May I do so now, Your Honor?
 5          THE COURT:  Sure.
 6          MR. NATHAN:  So originally I had intended to
 7  file exhibits demonstrating all three of Mr. Keirans's
 8  bank accounts with U.S. Bank circa August of 2019.  It
 9  was my omission when I initially filed the memo that only
10  the account in Mr. Keirans's son's name was filed.  And
11  then I filed the two additional exhibits yesterday, G1
12  and G2.  They're all different account numbers.  Of
13  course, they were all in the alias of "██████████."
14          THE COURT:  Now I understand.  Thank you.  I
15  appreciate that clarification.
16      All right.  We have, as I mentioned, a number of
17  guideline issues that need to be resolved that both
18  parties have objected to the guidelines.  Mr. Vavricek,
19  the government has the burden for any guideline
20  enhancements that apply.  The government has to prove the
21  basis for those by a preponderance of the evidence.  It
22  seems to make sense -- and I think I can track it just
23  fine -- if you want to address all guideline issues.
24  Hold off on addressing fine or restitution for now, but
25  all the guideline calculations that would go into the
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 18 of 116

offense level, if you want to address those; then I'll
hear from Mr. Nathan, his argument on -- as to those
guideline sections.  I'll then rule on the guidelines,
and then we'll turn to fine and restitution and
attorneys' fees.

     Is that acceptable to you, Mr. Vavricek?

          MR. VAVRICEK:  Yes, Your Honor.

          THE COURT:  Mr. Nathan?

          MR. NATHAN:  Yes, Your Honor.

          THE COURT:  All right.  So, Mr. Vavricek, I'm
happy to hear first from you, sir.

          MR. VAVRICEK:  Thank you, Your Honor.  And,
Your Honor, just as a point of clarification, the
defendant, although he is in criminal history category I,
did score one criminal history category point at
paragraph 74.

          THE COURT:  Did I say otherwise?  I'm sorry if
I did.  He has one criminal history point.  If I said
zero, I was wrong.  He did score one at paragraph 74.  He
remains in criminal history category I.  His other two
convictions did not score any criminal history points.
So if I misstated that, I apologize.

          MR. VAVRICEK:  Thank you, Your Honor.  With
respect to the guideline issues, Mr. Nathan and I have,
of course, spilled a lot of proverbial ink here in -- I

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 19 of 116

1  think we were up, combined, to about 60 pages of

2  briefing.  So I do not intend to repeat all the argument

3  that I gave in my briefing.  I would emphasize a few

4  points.

5      With respect to loss, we do believe that the best

6  estimate of the loss in this case would exceed $250,000.

7  There is this theme in the defendant's briefing that

8  somehow the -- the credit unions are not a victim of this

9  offense, and that's simply not the case.  The defendant,

10  in the undisputed portions of the presentence report, has

11  admitted that he acted with intent to defraud, as we

12  noted in our brief.  And lending institutions simply

13  don't lend to people with fake names and fake

14  identifiers.  And, here, the defendant had taken that

15  money.  Now, did he pay some of it back?  Yes, he did.

16  But he still took it.

17      We also would emphasize that debt from the State of

18  California.  That is statutorily mandated, and that

19  occurred as a result of the defendant's actions in this

20  case.

21      With respect to the lines of credit, we have a

22  number of exhibits on that.  I would emphasize

23  Exhibit 10A, which shows what the defendant was intending

24  to do.  Exhibit 10A shows that these were not just lines

25  of credit in the victim's name that the defendant got.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 20 of 116

1   He was actively seeking -- and these are all -- I culled

2   them down to post August 20th of 2019 to come up with a

3   conservative estimate, in light of the probation office's

4   application of the credit-against-loss rule.  And he was

5   actively seeking to increase these lines of credit, which

6   shows what he was intending to do.

7        In terms of the substantial financial hardship, this

8   is an unprecedented case, I think.  And I couldn't find a

9   case on point, Your Honor.  But when we look at the

10  factors, those are nonexclusive factors.  And if the --

11  you know, the Sentencing Commission is thinking about

12  people who get bankrupted and things like that.  The

13  defendant took everything away from the victim and had

14  him locked up.  And we have a restitution request -- that

15  I understand is not going to be disputed -- to lost

16  earnings, which were a little more than $6,000.  And that

17  was everything for this victim.  So we believe the

18  defendant caused a substantial financial hardship.

19       In terms of the multiple means of identification

20  issue, as I was looking at this, in light of some recent

21  disputes over the compassionate release guideline, it

22  occurred to me that 2B1.6 is ultra vires.  2B1.6 is

23  asking this Court to do exactly what Congress said this

24  Court cannot do.  And, you know, there were disputes over

25  924(c) for some time.  And the Supreme Court has made

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 21 of 116

clear that 1028A has some clear congressional language; that Congress thought that aggravated identity theft was such a serious matter that the 2-year consecutive mandatory minimum sentence that Congress deemed appropriate in situations such as these should not be undercut or undermined by lessening the sentence on any other count of conviction that's related. And that is exactly what 2B1.6 is telling this Court to do by not applying certain levels of enhancements. And so we would ask the Court to find that 2B1.6 is ultra vires here.

In any event, the *Jenkins-Watts* case makes clear that 2B1.6 is not as broad as it appears. And, here, the defendant did more than just possess, use, or transfer means of identification. He also obtained them and caused them to be produced, most notably with respect to the Kentucky birth certificate.

With respect to serious bodily injury, again, this is a bit of an unprecedented case. So, in candor, I can't find a case with the same facts. But, here, we have a situation where, as a result of the defendant's actions, the victim was not only incarcerated, not only hospitalized against his will, but he was administered psychotropic drugs. And to the government's mind, that would qualify as "protracted impairment of a bodily member, organ, or mental faculty." Here, "mental

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 22 of 116

1    faculty" would seem to be the most appropriate.

2         With respect to vulnerable victim, which I would

3    understand to be the last of the guideline enhancements

4    at issue, in light of the defense's compliance with the

5    plea agreement and withdrawal of the physical restraint

6    enhancement, W is -- was clearly a vulnerable victim.  It

7    talks about -- it identifies "age, physical or mental

8    condition," and then there is, of course, Your Honor, the

9    catchall phrase, "or who is otherwise particularly

10   susceptible to the criminal conduct."

11        And, here, the defendant was homeless.  I cited the

12   *Rainford* case out of the Second Circuit, which identified

13   homelessness as a vulnerability.  There was also an

14   oblique reference in the *Moskal* case of the Eighth

15   Circuit, but I would concede that does not appear to be

16   directly on point.

17        With respect to the vlogs, as I noted in our

18   memorandum, I wasn't -- I did cite a couple -- a couple

19   of the vlogs and a couple of time periods within the

20   vlogs.  But my thought, kind of how I approached it, is

21   those vlogs are sort of worth a thousand words.  You have

22   a chance, I've had a chance, nothing in particular, but

23   just to get to know W and to know the situation in which

24   he found himself on the streets of Los Angeles, at least

25   at some very narrow points in time in 2015 and 2016,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 23 of 116

 1  which, of course, is in the middle of the offense conduct

 2  here.

 3      So those -- that -- those were the things I wanted

 4  to highlight, Your Honor, with respect to the guidelines.

 5  And I would rest on my brief and my responsive brief

 6  for -- for everything else.  Thank you.

 7          THE COURT:  Thank you, Mr. Vavricek.

 8      Mr. Nathan.

 9          MR. NATHAN:  Thank you, Your Honor.  I wasn't

10  sure the order in which the Court wanted the arguments

11  addressed, whether the Court was going to have us discuss

12  the 3553(a) factors.

13          THE COURT:  No, no.  All I want to do right now

14  is address the contested guideline issues that go to the

15  determination of the offense level.  We will then turn to

16  fine, attorney's fees, restitution, I'll hear argument on

17  those issues, and then we will turn to the 3553(a)

18  factors and the competing motions by the parties to vary

19  or depart from the guidelines.

20          MR. NATHAN:  Thank you, Your Honor.

21  Respecting --

22          COURT REPORTER:  Mr. Nathan, could I ask you to

23  use one of the microphones, please.

24          MR. NATHAN:  Sure.

25      Respecting the Court's earlier question regarding

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 24 of 116

1  the purpose of the YouTube videos, the defense did cite

2  to particular passages or conversations within the

3  YouTube videos.

4         THE COURT:  And I did go to those.

5         MR. NATHAN:  Then as far as the defense is

6  concerned, no further review of the videos is required,

7  at least from our perspective.

8         THE COURT:  Thank you.

9         MR. NATHAN:  Beginning with the loss amount,

10 Your Honor, the guidelines do state that the purpose of

11 loss estimation is to assess the seriousness of the

12 offense and the defendant's relative culpability.  Here,

13 there was no loss to the credit unions.  The loans were

14 not obtained through material deception.  As the Court

15 read in our sentencing memo, the statute to which

16 Mr. Keirans pled guilty does not require a material

17 fraud.  Mr. Keirans got the loans, importantly, based on

18 his own credit history, not the nonexistent credit

19 history of an unhoused man.  There was no actual loss

20 because Mr. Keirans paid back the loans in full.  Nor was

21 there any intended loss, as Mr. Keirans always intended

22 to and did, in fact, pay back every cent of the loans in

23 a timely manner.

24     The intent of 2B1.1 and the loss amount is to

25 capture the unlawful taking of something with no intent

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 25 of 116

1  to return it.  And that's simply not what happened here.

2  Under these facts, the loan amount is a poor stand-in for

3  loss amount.  And for the same reasons, the credit limit

4  is an equally poor stand-in for loss amount.

5      As far as the hospital costs, as the defense wrote

6  in its sentencing memo, those costs were not reasonably

7  foreseeable to the defendant.  Mr. Keirans is not

8  responsible for the actions of the California criminal

9  justice system when those actions were independently

10  justified.  And I'll turn to later under my 3553(a)

11  argument as to why those actions were independently

12  justified, but for now I would simply reference the Court

13  to my sentencing memo.  The defense agrees with the

14  Court's question earlier.  Based on this record --

15  because it's also unclear whether California intends to

16  retrieve one dime from ████████ -- the hospital costs

17  ought not be considered a loss amount.

18      Finally, the government also cited any debt owed by

19  ████████ supposedly incurred by Mr. Keirans.  I'm not

20  aware of any actual loss.  I'm not aware of any money out

21  of ████████ pocket to pay or offset any monies or

22  debts or credits incurred by my client.  And there was no

23  intended loss here, either, by any of the expenses that

24  Mr. Keirans undertook because, of course, he always had

25  every intent to pay back credit, loans, et cetera.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 26 of 116

Because if he didn't pay back that money, that would only

risk exposing his true identity.  So there was no

intended loss in that context either.

    I'd also turn the Court to objection number 3 at

paragraph 25 of the PSR.  We did there deny that

Mr. Keirans defrauded the credit unions.  So while there

might be fraud in some sense of the word -- and perhaps

I'm parsing words or playing semantic games -- it is

important to remember that Mr. Keirans obtained those

loans based on his own hard work, his own income, and his

own credit history, not ███████████ credit history.

    And it is possible for there to be a victim.  So, of

course, in some sense, the credit unions are victims.

But just because there's a victim does not mean there's a

loss.  The second does not always follow the first.

    Alternatively, as we wrote in our memo, should the

Court find any loss amount, the defense believes that

that loss amount substantially overstates the seriousness

of the offense, and the Court should then depart downward

by an equal number of levels.

    Turning to the issue of substantial financial

hardship, the government writes that ███████████

experienced a substantial financial hardship because of

his incarceration.  Again, as I'll turn to later in my

3553(a) arguments, ███████████ incarceration was a result

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 27 of 116

1  of his own criminal conduct in trying to steal my

2  client's money.  ████████ does not get credit because he

3  happened to be locked up for the wrong thing.  As long as

4  he was properly locked up for any reason, his

5  incarceration was his own fault.

6      If one of my clients committed a crime and happened

7  to be charged with the wrong crime but they could have

8  been properly charged with a different crime, I believe

9  that I and every other defense lawyer knows that we would

10 be told something like, well, your client still did

11 something wrong, and they deserved what happened to them.

12     So ████████ was truly imprisoned for grand theft.

13 Any hardship was his own fault.  And, of course, when I

14 speak in terms of fault, I'm talking about causation,

15 which is a necessary requirement under any guideline.

16     The government also writes that ████████ was

17 forbidden from using his name.  The defense notes that,

18 PSR paragraph 36, there was no probation or paper

19 attached to ████████ sentence, so that prohibition was

20 toothless.

21     Regardless of causation, U.S. Probation is correct.

22 ████████ did not suffer any substantial financial

23 hardship.

24     Turning to the enhancement for means of

25 identification, the government writes that commentary

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 28 of 116

1  note under 2B1.6 is inconsistent with the statute and
2  ultra vires.  The government is incorrect.  The
3  Commission was undoubtedly aware of 1028A(b)(3).  That's
4  why the note is framed to not increase a defendant's
5  sentence.  There is a difference between not reducing
6  something and not increasing something.  So there is no
7  inconsistency.  There is no issue between note 2 and
8  1028A(b)(3).
9       And, as I wrote, the remainder of the government's
10 argument ignores the plain language of the guideline.
11 I'm not going to repeat what I wrote in the memo, but it
12 is clear that what happened here does not appear to fall
13 within the plain meaning of the means of identification
14 enhancement.
15       Turning to the risk of serious bodily injury,
16 whether or not ███████████ imprisonment was proper or
17 improper, the record doesn't really speak toward whether
18 ███████████ imprisonment within the LA County Jail posed
19 a danger to him.  I suppose it depends in which unit he
20 was housed.  I suppose it depends whether or not he had a
21 cellmate and whether his cellmate was dangerous.  But as
22 far as the defense knows, the LA County Sheriff's
23 Department does a fine job of guarding and protecting its
24 inmates.
25       And as far as the psychotropic medication goes, when

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 29 of 116

1    my clients get forcibly medicated to restore their

2    competency, I'm always told by other institutional actors

3    that it's for the good of their mental faculties.  I'm

4    not sure why it would be any different here.  Plainly,

5    when someone is mentally ill and they're given medication

6    to treat their mental illness, there's not an injury.

7        Respecting the government's argument that ████████

8    was in danger from COVID-19 while housed at Linn County

9    Jail, I don't think anyone in the state wrote more

10   motions than me during the pandemic to try to get people

11   out of federal prison, and the government here

12   consistently resisted those motions and wrote that my

13   clients were in no danger from COVID-19 during the

14   pandemic and that the prisons would adequately protect

15   them.  Again, I'm not sure why it's any different now.

16   More importantly, the Court simply doesn't know if

17   ████████  has any health factors that would have exposed

18   him to a greater risk from COVID-19.

19       Regarding the vulnerable victim enhancement, the

20   defense rests on its brief.

21       And regarding the unlawful restraint enhancement,

22   again, the defense withdraws its objection, but does ask

23   the Court to consider our arguments in terms of deciding

24   whether to apply an additional upward departure.

25            THE COURT:  All right.  Thank you, Mr. Nathan.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 30 of 116

```
 1        I'm going to take the guidelines one at a time, rule
 2   on them, and then we will move on to other matters.  The
 3   first guideline that is objected to is loss amount.  I
 4   find here that there is no loss amount.  That does not
 5   mean the credit unions aren't a victim.  The defendant
 6   lied to the credit unions.  He gave them false
 7   information.  Upon that false information, they made the
 8   decision to loan him money.
 9        But I find that the loss amount -- loss enhancement
10   is designed to go after either actual or intended loss.
11   And this is a weird, unique case where the defendant,
12   even though he was using a false name, obtained these
13   loans based on his own income, his own credit history.
14   There's no indication that he ever intended not to repay
15   these loans.  The actual history of his financial
16   transactions shows that he repaid all the loans.
17        Now, I could -- I could hypothesize a situation
18   where somebody does exactly what the defendant did here
19   and he intended to defraud the bank.  It could have been,
20   for example, the first time the defendant took out a loan
21   under a false name, even if it was based on his credit
22   history, he intended to run immediately afterwards,
23   resume his real identity, and, thereby, evade any
24   responsibility for the loan amount that he had obtained.
25   That's not these facts.  It's not this case.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 31 of 116

1    Here, there's just no indication that the defendant

2  ever intended to deprive any financial institution of the

3  amount of money that he obtained, albeit using a false

4  identity, from those financial institutions.  And so, in

5  my view, I just simply do not find that the guidelines

6  intended to assess the defendant with a loss amount under

7  these very unique and unusual circumstances here.

8    And so I am sustaining the defendant's objection to

9  paragraph 62 as to loss amount; in connection with that,

10  his objection to paragraph 7 [sic] and all impacted

11  paragraphs.  I'm also overruling the government's

12  objection to loss amount at paragraph 62.

13    Also at 62 the government is seeking an enhancement

14  for substantial financial hardship.  The problem I see

15  with that is -- without getting into, for the moment,

16  whether, in fact, the victim in this case suffered

17  financial hardship -- we're in chapter 2 of the

18  guidelines right now.  And chapter 2 of the guidelines,

19  as to Count 5, is directed toward the financial crime

20  against the credit unions.  It's not directed to what

21  happened to the victim in this case as a result of the

22  defendant's efforts to have him prosecuted on the claim

23  that he was using the victim -- or the defendant's name

24  falsely.  That's not what chapter 2 is attempting to

25  address here.  Chapter 2 is the financial hardship as a

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 32 of 116

result of the financial crime that the defendant
committed.

The identity theft crime is something separate.
And, here, the victim -- or the defendant was not and did
not inflict substantial financial hardship on any of the
financial institutions. The government's not asserting
otherwise. The government's ground for seeking this
enhancement here is based on the theory that it caused
financial hardship to the victim as a result of the
identity theft. And I just find that that's not what
this guideline is intended to address.

Nor do I find that the record before the Court is
sufficient to establish that the defendant's -- or that
the victim in this case suffered financial hardship as a
direct result of -- of the defendant's action. At the
time that the defendant's theft of the victim's identity
came to light and had an impact on the victim, the victim
was unhoused. The record appears to show he was
unemployed, for the most part, other than some earnings,
which the defendant has since paid. Even those earnings
didn't create a substantial financial hardship. It
didn't create a bankruptcy. He did not go into
bankruptcy or any of the other indicia.

So even if I were to somehow transfer the
substantial financial hardship that was intended to be

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 33 of 116

applicable to the financial victim here across to the
identity theft victim and then somehow apply that to that
victim, I don't find that the government has carried its
burden by a preponderance to show that the victim of
identity theft here suffered a substantial financial
hardship as a result of the defendant's crime.

So I am overruling the government's objection at 62
as to that. But at the same time, I'm overruling the
defendant's objection at paragraphs 25 and 58 to the
extent that the defendant is asserting that the financial
institutions are not victims. They are very much
victims. The defendant lied to those financial
institutions. Those institutions would not have loaned
money to the defendant under that name. Now, they may
have loaned if he had been honest about who he was and
about what his income and credit history was. Perhaps
they would have loaned money to him under his real
identity, but they most certainly would not have done so
if they had realized he was using somebody else's
identity.

And so the financial institutions are victims.
They're just lucky in this case that this defendant
wasn't going to use a false ID and then run on the loans
he obtained. But they are very much victims. So to the
extent the defendant is objecting and claiming otherwise,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 34 of 116

    1    I overrule those objections.

    2         As to the government's objection to failing to

    3    assess the defendant with an enhancement under guideline

    4    section 2B1.6 for obtaining additional false

    5    identifications based on the original false

    6    identification here, I -- I'm overruling that objection.

    7    I don't find that guideline provision to be ultra vires.

    8    I understand the government's argument here, but

    9    Mr. Nathan is right, in my view.  The guidelines are

    10   simply saying don't increase the offense level for a

    11   financial crime if the conduct is otherwise accounted

    12   for, and that's different from decreasing it.  And so I

    13   simply don't find that that's appropriate under the

    14   language of the guidelines, and so I'm overruling the

    15   government's objection at paragraph 63.

    16        The government also objects at 63 to the failure to

    17   assess the defendant with an enhancement under

    18   2B1.1(b)(16) because of the conscious and reckless risk

    19   of serious bodily injury to the victim in this case.  I

    20   don't find that to be appropriate again.  We're under

    21   chapter 2 to begin with, and so, in my view, the

    22   government would have to show that the financial crime

    23   the defendant committed that is the subject of the

    24   chapter 2 provisions here applied somehow and created a

    25   substantial risk of bodily injury to the victim in this

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 35 of 116

case.  And it's the identity theft that the government is
claiming is tied to the victimization there.

     But even were I to apply that here, there's no
showing of bodily injury.  No doubt, the victim in this
case was forced to take psychotropic medication, in part,
because people did not believe him when he was asserting
he was who he claimed to be.  But I don't find that to be
substantial bodily injury or physical injury to the
victim in this case.

     Nor do I find causation there based on what I have
for evidence.  Perhaps he was exposed to COVID.  Perhaps
he was exposed to other risks.  Anybody incarcerated is
exposed to some risk of violence.  Unfortunately, our
prisons are not safe institutions, as much as we would
like and strive to make them.  Every time somebody is
incarcerated, it's a danger.  But I don't find that
there's any showing on this record that the victim was
exposed to particular danger while he was incarcerated,
even if I were to find that applicable for purposes of
this enhancement.  And so I'm overruling the government's
objection at paragraph 63 on that ground as well.

     As to paragraph 64, the enhancement for vulnerable
victim, I'm overruling the defendant's objection to that
paragraph.  I find that the victim was vulnerable.  He
was homeless.  He was clearly suffering from mental

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 36 of 116

struggles.  Here, the answer, in my view, is a little bit
nuanced.  The defendant knew the victim in 1988.  Perhaps
knew at that time the vulnerable state he was in.  But,
in large measure, there's lacking evidence in the record
that the defendant knew whatever happened to the victim
over the ensuing years, up to the point of his entering a
bank in California and attempting to close accounts in
his name.

    But, most certainly, after that happened, the
authorities made the defendant aware.  And it's reflected
in the communication, in the unobjected-to portions of
the PSR, that the defendant was fully aware at later
stages of his continued attempts to have the victim
prosecuted that the victim was homeless.  The defendant
knew he had mental issues; himself was asserting that he
was crazy.

    And under those circumstances, at least at some
point during the orchestration of this continuing fraud
and identity theft, the defendant came to know that the
victim was vulnerable and still, nevertheless, maintained
his efforts to have the victim prosecuted.  So I'm
overruling the defendant's objection at paragraph 64, and
I find that the victim in this case was vulnerable.

    So based on my rulings, here's how I am calculating
the advisory guidelines here:

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 37 of 116

1     At paragraph 61 we have a base offense level of 7.

2     At paragraph 62 there are no enhancements.

3     At paragraph 63 there is a 2-level enhancement for

4  sophisticated means.

5     At 64 there's an enhancement of 2 levels for

6  vulnerable victim.

7     At paragraph 65 there's a 2-level enhancement for

8  physical restraint.

9     That gives us an adjusted offense level of 13.  The

10  defendant has pled guilty to this offense, and so he's

11  entitled to a 2-level reduction under guideline section

12  3E1.1(a) for acceptance of responsibility.  Because his

13  adjusted offense level was less than 16, there is no

14  additional 1-level reduction for acceptance under section

15  3E1.1(b).

16     So that would leave us with a total offense level of

17  11.  The defendant is in criminal history category I.

18  This is not my usual bench, so I had to open up a

19  guideline manual.  So with a total offense level of 11,

20  criminal history category I, the advisory guideline range

21  of imprisonment is 8 to 14 months on Count 5, with a

22  2-year mandatory consecutive on Count 7.

23     Mr. Vavricek, you may maintain your objections to my

24  rulings, but given my rulings, do you agree with my

25  calculation?

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 38 of 116

```
 1          MR. VAVRICEK:  Respectfully, Your Honor, we do
 2   not.  Guideline section 2B1.1(b)(10) states that if there
 3   is a sophisticated means enhancement, the resulting
 4   offense level must be at least 12.  Because the Court
 5   reduced the offense level by 8 levels for no loss, we are
 6   below 12.  So it should be increased to 12.  2 levels for
 7   vulnerable victim; 2 levels for restraint; 3 levels for
 8   acceptance.  A level of, I believe -- as I've calculated
 9   it -- 13.
10          THE COURT:  Thank you for pointing that out to
11   me, Mr. Vavricek.  Let me take a look at that again.  So
12   you're saying the base offense level would remain at 7.
13          MR. VAVRICEK:  Correct.
14          THE COURT:  There would be a 2-level
15   enhancement for sophisticated means, but because it's not
16   yet 12, it has to go up to 12.  We would still have a
17   2-level enhancement for vulnerable victim and a 2-level
18   enhancement for physical restraint, and that would get us
19   to 16.  Because it's 16, then there would be a 3-level
20   reduction for acceptance, which takes us down to a total
21   offense level of 13.  Is that your position?
22          MR. VAVRICEK:  Correct, Your Honor.
23          THE COURT:  Yeah, and I think you're right.  I
24   missed the sophisticated means requirement, that there
25   would be a base offense level of 12.  So thank you for
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 39 of 116

1  bringing that to my attention.

2     So with a total offense level of 13, criminal

3  history category I, the advisory guideline range of

4  imprisonment for Count 5 would now be 12 to 18 months.

5     With that, Mr. Vavricek, do you agree with my

6  calculation?

7       MR. VAVRICEK:  Yes, maintaining our prior

8  objections, of course, Your Honor.  Thank you.

9       THE COURT:  Maintaining your objections, of

10  course.

11     Mr. Nathan, given my rulings, do you agree with my

12  calculations?

13       MR. NATHAN:  Yes, Your Honor.

14       THE COURT:  Thank you.

15    Officer Freese?

16       PROBATION OFFICER:  Yes, Your Honor.

17       THE COURT:  All right.  I want to turn now to

18  the issue of the financial penalties here, which may

19  include a fine, attorney's fees, and restitution.  Here,

20  it is the government's burden to establish restitution

21  amount.  It's the defendant's ability -- or burden to

22  show that he is unable to pay a fine.  And it's the

23  defendant's burden to show that he is unable to pay costs

24  of his own counsel.  So we've got divided burdens.  It

25  makes sense for me to hear first from the government on

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR   Document 69-1   Filed 02/19/25   Page 40 of 116

```
 1  all the issues, then hear from Mr. Nathan, then I'll rule
 2  on those, and then we'll move on from there.
 3      So, Mr. Vavricek.
 4          MR. VAVRICEK:  Thank you, Your Honor.  On these
 5  issues, I would rest on my briefing.  One thing I wanted
 6  to point out, Your Honor, is that it's -- it's my
 7  understanding from reviewing all the briefs that
 8  restitution in the amount of $6,190 for lost wages to W
 9  is not in dispute.  With respect, I did want to point out
10  that the -- the victim at docket 37 -- docket 37-2 has
11  made an additional request, and I would just ask that
12  the Court consider his request.  And he may be making a
13  victim impact statement that relates to that.
14          THE COURT:  All right.  So any ruling I make
15  regarding restitution will be subject to at least hearing
16  from the victim if he addresses that issue.
17      As to the restitution for lost wages, it's my
18  understanding that the amount in dispute that has already
19  been paid by the defendant is $6,390.  Is that consistent
20  with your understanding?
21      Or Mr. Nathan?
22          MR. NATHAN:  The reason it's $200 extra is that
23  he, of course, first paid the --
24          THE COURT:  Oh, special assessments.
25          MR. NATHAN:  -- court assessments, and then the
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR   Document 69-1   Filed 02/19/25   Page 41 of 116

 1    difference is restitution.

 2            THE COURT:  Understood.  All right.

 3        Mr. Nathan, if you would address these issues.

 4            MR. NATHAN:  Yes, Your Honor.  First, regarding

 5    restitution, as the Court stated, Exhibit T does reflect

 6    that restitution and the mandatory assessments have been

 7    paid in full.

 8        Regarding the remainder of the restitution request

 9    from the victim, ████████, apparently it's based on some

10    sort of Bank of America account in his name.  But per

11    Exhibit P, the returned subpoena from Bank of America

12    reflects that they have no record of a ████████████ of

13    any name ever having a bank account with them.  So the

14    record simply does not support any restitution amount

15    beyond the $6,190.

16        Turning to the issue of the fine, which is the

17    defense burden, Exhibit O does reflect that there is some

18    issue with Mr. Keirans's ability to properly title his

19    vehicles.  Obviously, if vehicles aren't properly titled,

20    they can't be transferred.  If they can't be transferred,

21    their liquidity is in question.  It's also clear that

22    he's in no position to earn anywhere close to what he

23    used to make.  And, of course, his wife does have a

24    fairly modest salary as a teacher.

25        All that said, the defense acknowledges that

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 42 of 116

1  Mr. Keirans does have assets.  However, the defense
2  disagrees with the government's request for a sentence --
3  or a fine at the top of the range.  The defense believes
4  that, at most, the Court should impose a fine at the
5  bottom of the range.
6       Turning to attorney costs, I will note that the
7  hours I submitted did not reflect the time I spent
8  writing the sentencing memo all of last week, so the
9  hours are likely significantly higher.  I can update that
10 accordingly.
11      But ultimately, our position is that -- because from
12 my reading of the statute that the attorney costs would
13 be imposed after the assessment of the restitution and a
14 fine -- at that point, it's unlikely that Mr. Keirans
15 would be in a position to pay for the cost of attorney
16 fees.  And, of course, as I wrote, the defense is
17 generally uncomfortable with the idea of defendants
18 reimbursing for the cost of representation.  That said, I
19 acknowledge the statute.
20      THE COURT:  All right.  As to restitution, I do
21 find the defendant has conceded that he owes at least
22 $6,190 to the victim in this case, and that will be
23 ordered as part of the restitution.
24      As to any remaining restitution, I will await the
25 victim impact statement and make a further ruling

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 43 of 116

1   regarding restitution after I hear from the victim in

2   this case, if he wishes to address that.

3       As to the ability to pay a fine and attorney's fees,

4   I do find the defendant has the ability to pay a fine.

5   And I will determine the amount of the fine after I take

6   into account all the other 3553(a) factors.  But he

7   clearly has a positive net worth and sufficient assets to

8   pay for -- to pay a fine.

9       I also find the defendant has financial assets

10  sufficient to pay at least a portion of his attorney's

11  fees.  In my view, Mr. Nathan is one of the best defense

12  attorneys I have ever seen, and he comes at the

13  taxpayers' cost at this point.  And the defendant has got

14  the benefit of an attorney without having to pay anything

15  for it, and yet he has substantial assets sufficient to

16  be able to pay at least a portion of the cost of his

17  attorney's fees.

18      By my calculation, given the disclosure that the

19  defense has made at Exhibit R, the total amount of

20  attorney's fees for Mr. Nathan would -- up to the point

21  of last week, would come to about $16,500.  There are

22  additional amounts of about $350 that would be paid for

23  investigator and staff members.  So that would roughly

24  come out, again, to about 16,800 or -900 dollars.  I am

25  going to find, again, based -- after I hear the 3553(a)

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 44 of 116

```
 1   factors, the defendant is able to pay at least a portion
 2   of his attorney's fees here.  So that is my tentative
 3   ruling at this point on those issues, subject to the
 4   3553(a) factors and the victim impact statement.
 5        All right.  Mr. Vavricek, I think we've resolved
 6   everything at this point except for the ultimate sentence
 7   to be imposed, subject to the competing motions by the
 8   parties for the Court to sentence the defendant outside
 9   the advisory guideline range, either through departure or
10   variance.  Do you agree?
11            MR. VAVRICEK:  Yes, Your Honor.
12            THE COURT:  Mr. Nathan?
13            MR. NATHAN:  Yes, Your Honor.
14            THE COURT:  All right.  I will hear argument
15   first, then, from the government regarding the sentence
16   to be imposed and the variance and departure motions.  I
17   will then hear from Mr. Nathan on those issues.  My guess
18   will be that by the time we get done with those, we're
19   going to be around 10:30.  We'll probably take a break at
20   that point.  Then when we come back, I will hear from the
21   victim in this case, if he wishes to address me.  And
22   then I will hear from the defendant, if he wishes to say
23   anything to me.  And then I will impose sentence.
24        So, Mr. Vavricek, I'm happy to hear first from you,
25   sir.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 45 of 116

                    MR. VAVRICEK:  Thank you, Your Honor.  Your

 1     Honor, only Franz Kafka, if he were a modern American,

 2     possibly could have imagined the disturbing facts of this

 3     case.  It starts way back when, and it's a tragedy, but

 4     it's no tale.  It's true.  And I know the Court has

 5     studied the evidence carefully, but with the Court's

 6     permission, and because Congress has instructed that the

 7     Court should consider the nature and circumstances of the

 8     offense in deciding what sentence to impose, I'm going to

 9     say it here again.  And here's how it goes.

10          In 1988 the defendant and W were homeless men

11     working at a hotdog cart in Albuquerque, New Mexico.

12     Soon thereafter, the defendant assumed W's identity.  For

13     the next three decades, defendant used W's identity in

14     every aspect of his life.  Defendant obtained a Social

15     Security card, a birth certificate, employment,

16     insurance, driver's licenses, titles, loans, bank

17     accounts, and various forms of credit, all under W's

18     identity.  And among other things, between March 2014 and

19     May 2022, the defendant obtained over $266,000 in loan

20     money from federally insured credit unions right here in

21     the Northern District of Iowa.

22          Now, the defendant prospered under W's identity.  By

23     2013 he was living in Wisconsin and working remotely at a

24     large Iowa City hospital in a high-level administrative

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 46 of 116

position.  He had the keys to the kingdom.  The hospital's critical information technology systems were under his control.  He was experienced, proficient in a specialized field, and paid very well.  By modern society's standards and all appearances, he was a successful and trustworthy man.

W, on the other hand, continued to walk a tougher road in life.  W remained homeless and was transient, ending up on the streets of Los Angeles.  By happenstance, the Fousey vlogs that are in evidence show, in sharp relief, W's struggles in Los Angeles during two brief snapshots in time in 2015 and 2016.  He had no home, no car, and few possessions.  In our modern American society, W was all but invisible.

Fast-forward to August 20, 2019, a fateful Tuesday morning in Los Angeles, California.  After finding out someone had taken out credit in his name, W walked into the Fairfax Avenue branch of a national bank around 10:40 in the morning and approached an assistant branch manager.  W told the banker that someone had been using his credit and had accumulated large amounts of debt in his name.

When the banker asked W a series of security questions associated with the accounts on file, W was unable to answer them.  He was unable to answer them

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 47 of 116

because the defendant had opened the accounts at the bank in W's name and using W's date of birth and Social Security number. The banker called LAPD.

Upon arrival, LAPD officers spoke with defendant via telephone. Defendant said he had been living in Wisconsin and hadn't given anyone in California access to his bank accounts. Defendant faxed the officers a Social Security card, a Wisconsin driver's license, and a Kentucky birth certificate on the false pretense that defendant was the true W. And the officers arrested W on a felony false impersonation charge, and a state court judge remanded W to the Los Angeles County Jail without bail. Adding insult to injury, W was booked under a variant of defendant's name, Matthew Kierans.

All of that, Your Honor, would be terrible enough. That would warrant a significant sentence here. But that was only the beginning of W's nightmare, which would extend years into the future. It only foreshadowed the depths of the defendant's callousness and ruthlessness.

The next day, on August 21, 2019, the LAPD called defendant a second time. In that call they asked defendant if he wanted W prosecuted. And defendant affirmatively stated to the officer that he, quote, "wishes to prosecute," end quote, the suspect that is, quote, "using his identity," end quote.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 48 of 116

        1      Defendant's request to prosecute W had dire
        2  consequences for him.  W languished in some of the darker
        3  corners of the California criminal justice system for the
        4  next 575 days.  The Court now has before it the
        5  unredacted transcripts of the California proceedings in
        6  which W was falsely prosecuted.
        7      We don't know everything here, but what we do know
        8  is that W repeatedly protested his false prosecution.  At
        9  his preliminary hearing on October 17th -- and this is
       10  Exhibit 14A, page 5 -- W tells the Court, "False identity
       11  against me.  I'm Mr. W."
       12      At the next hearing, on November 19, 2019, W
       13  attempts to interject that he has some important
       14  information, and there's a discussion on the record about
       15  getting to the bottom of an issue with his fingerprints.
       16  That's Exhibit 14B.  But W's ordeal continues.  And this
       17  was during some of the worst days of COVID.
       18      After 428 days in the Los Angeles County Jail, still
       19  insisting he was W and not Keirans, the judge ordered W
       20  to a mental hospital.  The judge also ordered W to
       21  receive psychotropic medication against his will.  W
       22  spent the next 147 days in the mental hospital.
       23      Now, all the while, Your Honor, the defendant was
       24  closely monitoring the situation.  And this is the point
       25  where the defendant revealed a callousness and

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 49 of 116

ruthlessness that I would respectfully suggest shocks the

conscience.  Defendant showed his callousness during all

this time W was without his liberty.  Defendant

repeatedly made false statements to the LAPD, as well as

the LADA.  Defendant contacted the LAPD and the LADA,

quote, "numerous times," end quote, requesting updates on

W's case.  Defendant falsely asserted he was the victim

of identity theft.  He even went so far as to demand

updates and requested that one of the assistant district

attorneys, quote, "represent my concerns," end quote,

with the delay in the criminal proceedings.

Remarkably, defendant, in his sentencing papers

filed in this court and here again today, now tries to

distance himself from what happened to W after defendant

made his false report of identity theft to LAPD.  But,

Your Honor, it must be remembered that it was the

defendant who held the keys to W's chains the entire

time.  All the defendant had to do was come clean.  He

never did that.  He doubled down over and over again.

Now back to W.  Facing no less than 32 months in

prison and up to 6 years in prison, W took a deal.  In

exchange for his pleas of no contest, he would be

released immediately.  So he took the deal.

And at this point, W has nothing.  He's without a

home.  He's a convicted felon.  And he's endured the

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 50 of 116

repeated administration of psychotropic drugs. All he
has left is what remains of his identity: His name. But
he had that last shred of human dignity taken away from
him too. The state court ordered W to not use his own
name in the future. The Court ordered him to use a
variant of the defendant's name. So at this point in
2021, W had nothing left, not even his own name.

But W's saga doesn't even end there. The
defendant's relentless attempts to crush W continued.
Between 2021 and 2023, defendant, on his own accord and
of his own volition, repeatedly made false reports and
statements to law enforcement officials in Wisconsin and
California. For example, in August 2021, the defendant
filed a complaint with his local Wisconsin police
department alleging that W had stolen his identity. In
September 2022, he filed a second report. And in the
second report he asked that the incident be forwarded to
the LAPD.

And to clarify the record, W was on probation at
that time. That's in paragraph 45 of the presentence
report. Now, the defendant denies he was trying to get
W's probation revoked, but he most certainly was. If not
that, he was trying to get him arrested again.

Now, to his credit, W persisted. Many people,
having undergone what he went through, might have struck

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 51 of 116

out in violence.  But he didn't.  Instead, he figured out
that the defendant was working at the Iowa City hospital.
And, I would point out, at his own peril -- because he
was on probation and had been ordered not to use his own
name -- told the hospital he was the real W and the
defendant had stolen his identity.  And the hospital,
thankfully, referred the matter to Detective Ian Mallory.

What happened next, Your Honor, is remarkable.
Detective Mallory did what so many in our society would
not do.  He listened to W and heard him out.  And despite
all appearances and society's prejudices, Detective
Mallory conducted a thorough investigation of W's
complaint based on the facts and the facts alone.  He
followed those facts where they led him.  And when he did
so, he discovered that matters were not what they
appeared.  The homeless felon from California was telling
the truth.  And the high-level administrator, running
critical parts of the Iowa City hospital, was a
sophisticated and ruthless fraud.

Those are the nature and circumstances of the
defendant's offenses, and they are extremely aggravating,
Your Honor.  This is not a guidelines case.  The
Sentencing Commission could not have foreseen this case.
By statute the Court must sentence defendant to 2 years
of imprisonment on Count 7.  Congress has identified

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 52 of 116

     1    identity theft as such a serious matter that it is the

     2    only federal fraud statute of which I'm aware for which

     3    there is a mandatory consecutive minimum sentence.  And

     4    Congress has further instructed this Court that when

     5    sentencing on another count, to ensure that this 2-year

     6    sentence is given full effect, the Court should not even

     7    consider the fact that the mandatory consecutive minimum

     8    sentence will be imposed.

     9         For Count 5 Congress has authorized the Court to

    10    sentence defendant to between zero and 30 years of

    11    imprisonment.  As the Court is well aware, this

    12    offense -- false statement to a credit union -- may be

    13    committed in a myriad of ways.  And the government

    14    requests a sentence in the middle of this statutory

    15    range, or 15 years.

    16         To be certain, the nature and circumstances of the

    17    defendant's offense are extremely aggravating.  There is

    18    a way to commit this false statement crime on one

    19    occasion; for example, overstate the value of an asset to

    20    qualify for a home loan, even if it's in a nonmaterial

    21    way.  But absent killing W or stealing millions of

    22    dollars from him, it's difficult to imagine how a

    23    defendant might commit this false statement offense in a

    24    more egregious way.

    25         So, respectfully, this statutory sentencing factor

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 53 of 116

of the nature and circumstances of the offense, as well
as the personal history and characteristics of the
defendant, warrants a sentence near the very top of the
statutory range.

To the extent there are mitigating factors, those
are reasons not to sentence the defendant at the
statutory maximum. Our recommendation of a sentence at
the middle of the statutory range strikes a balance
between the extremely aggravating offense conduct, which
would justify a sentence at the top, yet also recognizes
that the defendant pled guilty and he does not have a lot
of other criminal history.

Respectfully, however, Your Honor, defendant's
relative lack of other criminal history does not mean
that the defendant is not a danger. Defendant, as I've
repeatedly said, is calculating and ruthless.
Essentially, his entire adult life has been a crime.
But, as I noted before, even before the offense conduct
began in this case in 1988, the defendant was convicted
of forgery for stealing from his own adoptive parents.

Further, defendant has shown little remorse and did
not turn himself in. It was only when defendant was
totally cornered by Detective Mallory, who by that point
was armed with DNA evidence, that defendant finally
admitted who he really was.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 54 of 116

1    And I would respectfully suggest, Your Honor, that

2   the defendant's criminal mindset continues to show itself

3   in these sentencing proceedings.  In his sentencing

4   memorandum, and again alluded to today, the defendant

5   calls W a wrongdoer and deserving of a conviction and

6   punishment for trying to steal the defendant's money.

7   The defendant speculates, without evidence, that W likely

8   was engaged in thievery -- that's page 18 of his

9   memorandum -- and, in fact, was guilty of grand theft, as

10  we heard here again today, and had what was coming to him

11  in the California criminal justice system anyway.

12    Defendant goes so far as to say, quote, "It is a

13  good thing," end quote, that W got psychotropic

14  medication and questions whether, given the circumstances

15  in his life, W might have preferred incarceration to

16  liberty, similarly suggesting that W's false imprisonment

17  and commitment to a mental hospital were perhaps to his

18  benefit and preferable to living on the streets of

19  Los Angeles.

20    This line of thinking, which the evidence does not

21  support and gives no regard whatsoever to human dignity

22  and agency, provides insight into the defendant's

23  thinking even today and should give the Court great pause

24  before accepting any argument that defendant does not

25  pose a danger to society.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 55 of 116

```
 1        And on that note, Your Honor, I would respectfully
 2   disagree with any characterization of this offense as
 3   nonviolent.  This offense was worse than many classically
 4   violent crimes.  The defendant degraded W, deprived him
 5   of his liberty for 575 days, and turned his life into a
 6   modern Kafka novel.  Although defendant attempts to shift
 7   blame to others here, even to W himself, it was the
 8   defendant who was the primary and malevolent force behind
 9   W's suffering from August 20th of 2019 onward.  The
10   defendant repeatedly sought to use institutional actors
11   as tools to hammer W over and over again.
12        A just punishment demands a sentence of 15 years on
13   Count 5.  Thank you.
14             THE COURT:  Thank you, Mr. Vavricek.
15        (The Court conferred briefly with the court
16   reporter.)
17             THE COURT:  All right.  Mr. Nathan, I'm happy
18   to hear from you next, sir.
19             MR. NATHAN:  Thank you, Your Honor.  It's not
20   the most important detail in this case, but I did want to
21   share with the Court, through my screen, a transcript
22   from proceedings in Los Angeles dated May 11th of 2021.
23   And this just goes toward the issue of whether or not
24   ██████████ was on probation.  I'm scrolling now to page 4
25   where there's a conversation between the Court and the
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 56 of 116

 1   prosecutor, and the Court says, "The problem is, my

 2   understanding is he got a county jail sentence, 1178

 3   sentence, with no tail."  I assume "tail" is a reference

 4   to "paper."  So there were no conditions.  No conditions,

 5   of course, is consistent with no probation.

 6       And then, if there was any lack of clarity, the

 7   prosecutor then says, "But he's on probation for 2 years,

 8   correct?"

 9       And the Court says, "No, he got 2 years."

10       And then, to their credit, the defense attorney on

11   page 5 clarifies, "Your Honor, so the Court is not making

12   any record finding that my client can't use the name if

13   he identifies as ███████████.  It's not criminal.  The

14   Court has no jurisdiction, correct?"

15       The Court:  "If he uses the name for any purpose, it

16   could be false impersonation," et cetera.

17       Defense lawyer:  "Of course.  Thank you."

18       So that doesn't really matter a whole lot, but

19   there's a reason I argued there was no probation.  Again,

20   not really here or there.

21       I want to talk about harm and intent, because harm

22   and intent are two of the most important factors for any

23   court to consider in arriving at a just sentence.  I'm

24   going to focus almost entirely on the factor of harm.

25   Now, of course, within the harm prong there is a

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR   Document 69-1   Filed 02/19/25   Page 57 of 116

1 causation requirement.  Let's discuss the issue of

2 causation with that in mind.

3      The government writes and the government just argued

4 that Mr. Keirans's offense is Kafkaesque, and perhaps it

5 is.  But if it is, the government's request for a 17-year

6 sentence is equally, if not more, Kafkaesque.

7 Mr. Keirans's conduct did not cause ▇▇▇▇▇▇▇ to be

8 falsely imprisoned.  ▇▇▇▇▇▇▇ was lawfully imprisoned

9 because of his own conduct.  When ▇▇▇▇▇▇▇ found out

10 that Mr. Keirans had assumed his identity, ▇▇▇▇▇▇▇ did

11 not report the identity theft to the police.  Instead,

12 when ▇▇▇▇▇▇▇ found out about Mr. Keirans's offense

13 conduct, Mr. Keirans tried to -- excuse me -- ▇▇▇▇▇▇▇

14 tried to steal Mr. Keirans's money.  He only reported the

15 identity theft to U.S. Bank in an effort to steal the

16 money.

17      Now, the government writes and the government just

18 argued that my argument is unsupported by the record.

19 The government is incorrect.  Closing an account means to

20 withdraw all of the money from the account.  Practically,

21 you can't close an account if there is money in the

22 account.

23      And, of course, the defense is not asking the Court

24 to rely solely on the words of the defense.  Instead, the

25 Court can and should also rely on the words of the

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 58 of 116

1   assistant head deputy for the Los Angeles District

2   Attorney's Office at Exhibit H.  The Court can and should

3   also rely on the defense proffer, which references

4   communications between ████████ defense attorney and

5   the LADA's office.

6        ████████ did commit a grand theft, and that is

7   punishable as a felony in the State of California.  In

8   the words of the assistant head deputy of the LADA's

9   office at Defense Exhibit H, quote, "I reviewed our case

10  and the information you sent.  As far as our conviction

11  goes, I do not believe there is an issue with our

12  conviction since the defendant," referring to ████████,

13  "did enter a bank and attempted to take money from an

14  account that was not his," end quote.

15      So perhaps ████████ was improperly convicted of

16  identity theft and false impersonation, but ████████

17  could and should have been charged and convicted of grand

18  theft.  Recall our proffer, which the Court may consider

19  without objection.  When it came to light that ████████

20  was, in fact, the real ████████, ████████ defense

21  lawyer approached the LADA's office and asked them about

22  vacating ████████ conviction for false impersonation

23  and identity theft.  And I'm going to paraphrase.  The

24  LADA's office response was, "Sure.  ████████ can come

25  into court, and we'll vacate his convictions for identity

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 59 of 116

1    theft and false impersonation, and then he can plead to

2    grand theft."

3         Now, of course, the government argues in writing

4    that the Court should give little weight to the words of

5    those two DAs who believe ████████ tried to steal money.

6    Of course, the defense could make the same argument that

7    the Court should give little weight to the decisions of

8    management and politicians at the higher levels of the

9    LADA's office because it was their decision to exonerate

10   him without charging him.

11        The difference between the arguments of the defense

12   and the government is that the defense argument is

13   supported by the words of frontline ADAs.  Any

14   institutional actor knows that it is the frontline

15   defense lawyers, it is the frontline public defenders,

16   and the frontline ADAs who have their fingers on the

17   pulse of a case.  And they make their decisions without

18   any consideration of politics or expediency.  The cause

19   of ████████ incarceration was his own conduct.

20        Mr. Keirans's offense conduct also did not result,

21   did not cause, the hospitalization of ████████ either.

22   He deserved to be charged.  And once he was charged, the

23   defense exhibits demonstrate that he exhibited numerous

24   delusions in open court.  And to be clear, the defense

25   exhibits, the delusions to which I'm referring, have

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 60 of 116

1  nothing to do with his claims -- true claims -- that he

2  was ███████████.  The delusions he exhibited in open

3  court, independent of his true claims that he was the

4  real ███████████, would have caused any defense lawyer,

5  any judge, to have ███████████ evaluated for competency.

6  ███████████ hospitalization stemmed from, resulted

7  from, his own delusions and mental illness, independent

8  of Mr. Keirans's conduct.  And, again, I'm not talking

9  about intent here.  I'm talking about harm and the

10  causation necessary to prove harm.  It's important to

11  remember that, while Mr. Keirans assumed ███████████

12  identity, there's a reason the government does not write

13  or argue just now that Mr. Keirans stole ███████████

14  identity.  That's because the record does not demonstrate

15  that Mr. Keirans stole ███████████ identity.  That said,

16  the defense acknowledges that consent is not a defense to

17  identity theft.

18       So it is true that Mr. Keirans assumed ███████████

19  identity.  But isn't it worth asking what Mr. Keirans did

20  after he assumed ███████████ identity?  And the

21  government's already talked about the bad, so I'll

22  discuss the good.  Here's what he did.

23       He got married, and then he and his wife had a

24  child.  And he got a good six-figure job to support his

25  wife and child.  And I hear this noise about how he was

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 61 of 116

1  in charge of the operating infrastructure for computer

2  systems at UIHC.  It's a red herring.  It's smoke.  He

3  didn't do anything to endanger UIHC's systems.

4       And importantly, as even the government

5  acknowledged, Mr. Keirans has no convictions for

6  unrelated conduct since 1985.  Now, someone could try to

7  minimize the absence of criminal convictions between 1985

8  and 2023 by pointing out that getting arrested might have

9  exposed his identity.  It's a valid point.  But it's also

10 valid to respond that, regardless of the motivation, the

11 outcome is the same.  But for the offense conduct, other

12 than the offense conduct, Mr. Keirans led as law-abiding

13 a life as any citizen during that time.  He led a good

14 life, albeit under someone else's name.

15      We don't know why Mr. Keirans assumed ████████

16 identity.  Maybe it was to get a clean start.  Maybe not.

17 But what we do know is that Mr. Keirans did not assume

18 ████████ identity to do things like the defendant in

19 the *Hawes* case -- H-A-W-E-S -- that I cited to the Court.

20 The *Hawes* defendant used that victim's life to lead a

21 life of crime of his own.  Mr. Keirans used ████████

22 name to lead an admirable life, at least until August of

23 2019 when, as I'll touch on later, obviously, he should

24 have come clean.

25      It is true that ████████ is unhoused.  As a public

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 62 of 116

1  defender for more than 20 years, I have as much sympathy

2  for the marginalized as anyone else in this courtroom.

3  But ████████ was unhoused long before he tried to steal

4  my client's money.  He's been unhoused since 2011 at the

5  latest.  And, indeed, it appears that he may have been

6  unhoused since 1988.  ████████ was also mentally ill

7  long before he tried to steal my client's money.

8       In short, Mr. Keirans did not cause either

9  ████████ homelessness or his mental illness.  A

10 YouTuber even tried to help ████████ become employed and

11 housed in 2015.  It is sad that ████████ squandered that

12 opportunity.  But, again, ████████ homelessness and

13 mental illness were not caused by Mr. Keirans.

14      As I am told so often by other institutional actors,

15 those were ████████ own choices, choices including the

16 decision to try and steal my client's money.  And that

17 choice had little to do with my client.

18      The government notes that the California state court

19 judge remanded Mr. Keirans -- excuse me -- ████████

20 without bail.  That's not my client's call.  That was

21 entirely up to the state court judge and not foreseeable

22 to Mr. Keirans.  Personally, I agree that no bail is

23 harsh for a nonviolent offense, but it's almost ironic

24 that the government here criticizes the California system

25 for that.  That's Kafkaesque.  After all, the government

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 63 of 116

1    here does the same thing.  My client is a nonviolent

2    offender.

3        Then the government writes that it is entirely

4    Mr. Keirans's fault that ████████ remained in LA County

5    Jail.  First, and to iterate what I've already argued,

6    ████████ was arrested because, instead of going to the

7    police to report Mr. Keirans's crime, he reported a

8    crime -- excuse me -- he committed a crime of his own.

9        Second, the government's argument entirely absolves

10   the role that the LADA's office played here.  The LADA's

11   office should have figured out that ████████ was the

12   real ████████, and then they should have properly

13   charged him with grand theft.  To ignore the roles that

14   the LADA's office and ████████ played here in

15   ████████ imprisonment and conviction and to lay all of

16   that at Mr. Keirans's feet overstates Mr. Keirans's

17   culpability.

18       The government also writes about the societal power

19   imbalance between ████████ and Mr. Keirans.  Presumably

20   they write and argue this as aggravation.  Defense

21   lawyers frequently argue about power imbalances as well

22   to prosecutors, and those arguments fall on deaf ears.

23   Here, the government's argument about power imbalance

24   ignores that the LADA's office had the power to figure

25   out that ████████ was the real ████████.  The

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 64 of 116

```
 1   government's argument again overstates Mr. Keirans's role
 2   and culpability in what happened to ███████.
 3        The government writes that Mr. Keirans's entire life
 4   was a lie.  This is an exaggeration.  Mr. Keirans's work
 5   skills were not a lie.  He did not pretend to be
 6   ██████████ to pretend to have ████████████ work skills.
 7   Mr. Keirans's love for and love from his wife and child
 8   were also not a lie.  His lie does not undermine the good
 9   life that he led for his family or the support that he
10   provided to his family.  So maybe the life Mr. Keirans
11   led was a lie, but it was mostly a good life all the
12   same.
13        Turning to the grounds for upward departure and/or a
14   variance, the government writes that note 21 to 2B1.1 may
15   justify an upward departure because the offense conduct
16   caused or risked substantial nonmonetary harm.  The Court
17   here has already found that it did not cause or risk
18   monetary or nonmonetary harm.
19        Regarding 3A1.3, the restraint here, if any, was not
20   egregious, much less sufficiently egregious to depart
21   upward beyond application of the 2-level enhancement for
22   restraint that Mr. Keirans already received.  And, again,
23   there are also issues of control and agency that I raised
24   in my brief, which militate against departing upward
25   under this ground.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 65 of 116

1    Respecting 5K2.3, 5K2.3 is a poor fit for a mentally

2  ill individual restored to competency.  5K2.8 is an

3  equally poor fit.  There is no injury, much less a

4  gratuitous one.  To repeat the words of the LADA's

5  office, ███████ deserved to be charged and convicted

6  for theft.  Assuming causation, any pain from the

7  imprisonment was deserved.  Again, not talking about

8  intent.  I'm talking about harm and causation.

9    All of that said, I acknowledge that there is

10  humiliation from no one believing that you are who you

11  say you are.  Of course there is.  But that humiliation

12  was incidental to ███████ delusions and secondary to

13  his attempted theft.  It's not the audience's fault when

14  they don't believe a thief.  Again, there's an issue of

15  agency here, as the LADA's office is the primary actor

16  who is responsible for what happened to ███████.

17    To be clear, I am not arguing that offenders may

18  escape justice by having a third-party medium do their

19  bidding, but I am arguing that prosecutors are uniquely

20  responsible for prosecuting.

21    This case is unique, so it's helpful to step back

22  and ask how Mr. Keirans got here.  On August 20th of 2019

23  when U.S. Bank called Mr. Keirans, if Mr. Keirans had

24  simply, there and then, confessed, if he had ended it all

25  in August of 2019, if he had done the right thing then,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 66 of 116

there would be a really good argument that he deserves no

worse than a bottom-of-the-range sentence and probably

even a better argument that he deserves a downward

variance.  But the difference here between what

Mr. Keirans should have done and what he actually did is

not worth 15 years.

I'm not going to belabor the points I've already

written and spoken about, but I do want to repeat, for

the good of the record and the good of Mr. Keirans's

name, that he did already pay the restitution owed to

███████████.  Frankly, there was an argument that

Mr. Keirans did not owe ████████████ a dime.  But while

there are some people who are all bad, people who are all

bad are the exception.  It's rare to find someone who is

all bad.  It's equally rare to find someone who is all

good.  Most of us are a little bit of one or the other.

Before August 19th of 2019, Mr. Keirans was mostly

good.  His work, his family, and his otherwise

law-abiding behavior proved that.  But Mr. Keirans knows

that he did some bad things on and after August 19th of

2019.  That's why he pled guilty, and that's why he paid

restitution, because he does feel remorse.  Mr. Keirans

paid the restitution and he pled guilty because he is

mostly good; a mostly good man who did some bad things

here on and after August 19th.  But he's a mostly good

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 67 of 116

1   man who does not deserve more than 5 years in prison.

2       I want to talk now a little bit about deterrence and

3   just punishment.  This is a unique case, so the defense

4   does believe that whatever value there is in general

5   deterrence is limited.  And the same way, that because

6   this case is almost unique, that any value from specific

7   deterrence is limited.

8       And as far as just punishment, the aggravation here

9   is -- as I have sort of subtly or implicitly acknowledged

10  and as the government argued -- Mr. Keirans's intent,

11  right?  I don't think there was any incremental or

12  marginal harm, but there obviously was an intent that was

13  worth punishing.

14      And now I'll turn the Court back to my sentencing

15  memo where the defense asked the Court to not impose a

16  sentence of more than 60 months.  The range the Court

17  arrived at, which I think is roughly 36 to 44 months --

18  with the 2 years, plus the 12 to 18, that's right around

19  3 to 3 and a half years -- that's where the defense

20  expected the Court to fall on the guideline range.  And

21  then we ask for a sentence of no more than 60 months

22  because the defense acknowledges, as I wrote in my memo,

23  the note at section 2B1.1, 21(A)(vi)(I) -- it's pretty

24  spot-on; it's hard to get around it -- the guidelines

25  identify what happened here as a ground for an upward

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 68 of 116

 1  departure.  And the defense also recognizes that there is

 2  aggravation here in the form of Mr. Keirans's intent.

 3      So when the government talks about Mr. Keirans not

 4  feeling remorse, when the government talks about

 5  Mr. Keirans still being a danger, we're not standing here

 6  asking the Court to vary downward from 36 to 44 to

 7  24 months and a day.  We acknowledge the aggravation.

 8  And when you acknowledge the aggravation, that's a

 9  defendant who does feel remorse, when they do understand

10  what they did was wrong.

11      So we are asking the Court -- implicitly, we

12  recognize an upward departure and/or variance is probably

13  appropriate, but not beyond 60 months.  And the reason I

14  foresaw all of this is -- and chose 60 months is that's

15  roughly the difference between the guideline range and

16  the time that ███████ served in LA County Jail.

17      So the defense does request that Your Honor sentence

18  Mr. Keirans to a term of not more than 60 months in

19  prison.  Thank you.

20          THE COURT:  Thank you, Mr. Nathan.

21      All right.  We are at 10:45.  We've been going for

22  quite a while, so we're going to take a 20-minute break.

23  We'll come back at 11:05, and at that time we'll resume

24  the sentencing.  We'll be in recess.

25          (Whereupon, a brief recess was taken.)

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 69 of 116

 1          THE COURT:  We are back in the matter of the

 2    United States of America versus Matthew Keirans, case

 3    23-CR-1020.  When we left off in the sentencing hearing,

 4    the things we had remaining were to hear from the victim,

 5    if he wishes to speak to the Court, to hear from the

 6    defendant, if he wishes to speak to the Court, and then

 7    for me to pronounce sentence.

 8        Mr. Vavricek, does the victim in this case still

 9    wish to address the Court?

10          MR. VAVRICEK:  He does, Your Honor.  Before he

11    does so, may I be heard on one -- because I have the

12    burden, one brief rebuttal point to the defense argument?

13          THE COURT:  Certainly.  And then I'll give

14    Mr. Nathan an opportunity to respond as well, if he

15    wishes to.

16          MR. VAVRICEK:  Thank you.  The defendant here

17    today repeatedly again calls W a thief.  I would

18    emphasize part III, the first point, in our responsive

19    memorandum at docket 56 where we discuss in detail

20    Exhibit 13 and Exhibit 14A.  That is the evidence before

21    the Court on what happened when W went into that bank.

22    And that evidence is consistent and clear that W, quote,

23    "told the branch" -- "told the branch manager he wanted

24    to make a report for identity theft; recently discovered

25    someone was using his credit and had accumulated large

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 70 of 116

```
1   amounts of debt and did not want to pay the debt and went
2   to the bank to close the accounts."  And the assistant
3   branch manager testified at the preliminary hearing, and
4   he did not testify that W was attempting to steal from
5   the defendant.  He testified that W was trying to close
6   out the accounts in his name.
7        So I just wanted -- because that was such a central
8   part of the defense argument, I wanted to reiterate that
9   point from my brief and emphasize the evidence.  Thank
10  you.
11            THE COURT:  Thank you.
12       Mr. Nathan.
13            MR. NATHAN:  Even AI knows that closing an
14  account means to withdraw money from the account.
15            THE COURT:  All right.  Thank you.
16       All right.  Mr. Vavricek, if the victim wishes to
17  speak, I'd ask him to take a chair in the table behind
18  you and to speak carefully into the microphone.
19            ███████:  Hello.
20            THE COURT:  Good morning, sir.
21            ███████:  Good morning.  So, yeah.  So the
22  thing about it was -- is that I really -- I really didn't
23  even deserve to go to that jail at all, but the fact is,
24  is that he's trying to say I stole something.  I never
25  stole anything from Matt Keirans because I have my own
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 71 of 116

1  money.  I have my own credit.

2      And the fact is, is that I have tried to talk to

3  the -- well, I talked to the Bank of America people too.

4  I honestly got a card in my pocket.  I guess

5  it's pretty -- hold on for a second.  Yeah, it's the

6  recovery management number for the vice president of Bank

7  of America from San Diego that I went to.  And I talked

8  to them about my account that I had.  I did have a

9  hundred -- over $120,000 in my bank account, even -- even

10 in 2019.  It was on my cell phone the night before I went

11 to the bank.

12     And the only reason why I went there was to, you

13 know, have everything that Matt Keirans, you know, did

14 took off.  Just take it all off, you know, get rid of it,

15 close it, get rid of it, whatever.  I just told them --

16 you know, the bank manager that.  So this is what

17 happened.  Then I got put in jail.

18     So it's like, you know, well, what am I going to do?

19 You know.  So I had to make reports, make fraud reports.

20 I had to make fraud reports back to the Federal Trade

21 Commission.  And even they say, you know, talk to the

22 employer.  Okay, I did.  And that's why I talked to

23 Mallory, right?  And it says in the instructions right

24 there from the Federal Trade Commission, you know, close

25 out his accounts, close out bank accounts, close out his

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 72 of 116

1  credit.  That's what the Federal Trade Commission says.
2  Where's the best place to go for identity theft?  Federal
3  Trade Commission.

4      And I talked to Consumer Finance.  I made reports
5  with them.  And I filed these reports.  I thought there's
6  a lot -- I have to go and get identity thievery because
7  he keeps going against me, and I'm just trying to work.
8  That's all I'm trying to do.  Work.  I make my own money.
9  I don't need his money.  I make more money than he does
10  anyways.  I don't need it.  You know, I don't need him
11  because I have made more money than him in the past.

12      But I don't got anything to show for it for now
13  because he kept putting me down so much I couldn't even
14  touch my own money out of my own bank account.  I had to
15  go on welfare.  This happened to me.  Started on food
16  stamps.  Because I had over $120,000 in my bank account.
17  I even told the welfare department that.  I even showed
18  them my 10.2 ounces of gold that I had.

19      And I thought I was finally going to get off the
20  streets, and I can't get off the streets, I can't do
21  anything, because he -- he does something, whatever, on
22  the computer and messes everything up.  I'm just trying
23  to work.  I go to my Experian account, and he froze my
24  account and all.  It's like he's trying to freeze
25  everything from what he's doing on his stuff.  I don't

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 73 of 116

```
 1   know what he's doing about it.  You see?  Sent me to jail
 2   for nothing.  For being myself.
 3        Well, anyways, that's -- I -- that's what I go
 4   through.  I go through a lot of stuff.  But I'm not
 5   mentally incompetent.  I'm not.  I'm a person that works.
 6   I'm a person that's -- I -- I think in the morning.  I
 7   get up in the morning.  And I try to do good, and good
 8   for the community.  That's what I try to do.  That's me.
 9   I may be different.  But there's so many different kinds
10   of people.  That's what makes people happy, because
11   there's so many kinds of people.  You know, it's all
12   about community.  It's all about being good friends.
13   And, you know, that's what I always thought.  You know,
14   even when I was growing up, you know.  That's the way it
15   was in school.  When I was in school, in elementary
16   school, I remember that's the way it was.
17        So, you know -- so, anyways, I'm just trying to -- I
18   didn't do anything wrong, but I -- I just try to take --
19   to do everything in a justifiable manner, to show, you
20   know, in justice, that -- people deserve justice, you
21   know.  I mean, me and my family deserves justice.  My
22   brothers, my sisters, my dad, his wife Elaine, they --
23   they deserve justice, you know, because I'm a family
24   member.  And my family is upset by the whole thing, that
25   I went to jail for nothing, you know.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 74 of 116

1     And, you know, then I -- this is like -- you know,

2 this is not right.  That's -- you know, that's about what

3 I had to say.

4         THE COURT:  All right.  Thank you, sir.

5     Mr. Keirans, this is the time in the hearing when

6 you have an opportunity to speak to me directly, to tell

7 me anything you'd like me to take into account in

8 determining your sentence.  Now, of course, you don't

9 have to say anything.  And if you choose not to say

10 anything, I'm not going to hold that against you in any

11 way.  But if there is anything you would like to say, now

12 is the time to do so.

13     Mr. Nathan, you are on your feet.

14         MR. NATHAN:  May I have one moment, please,

15 Your Honor.

16         THE COURT:  Certainly.

17     (Mr. Nathan conferred with the defendant.)

18         THE DEFENDANT:  I think, first, I'd like to say

19 that I can't change the past.  I would like to apologize

20 to everybody hurt in one way or another in this whole

21 mess.  I made some very bad decisions.  And I hurt some

22 people that I never intended to hurt.  My intentions were

23 never to hurt anyone, and I'd like to apologize.

24     I want to say that today I can say I'm a better

25 person than I was yesterday.  Tomorrow I will be a better

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 75 of 116

1  person than I am today.  When I walk into prison, I will
2  be a better person when I walk out.  It's my
3  responsibility and duty to continue that every day.

4      And I want to emphasize again, I can't change the
5  past.  There's nothing I can do or say to make the past
6  right.  All I can do is make the future better.  And I
7  have -- "I'm sorry" doesn't say -- the words don't say
8  what I feel.  But I am sorry for any pain I caused anyone
9  in this whole thing.

10     Thank you for your time.

11         THE COURT:  Thank you, Mr. Keirans.

12     All right.  In arriving at a sentence that is
13  sufficient but not greater than necessary to achieve the
14  goals of sentencing, I have considered all the factors at
15  Title 18 United States Code Section 3553(a), even if I
16  don't mention each of them in my comments here.

17     I want to spend some time talking about the offense
18  conduct.  It is unique, unusual, and egregious.  First of
19  all, the question -- the rhetorical question was posed by
20  the defense about why the defendant -- nobody knows why
21  the defendant did this.  It's clear why he did it to the
22  Court.  It's reflected in paragraphs 11 and 12.

23     The defendant stole vehicles in California and Idaho
24  and absconded with those vehicles; was wanted.  It makes
25  obvious sense to the Court that the defendant assumed

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 76 of 116

somebody's identity to evade criminal prosecution for the
crimes he committed back in 1991 and 1992 or '3.  So the
motive here for the initial theft of the victim's
identification seems rather obvious to the Court.  And
then the defendant simply maintained that false identity
for the rest of his life, up until this case occurred.

The government's right to describe this as a
Kafkaesque fact pattern, but it is wrong when it says
that only Kafka could imagine a case like this.  Victor
Hugo imagined a case like this in *Les Misérables*.  The
protagonist, Jean Valjean, adopted the identity of
another person.  When that person was caught and was
prosecuted and was facing prison time, Jean Valjean,
though, did what the defendant did not do, and that was
to come forward, admit his identity, and prevent the
wrongful prosecution and incarceration of another
individual under a false identity.

Instead, the defendant did the exact opposite.  He
used and abused the criminal justice system to perpetuate
his false identity.  He intentionally sought the
prosecution and incarceration of the victim in this case
to put him away.  It was a callous and criminal act by
the defendant that reflects just the opposite of the
moral and courageous character reflected by Victor Hugo.
And so the example was there for the defendant on how to

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 77 of 116

1  behave, the moral and high road, courageous high road,
2  that he could have taken, and he chose to take a
3  different road.
4       Here, I flatly reject any allegation that the victim
5  in this case committed any crime whatsoever or attempted
6  to commit any crime whatsoever.  The government is right.
7  The evidence from the underlying prosecution in
8  California shows me beyond any doubt whatsoever that the
9  victim only sought to close the account to evade him
10 being held responsible for a debt owed by somebody else.
11 There's not a shred of evidence anywhere in this record
12 that the victim in this case had any idea this account
13 had a dime in it.
14      Accounts exist, oftentimes, without money in the
15 accounts, and sometimes it's negative balances.  So the
16 mere fact that he walks into a bank and says, "Somebody's
17 been using my name.  Somebody has racked up a debt.  I
18 want to close these accounts," doesn't provide any proof
19 whatsoever that he intended to take a single dime from
20 the defendant.  And to assert otherwise is flatly wrong.
21      The -- I have no respect for the opinion of the
22 county prosecutors out in LA.  They don't know what
23 they're talking about.  I was a prosecutor for more than
24 20 years.  I've been a judge for more than 10 years.  I
25 was a defense attorney for several years.  I can look at

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 78 of 116

     1    this record, and there's absolutely no basis for the
     2    defendant -- or for the victim ever to have been charged
     3    with anything in this case.  He was wrongfully
     4    incarcerated, and he was wrongfully prosecuted.  And no
     5    charge should ever exist against the victim for what he
     6    attempted to do, which was simply walk into the bank and
     7    close accounts to avoid somebody else using his name and
     8    racking up a debt.
     9        So to the extent that any assertion is made here
    10    that the victim is at fault, I reject it.  Is the LAPD
    11    and the county prosecutors at fault?  Yes, but only
    12    because the defendant weaponized the criminal justice
    13    system to achieve his goals.  And that's what I think is
    14    missing here by both sides.  I don't think there's a
    15    proper focus on the extent of the criminal conduct by the
    16    defendant here.
    17        The defendant manipulated the criminal justice
    18    system to prosecute an innocent man.  He lied to
    19    prosecutors.  He lied to law enforcement officers
    20    repeatedly.  He attempted to use the system that -- whose
    21    sole purpose of existence is to seek justice.  And he
    22    attempted to deprive the victim of justice and to
    23    completely defraud the criminal justice system.
    24        This is, in my view, very akin to an obstruction of
    25    justice.  When he does this, he causes all of us to

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 79 of 116

question the faith we can have in the criminal justice
system.  If this can happen to an innocent man out in
California, how much can we trust our institutional
actors?  How much can we trust the court system?  Where
was justice?  Where was the court system to step in front
of the victim in this case to keep him from being
victimized by the defendant?

     And the defendant just used that system to
manipulate the system, to seek the wrongful prosecution
and incarceration of an innocent man.  And that -- that
damage that he did to the criminal justice system far --
in many ways far outreaches or at least equals the
injustice that he committed to the individual person in
this case.

     It is a shame that the prosecutors and the
investigators in California didn't properly investigate
this, didn't uncover the fraud.  It is remarkable and
exceptional work by the detective in this case,
Mallory -- and I hope he is rewarded for his work -- to
have listened to somebody who most of us would reject and
most of us would not have heard his voice.  And the
detective heard it, investigated, uncovered this crime.
And it was remarkable work by him.  And it's a shame that
the system didn't work in California.

     But the person to blame for that is not the

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 80 of 116

1   prosecutors out there.  We would like them to do better.

2   It's not the investigators.  We would hope that they

3   would do better.  But it is the defendant who armed that

4   system to be using that system against the victim in this

5   case, and that is reflected nowhere in the guidelines

6   whatsoever.

7        The defendant, to be clear, is not responsible for

8   the victim's homelessness.  He's not responsible for the

9   victim, if he has any mental struggles, for that.  The

10  defendant's theft of his identification did not cause any

11  of the hardship the victim may have suffered over the

12  years up until 2019.  The defendant did not use the

13  victim's identity at the victim's expense to get rich.

14  To the extent the defendant obtained a job and earned a

15  good living and obtained credit, it was through his own

16  hard work that he did so.

17       So there are other cases where it could be

18  otherwise.  A victim's identification could be taken in

19  order to take the assets away from that victim or to

20  somehow use that victim's identity to deprive that victim

21  of income or assets at that victim's expense and to the

22  defendant's benefit.  And that didn't happen here, and so

23  it's an unusual case in that sense.

24       The fact that the defendant lied repeatedly to law

25  enforcement officers also I don't find is really fully

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 81 of 116

```
 1  reflected in the guidelines.  False statements to law
 2  enforcement officers over and over and over again is part
 3  of the obstructive conduct as well, and that's not fully
 4  reflected.  Even when the defendant's home was searched
 5  and he should have known that it was time to come clean,
 6  he continued to lie, at least initially, to the
 7  investigator, and only came forth when he was confronted
 8  with unrebuttable evidence and DNA.  And so that failure
 9  to accept responsibility is significant.
10      Even here in his allocution, the apology is a
11  general apology.  The defendant did not apologize
12  directly to the victim in this case.  And so to that
13  extent, the defendant still seems to have not recognized
14  what he's done to an individual or apologized directly to
15  that individual.
16      As far as the harm and intent, I agree with
17  Mr. Nathan to the extent that I look at criminal
18  culpability as really having two prongs to it:  The harm
19  actually caused and the harm intended here.  And so I
20  want to address the causation issues here.  It's clear
21  from the PSR, from the unobjected-to portions of the PSR,
22  but for the defendant's insistence that the victim be
23  prosecuted, he would never have been prosecuted.  Look at
24  this realistically.  A guy -- a homeless guy walks into a
25  bank.  He has some mental struggles.  He says something
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 82 of 116

about somebody "stealing my identity" and he wants to close out these accounts or whatever.

The bank teller looks into it and realizes very quickly this guy doesn't really have anything to do with this account, calls the PD. The PD looks into it. No charges are brought yet. It's only because they ask the defendant if he wants to prosecute that they pursue charges against the defendant. And then they continue to charge because the defendant continuously and doggedly harasses the prosecutors in California, the investigators in California, to ensure that the victim is prosecuted.

It is probable, looking at the record here, that the victim in this case would have been sent to an institution to restore his sanity based on his statements he made alone to the Court looking at the transcript. But it sure as heck didn't help that on top of the other statements he made that appear to be delusional, he also kept insisting that he was somebody that everybody was convinced he was not.

In any event, none of that matters, because the victim in this case would not have been in a position where he would have been subject to being institutionalized but for the plaintiff's -- or the defendant's insistence that the victim be prosecuted. But for that insistence, he wouldn't have been part of

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 83 of 116

1  the criminal justice system.  But for that, he would not

2  have been detained.

3      Both the victim and the defendant here are detained

4  and were detained, not because of the danger they posed

5  to the community, but because of their flight risk.  Both

6  the alleged crime that the victim committed out in

7  California of identity theft and the defendant's actual

8  crimes that he committed here are nonviolent crimes.  The

9  defendant is detained and the victim was detained because

10 they posed an obvious flight risk.  If they've identified

11 they've got false identities, it's going to be hard to

12 ensure that they're going to be around as part of the

13 criminal justice system.

14     And so the defendant is solely and completely

15 responsible, because but for his insistence in the false

16 identity and but for his insistence that the victim be

17 prosecuted, the victim would never have been incarcerated

18 in California, would never have been institutionalized,

19 would never have been subjected to psychotropic drugs

20 against his will.  And so all of that falls directly at

21 the feet of the defendant in this case.

22     What the victim was deprived of here is priceless.

23 It's freedom.  I can't imagine that the defendant thinks

24 so glibly of his own lack of freedom, having been

25 incarcerated, that he would describe it as "three hots

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 84 of 116

1  and a cot," as he does to describe what the victim went

2  through here.  We value freedom so highly in our society

3  that we use it as a form of punishment for people who

4  commit crimes.  It is a priceless freedom.  And the

5  defendant deprived the victim in this case of that

6  priceless freedom.  You cannot put a price on freedom.

7  And the defendant knowingly, intentionally, and with

8  callous disregard for the consequences deprived the

9  victim of that priceless freedom in this case.

10      So to the extent the defendant objects -- has

11  objections at paragraphs 45 and 50 regarding the offense

12  conduct, I am overruling those objections.  It's very

13  clear, while he may not have been on probation, as

14  reflected at paragraph 45 -- and to the extent that --

15  and I'm convinced he was not on probation; the victim was

16  not on probation at the time.  It was clear, regardless,

17  though, that the defendant hadn't given up and he was

18  continuing to try to get the police to prosecute the

19  victim in this case.  And so to the extent that

20  paragraph 45 shows the intent of the defendant to

21  continue to have the victim incarcerated, I find that

22  there's enough there to overrule that objection,

23  regardless of whether he was -- the victim was

24  technically on probation or not.

25      Turning to the defendant's history and

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 85 of 116

 1   characteristics, the defendant in this case is 58 years

 2   old.  He led a law-abiding life for most of his life.  He

 3   was adopted.  He does have some criminal history, which

 4   includes theft against his adoptive parents.  It's hard

 5   for me to know exactly what his childhood was like

 6   because we have largely a self-report.  And then to the

 7   extent that there's an affidavit from his wife, much of

 8   that affidavit, Exhibit U, is based upon what the

 9   defendant told her.  And, candidly, it's hard to believe

10   anything that the defendant has said.  So I put little

11   weight in any of the information in Exhibit U that is

12   attributed to the defendant telling something to his

13   wife.  So it's very hard for me to tell exactly what kind

14   of childhood or upbringing the defendant had.

15        At some point, without a high school education,

16   though, the defendant remarkably did very well.  Somehow

17   he moved forward in life, from a homeless state to

18   obtaining a responsible job.  There's no evidence in this

19   record that the defendant ever abused his position as a

20   systems analyst for UIHC to do anything wrongful there.

21   And so while he held a critical post there, there's no

22   hint or concern in the Court's mind that he did anything

23   in that position to jeopardize that institution or

24   victimize anybody else except for the victim in this

25   case.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 86 of 116

1    He does have a history of attempted suicide

2 reflected at paragraph 95 and also reflected in

3 Exhibit U.  And for that -- because of that, I am going

4 to impose a mental health evaluation and treatment as a

5 condition of supervised release, because of the history

6 of attempted suicide.

7    The defendant has some minor history of substance

8 abuse, and so we will impose the -- the Court will impose

9 the condition for substance abuse testing and treatment

10 as well, because of that past use.

11    The defendant is, as I mentioned, not without

12 criminal history, but his criminal history is quite

13 dated.  Both of the -- the conduct that was reflected at

14 paragraphs 11 and 12 and then also his conviction

15 reflected at paragraph 74 of forgery does give some,

16 perhaps, foretaste of the defendant's conduct, that he --

17 his one conviction was for forgery back in 1985, another

18 form of false -- falsehood.

19    The government has urged a number of grounds for an

20 upward departure, and I find that some of those grounds

21 are informative to the Court.  There is a ground

22 mentioned at 2B1.1, comment 21, which gives a

23 nonexhaustive list of grounds for upward departure for --

24 when the guidelines substantially understate the

25 seriousness of the criminal conduct.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 87 of 116

1      At section 3A1.3, comment note 3, for egregious

2  restraint, and here I find there's some purchase there

3  because that enhancement for unlawful restraint under the

4  case law can be something as easy as blocking somebody's

5  exit from a room.  It can be displaying a weapon in a way

6  that would deter somebody from leaving.  Here, the

7  defendant, as I have found, caused hardship and restraint

8  in the form of incarceration for an extended period of

9  time, and that's not really reflected in the guidelines.

10      5K2.3, extreme psychological injury, as I've said,

11  it is a priceless value we place on freedom.  And to

12  deprive somebody of freedom imposes psychological damage

13  to anybody.  At 5K2.4, abduction or unlawful restraint

14  again.  And then 5K2.8, extreme conduct.

15      So there are some guidelines to kind of speak to

16  some of the nature and circumstances of the offense here,

17  but the Court chooses not to be bound or constrained by

18  the language of the guideline provisions.  I have the

19  authority under 3553(a) to fashion a sentence that I

20  believe is appropriate.  I find the guidelines here are

21  helpful to me, to inform some thoughts here.  I find the

22  guidelines aren't fully applicable here, as I mentioned,

23  because of the defendant's weaponization of the criminal

24  justice system to achieve his own ends.  It's not

25  reflected in the guidelines anywhere and, in my view, is

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 88 of 116

 1    a form of obstruction of justice and calls into question

 2    and attacks the criminal justice system at its core.

 3    That's not reflected in the guidelines.

 4         And so I am going to vary upward from the advisory

 5    guideline range that I have reached here because of the

 6    extreme and unusual conduct the defendant's engaged in,

 7    as I've described here.

 8         So having considered all the factors at Title 18

 9    United States Code Section 3553(a), I am granting an

10    upward variance from the advisory guideline range.  To be

11    clear, the advisory guideline range that I calculated

12    here is 12 to 18 months on Count 5 and the 2-year

13    consecutive sentence on Count 7.  I am going to vary

14    upward to a total sentence of 12 years.

15         So it is the judgment of this Court, Mr. Keirans,

16    that you are hereby committed to the custody of the

17    Bureau of Prisons to be imprisoned for a term of

18    12 years, which is 144 months.  This term consists of

19    120 months on Count 5 and 24 months on Count 7 to be

20    served consecutive.

21         I am going to then decrease that sentence by

22    30 days, as reflected at paragraph 75, for time served

23    in -- in the case set out at paragraph 75.

24         It is ordered that this term of imprisonment be

25    served concurrently with any term of imprisonment that

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 89 of 116

     1    may be imposed in the case set out in paragraph 80 of the
     2    presentence report.  This is pursuant to guideline
     3    section 5G1.3(c).
     4         I recommend that you be designated to a Bureau of
     5    Prisons facility in close proximity to your family
     6    commensurate with your security and custody
     7    classification needs.
     8         Upon release from imprisonment, you will be placed
     9    on supervised release for a term of 5 years.  This term
    10    consists of 5 years on Count 5 and 1 year on Count 7 to
    11    be served concurrently or at the same time.  While on
    12    supervised release, you must comply with the mandatory,
    13    standard, and special conditions of supervision set out
    14    at paragraphs 123A through 130.  To the extent that there
    15    are objections to those special conditions, those are
    16    overruled.
    17         Unless I've otherwise specified, any other
    18    objections by either party to the presentence report that
    19    I have not otherwise ruled on, the Court has not taken
    20    into account any of the objected-to information in the
    21    PSR.
    22         It is ordered that you must pay to the United States
    23    a special assessment of $200, which is due immediately.
    24    The record will reflect and the judgment will reflect
    25    that the defendant has paid that special assessment.  It

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 90 of 116

1  is ordered you must pay a fine in the amount of $10,000,

2  which is due immediately.  Of this amount, 1,000 is

3  payable immediately, and the balance will be due in

4  accordance with a payment plan I'll talk about in a

5  moment, with all payments being made to the United States

6  Clerk of Court for the Northern District of Iowa.

7       I also find that defendant will be responsible for

8  an additional $10,000 reimbursement to the government for

9  the costs of his defense in this case.  I find that his

10  finances are such that he has the ability to pay both a

11  fine, which takes into account not only current earnings

12  and assets but future earnings and assets, as well as to

13  pay for his attorney in this case.

14       It is ordered that you make restitution in the

15  amount of $6,190 to the victim in this case, of which the

16  entire amount is payable immediately.  And I will note

17  for the record and the judgment will reflect that that

18  restitution has been paid.

19       As to the victim's request for additional

20  restitution, I find there's inadequate information or

21  documentation of that request for the Court to award any

22  further restitution.

23       However, it would be a travesty, in my mind, if the

24  State of California continued to go after the victim in

25  this case for the hospital -- forced hospitalization he

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 91 of 116

suffered as a result of the defendant's conduct.  But
should they do so, I am going to order that the defendant
be responsible for the restitution to any amount of money
that the victim has to pay for that hospitalization
that's reflected at document 47-1 because I find the
defendant is directly responsible for that cost.  If
California has any sense, they will drop any pursuit of
that restitution amount.

Mr. Keirans, if any of your court-ordered financial
obligations are still owed while you are incarcerated,
you must make monthly payments in accordance with the
Bureau of Prisons Financial Responsibility Program.  The
amount of the monthly payments will not exceed 50 percent
of the funds available to you through institution or
noninstitution resources and will be at least $25 per
quarter.  If you still owe any portion of the financial
obligations at the time of release from imprisonment, you
must pay it as a condition of supervision, and the United
States Probation Office will pursue collection of the
amount due pursuant to a payment schedule approved by me.

You must notify the United States Attorney for the
Northern District of Iowa within 30 days of any change of
your mailing or residence address that occurs while any
portion of the financial obligations remain unpaid.  The
interest requirement in this case is not waived.

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 92 of 116

    1        You are hereby remanded to the custody of the United

    2   States Marshal.

    3        Mr. Vavricek, there remains outstanding Counts 1, 2,

    4   3, 4, and 6.

    5             MR. VAVRICEK:  Pursuant to the plea agreement,

    6   Your Honor, the United States would move to dismiss those

    7   remaining counts.

    8             THE COURT:  That motion is granted.  And

    9   Counts 1, 2, 3, 4, and 6 are dismissed.

   10        Before I advise Mr. Keirans of his right to appeal,

   11   is there anything else on behalf of the United States?

   12             MR. VAVRICEK:  No, Your Honor.

   13             THE COURT:  Officer Freese?

   14             PROBATION OFFICER:  No, Your Honor.  Thank you.

   15             THE COURT:  Mr. Nathan?

   16             MR. NATHAN:  May I have one moment, please,

   17   Your Honor.

   18             THE COURT:  Certainly.

   19        (Mr. Nathan conferred with the defendant.)

   20             MR. NATHAN:  Your Honor, there just were a few

   21   probably minor issues I wanted to raise.  The defense had

   22   brought up 5K2.23 in our memo based on the imprisonment

   23   at paragraph 76.  I know he wasn't formally sentenced to

   24   jail, but he did serve 112 days on related conduct.  So I

   25   think the most appropriate vehicle is 5K2.23.  So -- but

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 93 of 116

1   if the Court finds that's not applicable because it

2   wasn't a formal sentence, then the defense does still

3   request that Your Honor reflect in the judgment that he

4   did serve the time that's reflected in Exhibit S.

5           THE COURT:  I appreciate you bringing that up.

6   I meant to raise that, and I failed to do so, so thank

7   you for reminding me of this.  I don't find that it's

8   applicable under 5K2.23 because he did not serve a

9   sentence, but we'll make sure that the judgment does

10  reflect that additional time.  The Bureau of Prisons

11  alone has the authority to determine credit for time

12  served for related conduct, and the Bureau of Prisons

13  will be armed with that information in the judgment to

14  assess the appropriate credit to be served.

15          MR. NATHAN:  The other issues I had were

16  originally I had filed Exhibits H, O, and S under seal.

17  Looking more closely at those exhibits, I don't believe

18  they ought to be sealed.  I can give the government a

19  chance just to check those out.  I can also raise that in

20  a post-sentencing brief as well.

21      Finally, when the Court mentioned that if California

22  goes after ███████ for the costs of the

23  hospitalization, and then Mr. Keirans is responsible for

24  those costs, I'm not trying to be cynical, but I wonder

25  if that creates an incentive for California to

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 94 of 116

1 transparently go after the costs from █████████, knowing

2 that then Mr. Keirans is responsible for it.  I don't

3 know -- I don't think the Court can do anything about it,

4 but I wanted to raise the concern all the same,

5 because -- my J-O-B.

6         THE COURT:  No, I understand your concern, but

7 I don't think there's anything I can do about it.

8 California authorities already have enough egg on their

9 face.  It would be only worse if they callously attempted

10 to do that.  In this case, they need to determine whether

11 they should hold the victim responsible for those

12 hospital costs, independent of who is going to pay for

13 it.  It would be the Court's hope that they would do the

14 right thing and not pursue those costs.  But I can't

15 control the California state authorities.  And if they go

16 after the victim in this case, I am not going to have him

17 responsible for those hospitalization costs.  And so

18 that's going to stand.

19     Let me look for a moment at -- Exhibits H, O, and S

20 you said?

21         MR. NATHAN:  Yes, Your Honor.  So H is the

22 email from the LADA's office.

23         THE COURT:  I see that.

24         MR. NATHAN:  I don't think that's -- there's

25 anything in there that's --

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 95 of 116

```
 1            THE COURT:  Just give me a minute.  I just want
 2   to take a look at it to see if I see anything that needs
 3   to be -- well, S, I have a concern with because it has
 4   personal identifying information in it.  So as printed
 5   right now, it couldn't be unsealed.
 6            MR. NATHAN:  May I redact it, Your Honor?
 7            THE COURT:  I don't have a problem with that,
 8   if you redact all the personal identifying information
 9   in S.
10      Mr. Vavricek, what's your position on H, O, and S?
11            MR. VAVRICEK:  I have no objection to unsealing
12   those.  But as the Court indicated, Exhibit S is replete
13   with the defendant's identifiers.
14            THE COURT:  All right.  The motion to unseal H
15   and O are granted.  S -- the defense can file a redacted
16   version of S with the court file that would eliminate and
17   remove all identifying information of the defendant, and
18   that would be fine.
19      Anything else, Mr. Nathan?
20            MR. NATHAN:  No, Your Honor.  Thank you.
21            THE COURT:  All right.  Mr. Keirans, let me
22   talk to you, sir, about your right to appeal.  If you
23   disagree with the sentence I've just imposed, you have
24   the right to appeal that sentence to a higher court.
25   That court is called the Eighth Circuit Court of Appeals.
```

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 96 of 116

     1    To appeal to that court, you would have to file a written
     2    notice of appeal with the Clerk of Court for the Northern
     3    District of Iowa here in Cedar Rapids within the next
     4    14 days.  If you fail to file a written notice of appeal
     5    in the next 14 days, you give up forever your right to
     6    appeal the sentence I've just imposed.  Now, if you would
     7    like to appeal but you cannot afford the services of an
     8    attorney to do so, I would appoint an attorney to
     9    represent you on appeal at no expense to you.
    10        Do you understand your right to appeal, sir?
    11              THE DEFENDANT:  Yes, Your Honor.
    12              THE COURT:  Do you have any questions about
    13    anything we've done here today, sir?
    14              THE DEFENDANT:  No, Your Honor.
    15              THE COURT:  Mr. Nathan, anything further?
    16              MR. NATHAN:  No, Your Honor.  Thank you.
    17              THE COURT:  Mr. Vavricek?
    18              MR. VAVRICEK:  No, Your Honor.
    19              THE COURT:  All right.  Thank you.  We'll be in
    20    recess.
    21        (Proceedings concluded at 11:50 a.m.)
    22
    23
    24
    25

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 97 of 116

1                     C E R T I F I C A T E

2          I, Patrice A. Murray, a Certified Shorthand
Reporter of the State of Iowa, do hereby certify that at
3  the time and place heretofore indicated, a hearing was
held before the Honorable C.J. Williams; that I reported
4  in shorthand and transcribed to the best of my ability
the proceedings of said hearing; and that the foregoing
5  transcript is a true record of all proceedings had on the
taking of said hearing at the above time and place.

6
           I further certify that I am not related to or
7  employed by any of the parties to this action, and
further, that I am not a relative or employee of any
8  attorney or counsel employed by the parties hereto or
financially interested in the action.

9
      IN WITNESS WHEREOF, I have set my hand this 13th day
10 of February, 2025.

11

12                      /s/ Patrice A. Murray
                        Patrice A. Murray, CSR, RMR, FCRR
13                      Court Reporter
                        PO Box 10541
14                      Cedar Rapids, Iowa 52410

15

16         I certify that the foregoing is a correct copy
of the transcript originally filed with the Clerk of
17 Court at docket 69, incorporating requested redactions of
personal identifiers and any other redactions ordered by
18 the Court, in accordance with Administrative Order
08-AO-0009-P.

19                      /s/ Patrice A. Murray
20                      Patrice A. Murray, CSR, RMR, FCRR
                        Court Reporter
21                      PO Box 10541
                        Cedar Rapids, Iowa 52410

22

23

24

25

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 98 of 116

## $

**$1,250,000** [1] - 4:9
**$10,000** [2] - 91:1, 91:8
**$100** [1] - 4:10
**$100,000** [1] - 16:2
**$112,135.25** [1] - 9:8
**$120,000** [2] - 72:9, 73:16
**$150,000** [1] - 9:7
**$16,500** [1] - 44:21
**$200** [3] - 4:11, 41:22, 90:23
**$25** [1] - 92:15
**$250,000** [2] - 4:8, 20:6
**$266,000** [1] - 46:20
**$350** [1] - 44:22
**$6,000** [1] - 21:16
**$6,190** [4] - 41:8, 42:15, 43:22, 91:15
**$6,390** [1] - 41:19
**$95,000** [1] - 9:7

## '

**'3** [1] - 77:2

## /

**/s** [1] - 98:12

## 1

**1** [13] - 1:10, 2:3, 3:12, 4:4, 4:7, 11:1, 12:3, 12:5, 14:17, 15:25, 90:10, 93:3, 93:9
**1,000** [1] - 91:2
**1-level** [2] - 9:25, 38:14
**10** [2] - 14:20, 78:24
**10.2** [1] - 73:18
**1014** [1] - 3:17
**1028A** [1] - 22:1
**1028A(a)(1)** [1] - 3:20
**1028A(b)(3)** [2] - 29:3, 29:8
**10541** [2] - 1:24, 98:13
**106** [1] - 5:9
**109** [2] - 5:9, 7:3
**10:30** [2] - 14:6, 45:19
**10:40** [1] - 47:18
**10:45** [1] - 69:21
**10A** [3] - 14:23, 20:23, 20:24
**10th** [1] - 15:22
**11** [7] - 2:6, 11:2, 15:7, 38:17, 38:19, 76:22, 87:14
**110** [1] - 7:4
**111** [2] - 1:10, 1:17
**112** [1] - 93:24
**1178** [1] - 57:2
**11:05** [1] - 69:23
**11:50** [1] - 97:21

**11A** [2] - 15:1, 15:3
**11B** [1] - 15:3
**11C** [1] - 15:4
**11D** [1] - 15:4
**11E** [2] - 15:1, 15:4
**11F** [1] - 15:5
**11th** [1] - 15:3, 56:22
**12** [16] - 2:3, 11:7, 15:12, 39:4, 39:6, 39:16, 39:25, 40:4, 68:18, 76:22, 87:14, 89:12, 89:14, 89:18
**120** [1] - 89:19
**123A** [1] - 90:14
**127** [1] - 7:5
**128** [1] - 7:7
**12th** [1] - 15:3
**13** [9] - 15:16, 16:23, 17:4, 17:7, 38:9, 39:9, 39:21, 40:2, 70:20
**130** [1] - 90:14
**13th** [2] - 15:4, 98:9
**14** [3] - 38:21, 97:4, 97:5
**143** [1] - 7:8
**144** [1] - 89:18
**147** [1] - 49:22
**14A** [4] - 15:18, 15:21, 49:10, 70:20
**14B** [2] - 15:22, 49:16
**14C** [1] - 15:22
**14D** [1] - 15:22
**14E** [2] - 2:3, 11:7, 12:3, 12:5, 15:18, 15:23
**14th** [1] - 15:4
**15** [3] - 53:15, 56:12, 67:6
**15th** [1] - 15:5
**16** [3] - 38:13, 39:19
**16,800** [1] - 44:24
**16th** [1] - 15:21
**17-year** [1] - 58:5
**17th** [2] - 15:21, 49:9
**18** [11] - 3:16, 3:19, 8:22, 10:6, 10:13, 40:4, 55:8, 68:18, 76:15, 89:8, 89:12
**19** [1] - 49:12
**1985** [3] - 62:6, 62:7, 87:17
**1988** [4] - 37:2, 46:11, 54:19, 63:6
**1991** [1] - 77:2
**1992** [1] - 77:2
**19th** [5] - 15:22, 15:23, 67:17, 67:20, 67:25

## 2

**2** [18] - 5:25, 14:20, 29:7, 32:17, 32:18, 32:24, 32:25, 35:21, 35:24, 38:5, 39:6, 39:7, 52:24, 57:7, 57:9, 68:18, 93:3, 93:9
**2-level** [11] - 9:10, 9:13, 9:16,

9:20, 38:3, 38:7, 38:11, 39:14, 39:17, 65:21
**2-year** [6] - 3:24, 8:24, 22:3, 38:22, 53:5, 89:12
**2/13/25** [1] - 1:21
**2/7/25** [1] - 1:21
**20** [4] - 15:17, 47:15, 63:1, 78:24
**20-minute** [1] - 69:22
**2011** [1] - 63:4
**2013** [1] - 46:24
**2014** [1] - 46:19
**2015** [6] - 15:3, 15:8, 15:10, 23:25, 47:12, 63:11
**2016** [4] - 15:6, 15:10, 23:25, 47:12
**2019** [18] - 15:17, 15:21, 15:22, 15:23, 18:8, 21:2, 47:15, 48:20, 49:12, 56:9, 62:23, 66:22, 66:25, 67:17, 67:21, 72:10, 81:12
**2020** [1] - 15:23
**2021** [4] - 51:7, 51:10, 51:13, 56:22
**2022** [2] - 46:20, 51:16
**2023** [2] - 51:10, 62:8
**2024** [1] - 3:12
**2025** [2] - 1:17, 98:10
**20th** [3] - 21:2, 56:9, 66:22
**21** [4] - 9:18, 48:20, 65:14, 87:22
**21(A)(vi)(I** [1] - 68:23
**222** [1] - 1:12
**23-CR-1020** [3] - 1:5, 3:4, 70:3
**24** [3] - 10:17, 69:7, 89:19
**24th** [1] - 15:23
**25** [3] - 6:1, 27:5, 34:9
**26** [1] - 6:19
**27** [1] - 10:15
**290** [1] - 1:12
**2B1.1** [4] - 25:24, 65:14, 68:23, 87:22
**2B1.1(a)(1)** [1] - 9:3
**2B1.1(b)(1)(E** [1] - 9:6
**2B1.1(b)(10** [1] - 39:2
**2B1.1(b)(10)(C** [1] - 9:11
**2B1.1(b)(11** [1] - 4:24
**2B1.1(b)(16** [1] - 35:18
**2B1.1(b)(16)** [1] - 5:4
**2B1.1(b)(2** [1] - 4:21
**2B1.6** [7] - 21:22, 22:8, 22:10, 22:12, 29:1, 35:4

## 3

**3** [8] - 10:5, 27:4, 39:7, 68:19, 88:1, 93:4, 93:9
**3-level** [1] - 39:19
**30** [4] - 3:23, 53:10, 89:22,

92:22
**31st** [1] - 1:17
**32** [1] - 50:20
**33** [1] - 10:15
**3553(a** [10] - 24:12, 24:17, 26:10, 27:25, 44:6, 44:25, 45:4, 76:15, 88:19, 89:9
**36** [4] - 17:12, 28:18, 68:17, 69:6
**37** [2] - 3:11, 41:10
**37-2** [1] - 41:10
**3A1.1(b)(1** [1] - 9:14
**3A1.3** [3] - 9:16, 65:19, 88:1
**3E1.1(a** [1] - 38:12
**3E1.1(a)** [1] - 9:22
**3E1.1(b** [1] - 9:25
**3E1.1(b)** [2] - 10:3, 38:15

## 4

**4** [3] - 56:24, 93:4, 93:9
**428** [1] - 49:18
**43** [4] - 6:1, 6:4, 6:5, 6:14
**44** [4] - 10:22, 17:7, 68:17, 69:6
**45** [5] - 6:19, 51:20, 85:11, 85:14, 85:20
**47-1** [1] - 92:5
**49** [1] - 10:25

## 5

**5** [21] - 3:14, 3:22, 4:4, 4:7, 8:23, 9:1, 10:15, 32:19, 38:21, 40:4, 49:10, 53:9, 56:13, 57:11, 68:1, 89:12, 89:19, 90:9, 90:10
**50** [3] - 6:19, 85:11, 92:13
**52401** [2] - 1:11, 1:13
**52410** [2] - 1:24, 98:14
**56** [2] - 11:2, 70:19
**57-1** [1] - 11:8
**575** [2] - 49:4, 56:5
**58** [3] - 6:21, 34:9, 86:1
**5G1.3(c)** [1] - 90:3
**5K2.23** [3] - 93:22, 93:25, 94:8
**5K2.3** [3] - 66:1, 88:10
**5K2.4** [1] - 88:13
**5K2.8** [2] - 66:2, 88:14

## 6

**6** [3] - 50:21, 93:4, 93:9
**60** [6] - 20:1, 68:16, 68:21, 69:13, 69:14, 69:18
**61** [1] - 38:1
**62** [7] - 4:18, 6:23, 32:9, 32:12, 32:13, 34:7, 38:2

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 99 of 116

**63** [5] - 4:22, 35:15, 35:16, 36:21, 38:3
**64** [4] - 6:24, 36:22, 37:22, 38:5
**65** [3] - 6:25, 7:14, 38:7

**7**

**7** [16] - 3:17, 3:24, 4:4, 4:8, 8:22, 8:24, 9:3, 10:16, 32:10, 38:1, 38:22, 39:12, 52:25, 89:13, 89:19, 90:10
**73** [1] - 10:10
**74** [3] - 19:16, 19:19, 87:15
**75** [2] - 89:22, 89:23
**76** [1] - 93:23
**78** [1] - 10:10

**8**

**8** [2] - 38:21, 39:5
**8-level** [1] - 9:5
**80** [1] - 90:1
**89** [1] - 5:5

**9**

**90** [2] - 5:5, 7:2
**900** [1] - 44:24
**924(c** [1] - 21:25
**93** [1] - 5:6
**94** [1] - 5:7
**95** [2] - 5:8, 87:2
**9:00** [1] - 1:18
**9th** [1] - 15:6

**A**

**a.m** [2] - 1:18, 97:21
**abduction** [1] - 88:13
**abiding** [3] - 62:12, 67:19, 86:2
**ability** [8] - 7:5, 13:25, 40:21, 42:18, 44:3, 44:4, 91:10, 98:4
**able** [3] - 8:12, 44:16, 45:1
**absconded** [1] - 76:24
**absence** [1] - 62:7
**absent** [1] - 53:21
**absolutely** [1] - 79:1
**absolves** [1] - 64:9
**abuse** [2] - 87:8, 87:9
**abused** [2] - 77:19, 86:19
**accept** [2] - 6:15, 82:9
**acceptable** [2] - 13:7, 19:6
**acceptance** [7] - 9:21, 9:25, 10:5, 38:12, 38:14, 39:8, 39:20
**accepting** [1] - 55:24

**access** [1] - 48:6
**accord** [1] - 51:10
**accordance** [2] - 91:4, 92:11
**accordingly** [2] - 14:12, 43:10
**account** [25] - 14:23, 18:10, 18:12, 42:10, 42:13, 44:6, 58:19, 58:20, 58:21, 58:22, 59:14, 71:14, 72:8, 72:9, 73:14, 73:16, 73:23, 73:24, 75:7, 78:9, 78:12, 83:5, 90:20, 91:11
**accounted** [1] - 35:11
**accounts** [16] - 14:20, 18:8, 37:7, 46:18, 47:24, 48:1, 48:7, 71:2, 71:6, 72:25, 78:14, 78:15, 78:18, 79:7, 83:2
**accumulated** [2] - 47:21, 70:25
**achieve** [3] - 76:13, 79:13, 88:24
**acknowledge** [4] - 43:19, 66:9, 69:7, 69:8
**acknowledged** [2] - 62:5, 68:9
**acknowledges** [3] - 42:25, 61:16, 68:22
**act** [1] - 77:22
**acted** [1] - 20:11
**action** [3] - 33:15, 98:7, 98:8
**actions** [5] - 20:19, 22:21, 26:8, 26:9, 26:11
**actively** [2] - 21:1, 21:5
**activities** [1] - 6:8
**actor** [2] - 60:14, 66:15
**actors** [4] - 30:2, 56:10, 63:14, 80:4
**actual** [5] - 25:19, 26:20, 31:10, 31:15, 84:7
**actually** [2] - 67:5, 82:19
**ADAs** [2] - 60:13, 60:16
**adding** [1] - 48:13
**addition** [1] - 3:25
**additional** [13] - 4:25, 6:9, 9:24, 17:23, 18:11, 30:24, 35:4, 38:14, 41:11, 44:22, 91:8, 91:19, 94:10
**address** [12] - 13:14, 18:23, 19:1, 24:14, 32:25, 33:11, 42:3, 44:2, 45:21, 70:9, 82:20, 92:23
**addressed** [2] - 14:1, 24:11
**addresses** [1] - 41:16
**addressing** [1] - 18:24
**adequately** [1] - 30:14
**adjusted** [3] - 9:18, 38:9, 38:13
**administered** [1] - 22:22
**Administration** [1] - 3:15
**administration** [1] - 51:1
**administrative** [1] - 46:25

**administrator** [1] - 52:17
**admirable** [1] - 62:22
**admit** [1] - 77:15
**admitted** [4] - 11:17, 12:4, 20:11, 54:25
**adopted** [2] - 77:11, 86:3
**adoptive** [2] - 54:20, 86:4
**adult** [1] - 54:17
**Adventure** [1] - 15:6
**advise** [1] - 93:10
**advisory** [10] - 8:20, 10:14, 10:16, 37:25, 38:20, 40:3, 45:9, 89:4, 89:10, 89:11
**affidavit** [2] - 86:7, 86:8
**affirmatively** [1] - 48:23
**afford** [1] - 97:7
**afterwards** [1] - 31:22
**against** [14] - 16:10, 21:4, 22:22, 32:20, 49:11, 49:21, 65:24, 73:7, 75:10, 79:5, 81:4, 83:8, 84:20, 86:4
**age** [1] - 23:7
**agency** [3] - 55:22, 65:23, 66:15
**Agent** [1] - 14:15
**aggravated** [2] - 3:18, 22:2
**aggravating** [3] - 52:21, 53:17, 54:9
**aggravation** [5] - 64:20, 68:8, 69:2, 69:7, 69:8
**agree** [6] - 38:24, 40:5, 40:11, 45:10, 63:22, 82:16
**agreement** [3] - 10:1, 23:5, 93:5
**agrees** [2] - 6:13, 26:13
**AI** [1] - 71:13
**akin** [1] - 79:24
**albeit** [2] - 32:3, 62:14
**Albuquerque** [1] - 46:12
**alias** [1] - 18:13
**aliases** [1] - 5:24
**allegation** [2] - 5:23, 78:4
**alleged** [1] - 84:6
**alleging** [1] - 51:15
**allocution** [1] - 82:10
**allow** [1] - 14:7
**alluded** [1] - 55:4
**almost** [3] - 57:24, 63:23, 68:6
**alone** [3] - 52:13, 83:15, 94:11
**already** [8] - 41:18, 61:21, 64:5, 65:17, 65:22, 67:7, 67:10, 95:8
**also** [35] - 4:20, 6:19, 10:21, 11:4, 11:6, 13:24, 20:17, 22:14, 23:13, 26:15, 26:18, 27:4, 28:16, 32:11, 32:13, 35:16, 42:21, 44:9, 49:20, 54:10, 58:25, 59:3, 60:20, 62:9, 63:6, 64:18, 65:8, 83:3, 84:20, 86:4

**69:1, 81:25, 83:17, 87:2, 87:14, 91:7, 94:19**
**alternatively** [2] - 11:5, 27:16
**although** [2] - 19:14, 56:6
**always** [5] - 25:21, 26:24, 27:15, 30:2, 74:13
**America** [6] - 3:3, 42:10, 42:11, 70:2, 72:3, 72:7
**AMERICA** [1] - 1:3
**American** [3] - 14:21, 46:2, 47:14
**among** [1] - 46:19
**amount** [36] - 4:19, 6:3, 6:11, 6:23, 9:6, 9:8, 25:9, 25:24, 26:2, 26:3, 26:4, 26:17, 27:17, 27:18, 31:3, 31:4, 31:9, 31:24, 32:3, 32:6, 32:9, 32:12, 40:21, 41:8, 41:18, 42:14, 44:5, 44:19, 91:1, 91:2, 91:15, 91:16, 92:3, 92:8, 92:13, 92:20
**amounts** [3] - 44:22, 47:21, 71:1
**analyst** [1] - 86:20
**Angeles** [10] - 15:16, 23:24, 47:9, 47:11, 47:16, 48:12, 49:18, 55:19, 56:22, 59:1
**answer** [6] - 8:12, 16:3, 16:7, 37:1, 47:25
**anybody** [3] - 36:12, 86:24, 88:13
**anyone** [5] - 30:9, 48:6, 63:2, 75:23, 76:8
**anything** [25] - 12:11, 44:14, 45:23, 62:3, 71:25, 73:12, 73:21, 74:18, 75:7, 75:9, 75:10, 75:11, 79:3, 83:4, 86:10, 86:20, 86:22, 93:11, 95:3, 95:7, 95:25, 96:2, 96:19, 97:13, 97:15
**anyway** [1] - 55:11
**anyways** [3] - 73:10, 74:3, 74:17
**anywhere** [3] - 42:22, 78:11, 88:25
**apologize** [4] - 19:22, 75:19, 75:23, 82:11
**apologized** [1] - 82:14
**apology** [2] - 82:10, 82:11
**apparently** [1] - 42:9
**appeal** [10] - 93:10, 96:22, 96:24, 97:1, 97:2, 97:4, 97:6, 97:7, 97:9, 97:10
**Appeals** [1] - 96:25
**appear** [3] - 23:15, 29:12, 83:17
**appearances** [2] - 47:5, 52:11
**APPEARANCES** [1] - 1:9
**appeared** [3] - 1:11, 1:13, 52:16

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 100 of 116

**appears** [3] - 22:12, 33:18, 63:5

**Apple** [1] - 14:24

**applicable** [5] - 34:1, 36:19, 88:22, 94:1, 94:8

**application** [2] - 21:4, 65:21

**applied** [1] - 35:24

**apply** [4] - 18:20, 30:24, 34:2, 36:3

**applying** [1] - 22:9

**appoint** [1] - 97:8

**appreciate** [2] - 18:15, 94:5

**approached** [3] - 23:20, 47:19, 59:21

**appropriate** [12] - 13:22, 14:3, 18:3, 22:5, 23:1, 35:13, 35:20, 69:13, 88:20, 93:25, 94:14

**approved** [1] - 92:20

**April** [1] - 3:12

**argue** [2] - 61:13, 64:20, 64:21

**argued** [5] - 57:19, 58:3, 58:18, 64:5, 68:10

**argues** [1] - 60:3

**arguing** [2] - 66:17, 66:19

**argument** [20] - 19:2, 20:2, 24:16, 26:11, 29:10, 30:7, 35:8, 45:14, 55:24, 58:18, 60:6, 60:12, 64:9, 64:23, 65:1, 67:1, 67:3, 67:11, 70:12, 71:8

**arguments** [5] - 24:10, 27:25, 30:23, 60:11, 64:22

**armed** [3] - 54:24, 81:3, 94:13

**arrest** [1] - 15:16

**arrested** [4] - 48:10, 51:23, 62:8, 64:6

**arrival** [1] - 48:4

**arrived** [1] - 68:17

**arriving** [2] - 57:23, 76:12

**aspect** [1] - 46:15

**assert** [1] - 78:20

**asserted** [1] - 50:7

**asserting** [4] - 33:6, 34:10, 36:6, 37:15

**assertion** [3] - 6:11, 6:22, 79:9

**assess** [6] - 5:3, 25:11, 32:6, 35:3, 35:17, 94:14

**assessed** [4] - 9:4, 9:9, 9:12, 9:15

**assessment** [4] - 4:10, 43:13, 90:23, 90:25

**assessments** [3] - 41:24, 41:25, 42:6

**asset** [1] - 53:19

**assets** [8] - 43:1, 44:7, 44:9, 44:15, 81:19, 81:21, 91:12

**assistant** [5] - 47:19, 50:9, 59:1, 59:8, 71:2

**Assistant** [2] - 3:5, 3:7

**associated** [1] - 47:24

**assume** [2] - 57:3, 62:17

**assumed** [7] - 46:13, 58:10, 61:11, 61:18, 61:20, 62:15, 76:25

**assuming** [2] - 17:24, 66:6

**attached** [2] - 11:7, 28:19

**attacks** [1] - 89:2

**attempt** [1] - 6:7

**attempted** [10] - 14:23, 59:13, 66:13, 78:5, 79:6, 79:20, 79:22, 87:1, 87:6, 95:9

**attempting** [3] - 32:24, 37:7, 71:4

**attempts** [4] - 37:13, 49:13, 51:9, 56:6

**attention** [3] - 12:12, 12:19, 40:1

**ATTORNEY** [2] - 1:10, 1:12

**attorney** [11] - 43:6, 43:12, 43:15, 44:14, 57:10, 59:4, 78:25, 91:13, 97:8, 98:8

**Attorney** [2] - 3:6, 92:21

**Attorney's** [2] - 1:10, 59:2

**attorney's** [7] - 24:16, 40:19, 44:3, 44:10, 44:17, 44:20, 45:2

**attorneys** [2] - 44:12, 50:10

**attorneys'** [1] - 19:5

**attributed** [1] - 86:12

**audience's** [1] - 66:13

**August** [13] - 15:17, 18:8, 21:2, 47:15, 48:20, 51:13, 56:9, 62:22, 66:22, 66:25, 67:17, 67:20, 67:25

**authored** [1] - 3:10

**authorities** [3] - 37:10, 95:8, 95:15

**authority** [2] - 88:19, 94:11

**authorized** [1] - 53:9

**available** [1] - 92:14

**Avenue** [4] - 1:10, 1:12, 1:17, 47:18

**avoid** [1] - 79:7

**await** [1] - 43:24

**award** [1] - 91:21

**awarded** [1] - 9:20

**aware** [4] - 26:20, 29:3, 37:10, 37:12, 53:2, 53:11

## B

**BA480543** [1] - 15:20

**bad** [7] - 61:21, 67:13, 67:14, 67:15, 67:20, 67:24, 75:21

**bail** [3] - 48:13, 63:20, 63:22

**balance** [2] - 54:8, 91:3

**balances** [1] - 78:15

**bank** [21] - 18:8, 31:19, 37:7,

42:13, 46:17, 47:18, 48:1, 48:7, 59:13, 70:21, 71:2, 72:9, 72:11, 72:16, 72:25, 73:14, 73:16, 78:16, 79:6, 82:25, 83:3

**Bank** [8] - 14:21, 18:8, 42:10, 42:11, 58:15, 66:23, 72:3, 72:6

**banker** [3] - 47:20, 47:23, 48:3

**bankruptcy** [2] - 33:22, 33:23

**bankrupted** [1] - 21:12

**base** [4] - 9:2, 38:1, 39:12, 39:25

**based** [15] - 25:17, 26:14, 27:10, 31:13, 31:21, 33:8, 35:5, 36:10, 37:24, 42:9, 44:25, 52:13, 83:14, 86:8, 93:22

**basis** [2] - 18:21, 79:1

**bear** [1] - 17:11

**become** [1] - 63:10

**BEFORE** [1] - 1:16

**began** [2] - 9:2, 54:19

**begin** [1] - 35:21

**beginning** [3] - 10:9, 25:9, 48:17

**begins** [1] - 8:21

**behalf** [5] - 1:11, 1:13, 4:12, 5:18, 93:11

**behave** [1] - 78:1

**behavior** [1] - 67:19

**behind** [2] - 56:8, 71:17

**belabor** [1] - 67:7

**believe** [12] - 20:5, 21:17, 28:8, 36:6, 39:8, 59:11, 60:5, 66:14, 68:4, 86:9, 88:20, 94:17

**believes** [3] - 17:16, 27:17, 43:3

**believing** [1] - 66:10

**below** [1] - 39:6

**bench** [1] - 38:18

**benefit** [4] - 7:18, 44:14, 55:18, 81:22

**best** [4] - 20:5, 44:11, 73:2, 98:4

**better** [7] - 67:3, 75:24, 75:25, 76:2, 76:6, 81:1, 81:3

**between** [13] - 29:5, 29:7, 46:19, 51:10, 53:10, 54:9, 56:25, 59:4, 60:11, 62:7, 64:19, 67:4, 69:15

**beyond** [4] - 42:15, 65:21, 69:13, 78:8

**bidding** [1] - 66:19

**bill** [1] - 14:17

**birth** [4] - 22:16, 46:16, 48:2, 48:9

**bit** [4] - 22:18, 37:1, 67:16,

68:2

**blame** [2] - 56:7, 80:25

**blocking** [1] - 88:4

**bodily** [5] - 5:4, 22:17, 22:24, 29:15, 35:19, 35:25, 36:4, 36:8

**booked** [1] - 48:13

**bottom** [3] - 43:5, 49:15, 67:2

**bottom-of-the-range** [1] - 67:2

**bound** [1] - 88:17

**Box** [3] - 1:10, 1:24, 98:13

**branch** [5] - 47:18, 47:19, 70:23, 71:3

**break** [5] - 14:3, 14:5, 14:7, 45:19, 69:22

**brief** [15] - 7:16, 7:17, 7:21, 13:5, 17:5, 20:12, 24:5, 30:20, 47:12, 65:24, 69:25, 70:12, 71:9, 94:20

**briefing** [4] - 20:2, 20:3, 20:7, 41:5

**briefly** [1] - 56:15

**briefs** [1] - 41:7

**bringing** [2] - 40:1, 94:5

**broad** [1] - 22:12

**brothers** [1] - 74:22

**brought** [2] - 83:6, 93:22

**burden** [7] - 18:19, 34:4, 40:20, 40:21, 40:23, 42:17, 70:12

**burdens** [1] - 40:24

**Bureau** [5] - 89:17, 90:4, 92:12, 94:10, 94:12

## C

**C.J** [2] - 1:16, 98:3

**calculated** [4] - 4:19, 10:6, 39:8, 89:11

**calculating** [2] - 37:24, 54:16

**calculation** [7] - 8:20, 8:21, 8:22, 8:25, 38:25, 40:6, 44:18

**calculations** [2] - 18:25, 40:12

**California** [33] - 14:17, 15:19, 15:25, 16:7, 20:18, 26:8, 26:15, 37:7, 47:16, 48:6, 49:3, 49:5, 51:13, 52:16, 55:11, 59:7, 63:18, 63:24, 76:23, 78:8, 80:3, 80:16, 80:24, 83:10, 83:11, 84:7, 84:18, 91:24, 92:7, 94:21, 94:25, 95:8, 95:15

**call** [4] - 12:24, 13:11, 48:21, 63:20

**called** [5] - 14:15, 48:3, 48:20, 66:23, 96:25

**calling** [1] - 13:2

**callous** [2] - 77:22, 85:8
**callously** [1] - 95:9
**callousness** [3] - 48:19, 49:25, 50:2
**calls** [4] - 55:5, 70:17, 83:5, 89:1
**can't** [12] - 16:14, 22:19, 42:20, 57:12, 58:21, 73:20, 75:19, 76:4, 84:23, 95:14
**candidly** [1] - 86:9
**candor** [1] - 22:18
**cannot** [3] - 21:24, 85:6, 97:7
**capture** [1] - 25:25
**car** [1] - 47:13
**card** [3] - 46:16, 48:8, 72:4
**Card** [1] - 14:24
**carefully** [2] - 46:6, 71:18
**carried** [1] - 34:3
**carrying** [1] - 10:10
**cart** [1] - 46:12
**Case** [1] - 3:3
**case** [78] - 6:6, 12:15, 12:24, 13:14, 13:17, 13:24, 14:4, 16:1, 16:6, 20:6, 20:9, 20:20, 21:8, 21:9, 22:11, 22:18, 22:19, 23:12, 23:14, 31:11, 31:25, 32:16, 32:21, 33:14, 34:22, 35:19, 36:1, 36:5, 36:9, 37:23, 43:22, 44:2, 45:21, 46:4, 50:7, 52:22, 52:23, 54:19, 56:20, 59:9, 60:17, 62:19, 66:21, 68:3, 68:6, 70:2, 70:8, 77:6, 77:9, 77:10, 77:21, 78:5, 78:12, 79:3, 80:6, 80:14, 80:18, 81:5, 81:23, 82:12, 83:13, 83:21, 84:21, 85:5, 85:9, 85:19, 86:1, 86:25, 88:4, 89:23, 90:1, 91:9, 91:13, 91:15, 91:25, 92:25, 95:10, 95:16
**cases** [1] - 81:17
**catchall** [1] - 23:9
**category** [8] - 10:13, 10:14, 19:14, 19:15, 19:20, 38:17, 38:20, 40:3
**caught** [1] - 77:12
**causation** [9] - 28:14, 28:21, 36:10, 58:1, 58:2, 61:10, 66:6, 66:8, 82:20
**cause** [6] - 58:7, 60:18, 60:21, 63:8, 65:17, 81:10
**caused** [9] - 21:18, 22:15, 33:8, 61:4, 63:13, 65:16, 76:8, 82:19, 88:7
**causes** [1] - 79:25
**causing** [1] - 4:21
**Cedar** [6] - 1:10, 1:12, 1:18, 1:24, 97:3, 98:14
**cell** [1] - 72:10
**cellmate** [2] - 29:21
**cent** [1] - 25:22

**central** [1] - 71:7
**certain** [2] - 22:9, 53:16
**certainly** [6] - 34:18, 37:9, 51:22, 70:13, 75:16, 93:18
**certificate** [3] - 22:16, 46:16, 48:9
**Certified** [2] - 1:19, 98:2
**certify** [2] - 98:2, 98:6
**cetera** [2] - 26:25, 57:16
**chains** [1] - 50:17
**chair** [1] - 71:17
**chance** [3] - 23:22, 94:19
**change** [3] - 75:19, 76:4, 92:22
**changes** [1] - 5:14
**chapter** [6] - 32:17, 32:18, 32:24, 32:25, 35:21, 35:24
**character** [1] - 77:24
**characteristics** [2] - 54:2, 86:1
**characterization** [1] - 56:2
**charge** [4] - 48:11, 62:1, 79:5, 83:9
**charged** [10] - 3:14, 3:18, 28:7, 28:8, 59:17, 60:22, 64:13, 66:5, 79:2
**charges** [2] - 83:6, 83:8
**charging** [1] - 60:10
**check** [1] - 94:19
**child** [3] - 61:24, 61:25, 65:7
**childhood** [2] - 86:5, 86:14
**choice** [1] - 63:17
**choices** [1] - 63:15
**choose** [1] - 75:9
**chooses** [1] - 88:17
**chose** [2] - 69:14, 78:2
**Chris** [1] - 3:8
**CHRISTOPHER** [1] - 1:12
**circa** [1] - 18:8
**Circuit** [3] - 23:12, 23:15, 96:25
**circumstances** [8] - 32:7, 37:17, 46:8, 52:20, 53:16, 54:1, 55:14, 88:16
**cite** [2] - 23:18, 25:1
**cited** [3] - 23:11, 26:18, 62:19
**citizen** [1] - 62:13
**City** [3] - 46:25, 52:2, 52:18
**claim** [1] - 32:22
**claimed** [1] - 36:7
**claiming** [2] - 34:25, 36:2
**claims** [3] - 61:1, 61:3
**clarification** [2] - 18:15, 19:13
**clarifies** [1] - 57:11
**clarify** [1] - 51:19
**clarity** [1] - 57:6
**classically** [1] - 56:3
**classification** [1] - 90:7
**clean** [4] - 50:18, 62:16,

62:24, 82:5
**clear** [15] - 6:7, 22:1, 22:11, 29:12, 42:21, 60:24, 66:17, 70:22, 76:21, 81:7, 82:20, 85:13, 85:16, 89:11
**clearly** [3] - 23:6, 36:25, 44:7
**Clerk** [2] - 91:6, 97:2
**client** [7] - 5:19, 7:22, 26:22, 28:10, 57:12, 63:17, 64:1
**client's** [5] - 28:2, 63:4, 63:7, 63:16, 63:20
**clients** [3] - 28:6, 30:1, 30:13
**close** [14] - 37:7, 42:22, 58:21, 71:2, 71:5, 72:15, 72:24, 72:25, 78:9, 78:18, 79:7, 83:2, 90:5
**closely** [2] - 49:24, 94:17
**closing** [2] - 58:19, 71:13
**Code** [4] - 3:16, 3:19, 76:15, 89:9
**collect** [1] - 16:2
**collection** [1] - 92:19
**combined** [1] - 20:1
**come** [10] - 21:2, 44:21, 44:24, 45:20, 50:18, 59:24, 62:24, 69:23, 77:15, 82:5
**comes** [2] - 3:4, 44:12
**coming** [1] - 55:10
**commencing** [1] - 1:18
**commensurate** [1] - 90:6
**comment** [2] - 87:22, 88:1
**commentary** [1] - 28:25
**comments** [1] - 76:16
**Commission** [7] - 21:11, 29:3, 52:23, 72:21, 72:24, 73:1, 73:3
**commit** [5] - 53:18, 53:23, 59:6, 78:6, 85:4
**commitment** [1] - 55:17
**committed** [11] - 28:6, 33:2, 35:23, 53:13, 64:8, 77:2, 78:5, 80:13, 84:6, 84:8, 89:16
**communication** [1] - 37:11
**communications** [1] - 59:4
**community** [3] - 74:8, 74:12, 84:5
**compassionate** [1] - 21:21
**competency** [3] - 30:2, 61:5, 66:2
**competing** [2] - 24:18, 45:7
**complaint** [2] - 51:14, 52:13
**Completed** [1] - 1:21
**completely** [3] - 16:4, 79:23, 84:14
**compliance** [1] - 23:4
**comply** [1] - 90:12
**computer** [2] - 62:1, 73:22
**concede** [1] - 23:15
**conceded** [1] - 43:21
**concern** [4] - 86:22, 95:4, 95:6, 96:3

**concerned** [1] - 25:6
**concerns** [1] - 50:10
**concluded** [1] - 97:21
**concurrently** [2] - 89:25, 90:11
**condition** [8] - 5:7, 5:10, 7:6, 13:25, 23:8, 87:5, 87:9, 92:18
**conditions** [6] - 7:4, 7:7, 57:4, 90:13, 90:15
**conduct** [29] - 6:21, 23:10, 24:1, 28:1, 35:11, 54:9, 54:18, 58:7, 58:9, 58:13, 60:19, 60:20, 61:8, 62:6, 62:11, 62:12, 65:15, 76:18, 79:15, 82:3, 85:12, 87:13, 87:16, 87:25, 88:14, 89:6, 92:1, 93:24, 94:12
**conducted** [1] - 52:12
**conferred** [3] - 56:15, 75:17, 93:19
**confessed** [1] - 66:24
**confronted** [1] - 82:7
**Congress** [7] - 21:23, 22:2, 22:4, 46:7, 52:25, 53:4, 53:9
**congressional** [1] - 22:1
**connection** [1] - 32:9
**conscience** [1] - 50:2
**conscious** [1] - 35:18
**consecutive** [9] - 3:24, 8:25, 10:18, 22:3, 38:22, 53:3, 53:7, 89:13, 89:20
**consent** [1] - 61:16
**consequences** [2] - 49:2, 85:8
**conservative** [1] - 21:3
**consider** [6] - 30:23, 41:12, 46:8, 53:7, 57:23, 59:18
**consideration** [1] - 60:18
**considered** [3] - 26:17, 76:14, 89:8
**consistent** [3] - 41:19, 57:5, 70:22
**consistently** [1] - 30:12
**consists** [2] - 89:18, 90:10
**constrained** [1] - 88:17
**Consumer** [1] - 73:4
**contacted** [1] - 50:5
**contest** [1] - 50:22
**contested** [1] - 24:14
**context** [2] - 17:18, 27:3
**continue** [4] - 16:15, 76:3, 83:8, 85:21
**continued** [5] - 37:13, 47:7, 51:9, 82:6, 91:24
**continues** [2] - 49:16, 55:2
**continuing** [2] - 37:18, 85:18
**continuously** [1] - 83:9
**control** [3] - 47:3, 65:23, 95:15
**conversation** [2] - 17:3, 56:25

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 102 of 116

**conversations** [1] - 25:2
**convicted** [5] - 50:25, 54:19, 59:15, 59:17, 66:5
**conviction** [9] - 4:10, 22:7, 55:5, 59:10, 59:12, 59:22, 64:15, 87:14, 87:17
**convictions** [5] - 10:11, 19:21, 59:25, 62:5, 62:7
**convinced** [2] - 83:19, 85:15
**copy** [1] - 7:23
**copying** [1] - 13:1
**core** [1] - 89:2
**cornered** [1] - 54:23
**corners** [1] - 49:3
**correct** [12] - 7:15, 8:7, 13:3, 13:12, 15:8, 15:9, 17:6, 28:21, 39:13, 39:22, 57:8, 57:14
**correctly** [1] - 15:13
**cost** [5] - 43:15, 43:18, 44:13, 44:16, 92:6
**costs** [14] - 16:2, 26:5, 26:6, 26:16, 40:23, 43:6, 43:12, 91:9, 94:22, 94:24, 95:1, 95:12, 95:14, 95:17
**cot** [1] - 85:1
**could** [16] - 7:20, 24:22, 28:7, 31:17, 31:19, 46:3, 52:23, 57:16, 59:17, 60:6, 62:6, 77:9, 78:2, 81:17, 81:18
**couldn't** [4] - 12:17, 21:8, 73:13, 96:5
**counsel** [4] - 17:2, 40:24, 98:8
**count** [4] - 3:13, 4:10, 22:7, 53:5
**Count** [28] - 3:14, 3:17, 3:22, 3:24, 4:4, 4:7, 4:8, 8:22, 8:23, 8:24, 9:1, 10:15, 10:16, 32:19, 38:21, 38:22, 40:4, 52:25, 53:9, 56:13, 89:12, 89:13, 89:19, 90:10
**Counts** [2] - 93:3, 93:9
**counts** [3] - 3:13, 10:18, 93:7
**County** [7] - 29:18, 29:22, 30:8, 48:12, 49:18, 64:4, 69:16
**county** [3] - 57:2, 78:22, 79:11
**couple** [3] - 23:18, 23:19
**courageous** [2] - 77:24, 78:1
**course** [22] - 8:24, 10:20, 18:13, 19:25, 23:8, 24:1, 26:24, 27:13, 28:13, 40:8, 40:10, 41:23, 42:23, 43:16, 57:5, 57:17, 57:25, 58:23, 60:3, 60:6, 66:11, 75:8
**Court** [90] - 1:23, 3:2, 4:3, 4:6, 4:9, 6:15, 6:18, 7:18, 10:4, 10:24, 11:1, 13:1, 13:14, 15:13, 17:18, 21:23, 21:24, 21:25, 22:8, 22:10, 24:10,

24:11, 25:14, 26:12, 27:4, 27:17, 27:19, 30:16, 30:23, 33:12, 39:4, 41:12, 42:5, 43:4, 45:8, 46:5, 46:8, 49:4, 49:10, 51:5, 52:24, 53:4, 53:6, 53:9, 53:11, 55:23, 56:15, 56:21, 56:25, 57:1, 57:9, 57:11, 57:14, 57:15, 58:23, 58:25, 59:2, 59:18, 60:4, 60:7, 62:19, 65:16, 68:14, 68:15, 68:16, 68:20, 69:6, 69:11, 70:5, 70:6, 70:9, 70:21, 76:22, 76:25, 77:4, 83:15, 87:8, 87:21, 88:17, 89:15, 90:19, 91:6, 91:21, 94:1, 94:21, 95:3, 96:12, 96:25, 97:2, 98:13
**COURT** [86] - 1:1, 3:2, 4:16, 5:14, 5:17, 5:22, 6:18, 7:13, 7:20, 8:3, 8:8, 8:12, 8:15, 8:18, 10:4, 11:13, 11:16, 11:19, 11:23, 12:1, 12:3, 12:6, 13:9, 13:13, 13:21, 15:7, 15:11, 15:24, 16:9, 16:14, 16:20, 16:25, 17:4, 17:8, 17:11, 17:13, 17:20, 18:5, 18:14, 19:8, 19:10, 19:17, 24:7, 24:13, 24:22, 25:4, 25:8, 30:25, 39:10, 39:14, 39:23, 40:9, 40:14, 40:17, 41:14, 41:24, 42:2, 43:20, 45:12, 45:14, 56:14, 56:17, 69:20, 70:1, 70:13, 71:11, 71:15, 71:20, 75:4, 75:16, 76:11, 93:8, 93:13, 93:15, 93:18, 94:5, 95:6, 95:23, 96:1, 96:7, 96:14, 96:21, 97:12, 97:15, 97:17, 97:19
**court** [23] - 3:1, 13:19, 14:5, 14:8, 15:19, 41:25, 48:11, 50:13, 51:4, 56:15, 57:23, 59:25, 60:24, 61:3, 63:18, 63:21, 80:4, 80:5, 92:9, 96:16, 96:24, 96:25, 97:1
**Counts** [1] - 3:11
**Court's** [6] - 12:21, 24:25, 26:14, 46:6, 86:22, 95:13
**court-ordered** [1] - 92:9
**courtroom** [1] - 63:2
**cover** [1] - 14:2
**COVID** [2] - 36:11, 49:17
**COVID-19** [3] - 30:8, 30:13, 30:18
**crazy** [1] - 37:16
**create** [2] - 33:21, 33:22
**created** [1] - 35:24
**creates** [1] - 94:25
**Credit** [1] - 3:15
**credit** [40] - 6:2, 6:7, 6:11, 6:22, 9:1, 14:24, 20:8, 20:21, 20:25, 21:4, 21:5, 25:13, 25:18, 26:3, 26:25, 27:6, 27:11, 27:13, 28:22, 31:5,

31:13, 31:21, 32:20, 34:16, 46:18, 46:21, 47:17, 47:21, 51:24, 53:12, 57:10, 70:25, 72:1, 73:1, 81:15, 94:11, 94:14
**credit-against-loss** [1] - 21:4
**credits** [1] - 26:22
**crime** [20] - 3:18, 28:6, 28:7, 28:8, 32:19, 33:1, 33:3, 34:6, 35:11, 35:22, 53:18, 54:17, 62:21, 64:7, 64:8, 78:5, 78:6, 80:22, 84:6
**crimes** [6] - 3:21, 56:4, 77:2, 84:8, 85:4
**criminal** [41] - 10:8, 10:12, 10:14, 19:14, 19:15, 19:18, 19:20, 19:21, 23:10, 26:8, 28:1, 38:17, 38:20, 40:2, 49:3, 50:11, 54:12, 54:14, 55:2, 55:11, 57:13, 62:7, 77:1, 77:19, 77:22, 79:12, 79:15, 79:17, 79:23, 80:1, 80:11, 82:17, 84:1, 84:13, 86:3, 87:12, 87:25, 88:23, 89:2
**critical** [3] - 47:2, 52:18, 86:21
**criticizes** [1] - 63:24
**crush** [1] - 51:9
**CSR** [2] - 1:23, 98:12
**culled** [1] - 21:1
**culpability** [4] - 25:12, 64:17, 65:2, 82:18
**current** [1] - 91:11
**custody** [3] - 89:16, 90:6, 93:1
**customer** [1] - 6:6
**cynical** [1] - 94:24

**D**

**dad** [1] - 74:22
**damage** [2] - 80:11, 88:12
**danger** [2] - 29:19, 30:8, 30:13, 36:16, 36:18, 54:15, 55:25, 69:5, 84:4
**dangerous** [1] - 29:21
**darker** [1] - 49:2
**DAs** [1] - 60:5
**date** [1] - 48:2
**dated** [2] - 56:22, 87:13
**dates** [1] - 15:2
**days** [10] - 49:4, 49:17, 49:18, 49:22, 56:5, 89:22, 92:22, 93:24, 97:4, 97:5
**deaf** [1] - 64:22
**deal** [2] - 50:21, 50:23
**debt** [8] - 20:17, 26:18, 47:21, 71:1, 78:10, 78:17, 79:8
**debts** [1] - 26:22

**decades** [1] - 46:14
**December** [3] - 15:6, 15:22, 15:23
**deception** [1] - 25:14
**deciding** [2] - 30:23, 46:9
**decision** [3] - 31:8, 60:9, 63:16
**decisions** [3] - 60:7, 60:17, 75:21
**decrease** [1] - 89:21
**decreasing** [1] - 35:12
**deemed** [2] - 9:8, 22:4
**Defendant** [2] - 1:7, 1:13
**DEFENDANT** [7] - 8:7, 8:11, 8:14, 8:17, 75:18, 97:11, 97:14
**defendant** [167] - 3:6, 3:12, 4:2, 4:6, 5:3, 6:19, 7:13, 9:4, 9:9, 9:12, 9:15, 9:24, 10:8, 14:25, 16:6, 19:14, 20:9, 20:14, 20:23, 20:25, 21:13, 21:18, 22:13, 23:11, 26:7, 31:5, 31:11, 31:18, 31:20, 32:1, 32:6, 33:1, 33:4, 33:20, 34:10, 34:12, 34:14, 34:22, 34:25, 35:3, 35:17, 35:23, 37:2, 37:5, 37:10, 37:12, 37:14, 37:19, 38:10, 38:17, 41:19, 43:21, 44:4, 44:9, 44:13, 45:1, 45:8, 45:22, 46:11, 46:13, 46:14, 46:15, 46:20, 46:23, 48:1, 48:4, 48:5, 48:7, 48:10, 48:21, 48:22, 49:23, 49:25, 50:2, 50:3, 50:5, 50:7, 50:12, 50:14, 50:17, 50:18, 51:10, 51:13, 51:21, 52:2, 52:6, 52:24, 53:10, 53:23, 54:3, 54:6, 54:11, 54:15, 54:19, 54:21, 54:22, 54:24, 55:4, 55:7, 55:12, 55:24, 56:4, 56:6, 56:8, 56:10, 59:12, 62:18, 62:20, 69:9, 70:6, 70:16, 71:5, 75:17, 76:20, 76:21, 76:23, 76:25, 77:5, 77:14, 77:18, 77:23, 77:25, 78:20, 79:2, 79:12, 79:16, 79:17, 80:7, 80:8, 81:3, 81:7, 81:12, 81:14, 81:24, 82:11, 82:13, 83:7, 83:8, 83:9, 84:3, 84:9, 84:14, 84:21, 84:23, 85:5, 85:7, 85:10, 85:17, 85:20, 86:1, 86:9, 86:10, 86:12, 86:14, 86:16, 86:19, 87:7, 87:11, 88:7, 90:25, 91:7, 92:2, 92:6, 93:19, 96:17
**defendant's** [51] - 4:24, 5:6, 5:7, 6:8, 7:3, 7:4, 10:6, 10:11, 11:3, 13:24, 17:25, 20:7, 20:19, 22:20, 25:12, 29:4, 32:8, 32:22, 32:23, 33:13, 33:15, 33:16, 34:6, 34:9,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 103 of 116

36:23, 37:22, 40:21, 40:23, 48:14, 48:19, 49:1, 51:6, 51:9, 52:21, 53:17, 54:13, 55:2, 55:6, 55:22, 81:10, 81:22, 82:4, 82:22, 83:24, 84:7, 85:25, 87:16, 88:23, 89:6, 92:1, 96:13

**defendants** [1] - 43:17
**defender** [1] - 63:1
**Defender** [1] - 3:8
**Defender's** [1] - 1:12
**defenders** [1] - 60:15
**defense** [58] - 6:13, 6:14, 10:22, 11:8, 16:22, 17:2, 17:15, 17:17, 17:21, 25:1, 25:5, 26:5, 26:13, 27:17, 28:9, 28:17, 29:22, 30:20, 30:22, 42:17, 42:25, 43:1, 43:3, 43:16, 44:11, 44:19, 57:10, 57:17, 58:23, 58:24, 59:3, 59:4, 59:20, 60:6, 60:11, 60:12, 60:15, 60:23, 60:24, 61:4, 61:16, 64:20, 68:3, 68:15, 68:19, 68:22, 69:1, 69:17, 70:12, 71:8, 76:20, 78:25, 91:9, 93:21, 94:2, 96:15
**Defense** [1] - 59:9
**defense's** [1] - 23:4
**defraud** [3] - 20:11, 31:19, 79:23
**defrauded** [3] - 6:2, 6:12, 27:6
**degraded** [1] - 56:4
**delay** [1] - 50:11
**delusional** [1] - 83:17
**delusions** [5] - 60:24, 60:25, 61:2, 61:7, 66:12
**demand** [1] - 50:8
**demands** [1] - 56:12
**demonstrate** [2] - 60:23, 61:14
**demonstrating** [1] - 18:7
**denial** [1] - 6:17
**denies** [1] - 51:21
**deny** [1] - 27:5
**denying** [1] - 6:2
**depart** [3] - 24:19, 27:19, 65:20
**departing** [1] - 65:24
**department** [2] - 51:15, 73:17
**Department** [3] - 14:17, 15:16, 29:23
**departure** [12] - 7:9, 7:19, 11:5, 30:24, 45:9, 45:16, 65:13, 65:15, 69:1, 69:12, 87:20, 87:23
**depends** [2] - 29:19, 29:20
**deprive** [4] - 32:2, 79:22, 81:20, 88:12

**deprived** [4] - 56:4, 84:22, 85:5, 85:8
**depths** [1] - 48:19
**deputy** [2] - 59:1, 59:8
**describe** [3] - 77:7, 84:25, 85:1
**described** [1] - 89:7
**deserve** [4] - 68:1, 71:23, 74:20, 74:23
**deserved** [4] - 28:11, 60:22, 66:5, 66:7
**deserves** [3] - 67:1, 67:3, 74:21
**deserving** [1] - 55:5
**designated** [1] - 90:4
**designed** [1] - 31:10
**despite** [1] - 52:10
**detail** [3] - 10:20, 56:20, 70:19
**detained** [5] - 84:2, 84:3, 84:4, 84:9
**Detective** [3] - 52:7, 52:11, 54:23
**detective** [3] - 52:9, 80:18, 80:22
**deter** [1] - 88:6
**determination** [1] - 24:15
**determine** [3] - 44:5, 94:11, 95:10
**determined** [1] - 8:20
**determining** [1] - 75:8
**deterrence** [3] - 68:2, 68:5, 68:7
**did** [68] - 7:16, 7:17, 10:11, 12:9, 19:15, 19:17, 19:18, 19:19, 19:21, 20:15, 22:13, 23:18, 25:1, 25:4, 25:22, 27:5, 28:10, 28:22, 31:18, 33:4, 33:22, 36:6, 41:9, 43:7, 50:19, 52:9, 52:14, 54:21, 56:20, 58:7, 58:10, 59:6, 59:13, 60:20, 60:21, 61:19, 61:22, 62:17, 63:8, 65:5, 65:17, 67:5, 67:10, 67:12, 67:20, 67:24, 69:10, 71:1, 71:4, 72:8, 72:13, 72:22, 76:21, 77:14, 77:18, 80:11, 81:10, 81:12, 81:16, 82:11, 86:16, 86:22, 93:24, 94:4, 94:8
**didn't** [12] - 27:1, 33:21, 33:22, 52:1, 62:3, 71:22, 74:18, 80:16, 80:17, 80:24, 81:22, 83:16
**Diego** [1] - 72:7
**difference** [5] - 29:5, 42:1, 60:11, 67:4, 69:15
**different** [8] - 18:12, 28:8, 30:4, 30:15, 35:12, 74:9, 78:3
**difficult** [1] - 53:22
**dignity** [2] - 51:3, 55:21
**dime** [1] - 26:16, 67:12

78:13, 78:19
**dire** [1] - 49:1
**direct** [1] - 33:15
**directed** [2] - 32:19, 32:20
**directly** [6] - 23:16, 75:6, 82:12, 82:14, 84:20, 92:6
**disagree** [2] - 56:2, 96:23
**disagrees** [1] - 43:2
**disclosure** [1] - 44:18
**discovered** [2] - 52:15, 70:24
**discuss** [4] - 24:11, 58:1, 61:22, 70:19
**discussion** [1] - 49:14
**dismiss** [1] - 93:6
**dismissed** [1] - 93:9
**displaying** [1] - 88:5
**dispute** [3] - 13:24, 41:9, 41:18
**disputed** [1] - 21:15
**disputes** [3] - 6:7, 21:21, 21:24
**disregard** [1] - 85:8
**distance** [1] - 50:14
**DISTRICT** [2] - 1:1, 1:1
**district** [1] - 50:9
**District** [5] - 46:22, 59:1, 91:6, 92:22, 97:3
**disturbing** [1] - 46:3
**divided** [1] - 40:24
**DNA** [2] - 54:24, 82:8
**do** [72] - 6:1, 6:18, 6:20, 8:8, 8:15, 12:12, 13:15, 13:20, 13:23, 16:3, 16:6, 16:8, 16:20, 17:25, 18:4, 20:2, 20:5, 20:24, 21:6, 21:23, 21:24, 22:8, 24:13, 25:10, 32:5, 33:12, 36:10, 38:24, 39:1, 40:5, 40:11, 43:20, 44:4, 45:10, 49:7, 50:18, 52:10, 59:11, 61:1, 62:3, 62:17, 62:18, 63:17, 66:18, 67:8, 69:9, 72:18, 73:8, 73:20, 74:7, 74:8, 74:18, 74:19, 75:12, 76:5, 76:6, 77:14, 79:6, 81:1, 81:3, 83:4, 86:20, 92:2, 94:6, 95:3, 95:7, 95:10, 95:13, 97:8, 97:10, 97:12, 98:2
**docket** [4] - 17:6, 41:10, 70:19
**document** [6] - 3:11, 10:22, 10:25, 11:2, 11:8, 92:5
**documentation** [1] - 91:21
**documents** [2] - 11:11, 11:20
**does** [42] - 4:16, 13:14, 23:15, 25:16, 27:14, 27:15, 28:2, 29:12, 29:23, 30:22, 31:4, 31:18, 42:5, 42:14, 42:17, 42:23, 43:1, 54:11, 54:14, 55:20, 55:24, 61:12,

61:14, 64:1, 65:8, 67:22, 68:1, 68:4, 69:9, 69:17, 70:8, 70:10, 70:11, 73:9, 73:21, 79:25, 85:1, 86:3, 87:1, 87:15, 94:2, 94:9
**doesn't** [7] - 29:17, 30:16, 51:8, 57:18, 76:7, 78:18, 83:4
**doggedly** [1] - 83:9
**doing** [2] - 73:25, 74:1
**dollars** [2] - 44:24, 53:22
**don't** [37] - 16:9, 16:12, 16:15, 16:16, 17:22, 20:13, 30:9, 34:3, 35:7, 35:10, 35:13, 35:20, 36:7, 36:16, 49:7, 62:15, 66:14, 68:11, 73:9, 73:10, 73:12, 73:25, 75:8, 76:7, 76:16, 78:22, 79:14, 81:25, 94:7, 94:17, 95:2, 95:3, 95:7, 95:24, 96:7
**done** [6] - 34:18, 45:18, 66:25, 67:5, 82:14, 97:13
**doubled** [1] - 50:19
**doubt** [2] - 36:4, 78:8
**down** [5] - 17:19, 21:2, 39:20, 50:19, 73:13
**downward** [5] - 10:23, 11:3, 27:19, 67:3, 69:6
**draft** [2] - 7:24, 7:25
**draw** [2] - 12:11, 12:19
**driver's** [2] - 46:17, 48:8
**drop** [1] - 92:7
**drove** [1] - 7:24
**drugs** [3] - 22:23, 51:1, 84:19
**due** [4] - 90:23, 91:2, 91:3, 92:20
**during** [7] - 30:10, 30:13, 37:18, 47:11, 49:17, 50:2, 62:13
**duty** [1] - 76:3

## E

**earlier** [2] - 24:25, 26:14
**earn** [1] - 42:22
**earned** [1] - 81:14
**earnings** [5] - 21:16, 33:19, 33:20, 91:11, 91:12
**ears** [1] - 64:22
**easy** [1] - 88:4
**education** [1] - 86:15
**effect** [1] - 53:6
**effort** [1] - 58:15
**efforts** [2] - 32:22, 37:21
**egg** [1] - 95:8
**egregious** [5] - 53:24, 65:20, 76:18, 88:1
**Eighth** [2] - 23:14, 96:25
**either** [7] - 26:23, 27:3, 31:10, 45:9, 60:21, 63:8,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 104 of 116

**90**:18
**Elaine** [1] - 74:22
**elementary** [1] - 74:15
**eliminate** [1] - 96:16
**else** [7] - 24:6, 63:2, 78:10, 79:7, 86:24, 93:11, 96:19
**else's** [2] - 34:19, 62:14
**email** [2] - 12:25, 95:22
**emphasize** [6] - 20:3, 20:17, 20:22, 70:18, 71:9, 76:4
**employed** [3] - 63:10, 98:7, 98:8
**employee** [1] - 98:7
**employer** [1] - 72:22
**employment** [1] - 46:16
**end** [7] - 48:24, 48:25, 50:6, 50:10, 51:8, 55:13, 59:14
**endanger** [1] - 62:3
**ended** [1] - 66:24
**ending** [1] - 47:9
**ends** [1] - 88:24
**endured** [1] - 50:25
**enforcement** [4] - 51:12, 79:19, 81:25, 82:2
**engaged** [2] - 55:8, 89:6
**enhance** [1] - 4:23
**enhancement** [29] - 4:21, 5:3, 6:23, 6:24, 9:5, 9:10, 9:13, 9:16, 23:6, 28:24, 29:14, 30:19, 30:21, 31:9, 32:13, 33:8, 35:3, 35:17, 36:20, 36:22, 38:3, 38:5, 38:7, 39:3, 39:15, 39:17, 39:18, 65:21, 88:3
**enhancements** [4] - 18:20, 22:9, 23:3, 38:2
**enough** [3] - 48:15, 85:22, 95:8
**ensuing** [1] - 37:6
**ensure** [3] - 53:5, 83:11, 84:12
**enter** [1] - 59:13
**entering** [1] - 37:6
**entire** [4] - 50:17, 54:17, 65:3, 91:16
**entirely** [4] - 57:24, 63:21, 64:3, 64:9
**entitled** [1] - 38:11
**equal** [1] - 27:20
**equally** [4] - 26:4, 58:6, 66:3, 67:15
**equals** [1] - 80:12
**escape** [1] - 66:18
**essentially** [1] - 54:17
**establish** [2] - 33:13, 40:20
**estimate** [2] - 20:6, 21:3
**estimation** [1] - 25:11
**et** [2] - 26:25, 57:16
**evade** [3] - 31:23, 77:1, 78:9
**evaluated** [1] - 61:5
**evaluation** [2] - 7:6, 87:4

**even** [29] - 31:12, 31:21, 33:20, 33:24, 36:3, 36:19, 50:8, 51:7, 51:8, 53:6, 53:20, 54:18, 55:23, 56:7, 62:4, 63:10, 67:3, 71:13, 71:23, 72:9, 72:21, 73:13, 73:17, 74:14, 76:15, 82:4, 82:10
**event** [2] - 22:11, 83:20
**ever** [7] - 31:14, 32:2, 42:13, 44:12, 79:2, 79:5, 86:19
**every** [6] - 25:22, 26:25, 28:9, 36:15, 46:15, 76:3
**everybody** [2] - 75:20, 83:18
**everything** [9] - 21:13, 21:17, 24:6, 45:6, 49:7, 72:13, 73:22, 73:25, 74:19
**evidence** [17] - 11:14, 11:24, 18:21, 36:11, 37:4, 46:6, 47:10, 54:24, 55:7, 55:20, 70:20, 70:22, 71:9, 78:7, 78:11, 82:8, 86:18
**exact** [1] - 77:18
**exactly** [5] - 21:23, 22:8, 31:18, 86:5, 86:13
**exaggeration** [1] - 65:4
**example** [4] - 31:20, 51:13, 53:19, 77:25
**exceed** [2] - 20:6, 92:13
**except** [2] - 45:6, 86:24
**exception** [1] - 67:14
**exceptional** [1] - 80:18
**exchange** [1] - 50:22
**excuse** [3] - 58:13, 63:19, 64:8
**Exhibit** [24] - 14:17, 14:23, 15:5, 15:7, 15:12, 15:21, 15:25, 20:23, 20:24, 42:5, 42:11, 42:17, 44:19, 49:10, 49:16, 59:2, 59:9, 70:20, 86:8, 86:11, 87:3, 94:4, 96:12
**exhibited** [2] - 60:23, 61:2
**EXHIBITS** [1] - 2:2
**exhibits** [20] - 11:9, 11:11, 11:13, 11:20, 11:23, 12:7, 13:6, 13:16, 14:14, 14:20, 14:22, 15:1, 17:16, 17:21, 18:7, 18:11, 20:22, 60:23, 60:25, 94:17
**Exhibits** [14] - 2:3, 2:6, 10:24, 11:1, 11:7, 11:9, 11:16, 11:18, 12:3, 12:5, 15:18, 17:24, 94:16, 95:19
**exist** [2] - 78:14, 79:5
**existence** [1] - 79:21
**exit** [1] - 88:5
**exonerate** [1] - 60:9
**exonerated** [1] - 16:5
**expected** [1] - 68:20
**expediency** [1] - 60:18
**expense** [3] - 81:13, 81:21, 97:9

**expenses** [1] - 26:23
**Experian** [1] - 73:23
**experienced** [2] - 27:23, 47:3
**explanatory** [1] - 17:21
**exposed** [6] - 30:17, 36:11, 36:12, 36:13, 36:18, 62:9
**exposing** [1] - 27:2
**Express** [1] - 14:21
**extend** [1] - 48:18
**extended** [1] - 88:8
**extent** [15] - 6:22, 17:17, 34:10, 34:25, 54:5, 79:9, 79:15, 81:14, 82:13, 82:17, 85:10, 85:14, 85:19, 86:7, 90:14
**extra** [1] - 41:22
**extreme** [3] - 88:10, 88:14, 89:6
**extremely** [3] - 52:21, 53:17, 54:9

## F

**face** [1] - 95:9
**facility** [1] - 90:5
**facing** [2] - 50:20, 77:13
**fact** [11] - 13:16, 25:22, 32:16, 53:7, 55:9, 59:20, 71:23, 72:2, 77:8, 78:16, 81:24
**factor** [2] - 53:25, 57:24
**factors** [12] - 21:10, 24:12, 24:18, 30:17, 44:6, 45:1, 45:4, 54:5, 57:22, 76:14, 89:8
**facts** [7] - 22:19, 26:2, 31:25, 46:3, 52:13, 52:14
**faculties** [1] - 30:3
**faculty** [2] - 22:25, 23:1
**fail** [1] - 97:4
**failed** [1] - 94:6
**failing** [1] - 35:2
**failure** [4] - 4:23, 5:2, 35:16, 82:8
**fair** [2] - 4:13, 5:19
**Fairfax** [1] - 47:18
**fairly** [2] - 17:16, 42:24
**faith** [1] - 80:1
**fake** [2] - 20:13
**fall** [3] - 29:12, 64:22, 68:20
**falls** [1] - 84:20
**False** [1] - 49:10
**false** [33] - 3:14, 3:22, 4:25, 9:1, 31:6, 31:7, 31:12, 31:21, 32:3, 34:23, 35:4, 35:5, 48:9, 48:11, 49:8, 50:4, 50:15, 51:11, 53:12, 53:18, 53:23, 55:16, 57:16, 59:16, 59:22, 60:1, 77:5, 77:17, 77:20, 82:1, 84:11, 84:15, 87:18

**falsehood** [1] - 87:18
**falsely** [4] - 32:24, 49:6, 50:7, 58:8
**family** [7] - 65:9, 65:10, 67:18, 74:21, 74:23, 74:24, 90:5
**far** [12] - 16:9, 25:5, 26:5, 29:22, 29:25, 50:8, 55:12, 59:10, 68:8, 80:11, 80:12, 82:16
**fashion** [1] - 88:19
**fast** [1] - 47:15
**fast-forward** [1] - 47:15
**fateful** [1] - 47:15
**fault** [7] - 28:5, 28:13, 28:14, 64:4, 66:13, 79:10, 79:11
**faxed** [1] - 48:7
**FCRR** [2] - 1:23, 98:12
**February** [1] - 98:10
**Federal** [6] - 1:12, 3:7, 72:20, 72:24, 73:1, 73:2
**federal** [2] - 30:11, 53:2
**federally** [1] - 46:21
**feel** [4] - 8:8, 67:22, 69:9, 76:8
**feeling** [1] - 69:4
**fees** [9] - 19:5, 24:16, 40:19, 43:16, 44:3, 44:11, 44:17, 44:20, 45:2
**feet** [3] - 64:16, 75:13, 84:21
**felon** [2] - 50:25, 52:16
**felony** [2] - 48:11, 59:7
**few** [3] - 20:3, 47:13, 93:20
**field** [1] - 47:4
**figure** [3] - 12:17, 61:24, 64:24
**figured** [2] - 52:1, 64:11
**file** [3] - 3:11, 18:7, 47:24, 96:15, 96:16, 97:1, 97:4
**filed** [14] - 3:10, 6:6, 10:21, 10:22, 10:25, 11:2, 18:9, 18:10, 18:11, 50:13, 51:14, 51:16, 73:5, 94:16
**finally** [4] - 26:18, 54:24, 73:19, 94:21
**Finance** [1] - 73:4
**finances** [2] - 18:1, 91:10
**financial** [37] - 4:22, 5:9, 7:4, 7:7, 13:25, 17:25, 21:7, 21:18, 27:21, 27:23, 28:22, 31:15, 32:2, 32:4, 32:14, 32:17, 32:19, 32:25, 33:1, 33:5, 33:6, 33:9, 33:14, 33:21, 33:25, 34:1, 34:5, 34:10, 34:12, 34:21, 35:11, 35:22, 40:18, 44:9, 92:9, 92:16, 92:24
**Financial** [1] - 92:12
**financially** [1] - 98:8
**find** [37] - 14:10, 21:8, 22:10, 22:19, 27:17, 31:4, 31:9, 32:5, 33:10, 33:12, 34:3, 35:7,

35:13, 35:20, 36:7, 36:10, 36:16, 36:19, 36:24, 37:23, 43:21, 44:4, 44:9, 44:25, 67:14, 67:15, 81:25, 85:21, 87:20, 88:2, 88:20, 88:21, 91:7, 91:9, 91:20, 92:5, 94:7

**finding** [2] - 47:16, 57:12

**finds** [1] - 94:1

**fine** [23] - 4:6, 4:7, 4:8, 7:5, 13:25, 18:23, 18:24, 19:4, 24:16, 29:23, 40:19, 40:22, 42:16, 43:3, 43:4, 43:14, 44:3, 44:4, 44:5, 44:8, 91:1, 91:11, 96:18

**fingerprints** [1] - 49:15

**fingers** [1] - 60:16

**first** [18] - 5:11, 5:23, 8:19, 14:9, 15:9, 19:11, 27:15, 31:3, 31:20, 40:25, 41:23, 42:4, 45:15, 45:24, 64:5, 70:18, 75:18, 76:18

**fit** [2] - 66:1, 66:3

**five** [1] - 15:9

**flatly** [2] - 78:4, 78:20

**flight** [2] - 84:5, 84:10

**focus** [2] - 12:18, 57:24, 79:15

**follow** [1] - 27:15

**followed** [1] - 52:14

**following** [1] - 3:1

**follows** [1] - 3:21

**food** [1] - 73:15

**footnote** [3] - 16:23, 17:4, 17:7

**FOR** [1] - 1:1

**forbidden** [1] - 28:17

**force** [1] - 56:8

**forced** [2] - 36:5, 91:25

**forcibly** [1] - 30:1

**foregoing** [1] - 98:4

**foresaw** [1] - 69:14

**foreseeable** [2] - 26:7, 63:21

**foreseen** [1] - 52:23

**foreshadowed** [1] - 48:18

**foretaste** [1] - 87:16

**forever** [1] - 97:5

**forgery** [3] - 54:20, 87:15, 87:17

**form** [5] - 69:2, 85:3, 87:18, 88:8, 89:1

**formal** [1] - 94:2

**formally** [2] - 7:16, 93:23

**forms** [1] - 46:18

**forth** [1] - 82:7

**forward** [3] - 47:15, 77:15, 86:17

**forwarded** [1] - 51:17

**found** [6] - 17:20, 23:24, 58:9, 58:12, 65:17, 88:7

**Fousey** [3] - 15:1, 15:10, 47:10

**framed** [1] - 29:4

**frankly** [1] - 67:11

**Franz** [1] - 46:2

**fraud** [8] - 25:17, 27:7, 37:18, 52:19, 53:2, 72:19, 72:20, 80:17

**fraudulent** [1] - 6:8

**freedom** [9] - 84:23, 84:24, 85:2, 85:4, 85:6, 85:9, 88:11, 88:12

**Freese** [3] - 3:9, 40:15, 93:13

**freeze** [1] - 73:24

**frequently** [1] - 64:21

**friends** [1] - 74:12

**from** [80] - 12:25, 14:20, 15:1, 15:5, 15:6, 15:10, 15:14, 15:17, 15:19, 19:2, 19:11, 20:17, 21:13, 24:19, 25:7, 26:16, 28:17, 30:8, 30:13, 30:18, 32:4, 35:12, 36:25, 40:25, 41:1, 41:2, 41:7, 41:16, 42:9, 42:11, 43:11, 44:1, 45:15, 45:17, 45:20, 45:22, 45:24, 46:21, 50:14, 51:3, 52:16, 53:22, 54:20, 56:9, 56:18, 56:22, 58:20, 59:13, 61:6, 61:7, 65:7, 66:6, 66:10, 68:6, 69:6, 70:4, 70:5, 71:4, 71:9, 71:14, 71:25, 72:7, 72:24, 73:25, 78:7, 78:19, 80:6, 81:19, 82:21, 86:7, 86:17, 88:5, 88:6, 89:4, 89:10, 90:8, 92:17, 95:1, 95:22

**front** [1] - 80:5

**frontline** [4] - 60:13, 60:14, 60:15, 60:16

**froze** [1] - 73:23

**full** [5] - 4:13, 5:19, 25:20, 42:7, 53:6

**fully** [4] - 37:12, 81:25, 82:3, 88:22

**funds** [1] - 92:14

**further** [5] - 25:6, 43:25, 53:4, 54:21, 91:22, 97:15, 98:6, 98:7

**future** [4] - 48:18, 51:5, 76:6, 91:12

**G**

**G1** [3] - 11:9, 17:24, 18:11

**G2** [3] - 11:9, 17:24, 18:12

**games** [1] - 27:8

**general** [3] - 6:15, 68:4, 82:11

**generally** [2] - 6:10, 43:17

**get** [19] - 21:12, 23:23, 28:2, 30:1, 30:10, 39:18, 45:18, 51:21, 51:23, 62:16, 68:24, 72:14, 72:15, 73:6, 73:19, 73:20, 74:7, 81:13, 85:18

**getting** [4] - 17:13, 32:15, 49:15, 62:8

**give** [8] - 55:23, 60:4, 60:7, 70:13, 87:15, 94:18, 96:1, 97:5

**given** [9] - 13:8, 30:5, 38:24, 40:11, 44:18, 48:6, 53:6, 55:14, 85:17

**gives** [4] - 9:17, 38:9, 55:21, 87:22

**glibly** [1] - 84:24

**goals** [2] - 76:14, 79:13

**gold** [1] - 73:18

**Goldman** [2] - 14:21, 14:25

**good** [26] - 5:17, 7:20, 8:18, 15:11, 17:20, 30:3, 55:13, 61:22, 61:24, 62:13, 65:8, 65:11, 67:1, 67:9, 67:16, 67:18, 67:24, 67:25, 71:20, 71:21, 74:7, 74:12, 81:15

**government** [51] - 4:16, 4:17, 4:18, 4:20, 4:23, 5:5, 5:12, 5:15, 10:25, 11:2, 12:23, 12:25, 18:19, 18:20, 26:18, 27:22, 28:16, 28:25, 29:2, 30:11, 32:13, 34:3, 35:16, 35:22, 36:1, 40:25, 45:15, 53:13, 58:3, 58:17, 58:19, 60:3, 60:12, 61:12, 62:4, 63:18, 63:24, 63:25, 64:3, 64:18, 65:3, 65:14, 68:10, 69:3, 69:4, 78:6, 87:19, 91:8, 94:18

**government's** [28] - 5:1, 9:23, 11:4, 11:6, 13:1, 13:16, 14:14, 15:2, 16:18, 22:23, 29:9, 30:7, 32:11, 33:6, 33:7, 34:7, 35:2, 35:8, 35:15, 36:20, 40:20, 43:2, 58:5, 61:21, 64:9, 64:23, 65:1, 77:7

**grand** [2] - 28:12, 55:9, 59:6, 59:17, 60:2, 64:13

**granted** [2] - 93:8, 96:15

**granting** [1] - 89:9

**grants** [1] - 10:4

**gratuitous** [1] - 66:4

**great** [1] - 55:23

**greater** [2] - 30:18, 76:13

**ground** [5] - 33:7, 36:21, 65:25, 68:25, 87:21

**grounds** [5] - 7:9, 65:13, 87:19, 87:20, 87:23

**growing** [1] - 74:14

**guarding** [1] - 29:23

**guess** [2] - 45:17, 72:4

**guideline** [38] - 9:3, 9:5, 9:10, 9:13, 9:16, 9:22, 10:3, 10:14, 10:16, 12:21, 18:17, 18:19, 18:23, 18:25, 19:3, 19:24, 21:21, 23:3, 24:14, 28:15, 29:10, 31:3, 33:11,

35:3, 35:7, 38:11, 38:19, 38:20, 39:2, 40:3, 45:9, 68:20, 69:15, 88:18, 89:5, 89:10, 89:11, 90:2

**guidelines** [26] - 8:20, 8:23, 8:24, 18:18, 19:3, 24:4, 24:19, 25:10, 31:1, 32:5, 32:18, 35:9, 35:14, 37:25, 52:22, 68:24, 81:5, 82:1, 87:24, 88:9, 88:15, 88:20, 88:22, 88:25, 89:3

**guilty** [11] - 3:12, 3:13, 3:17, 9:19, 16:6, 25:16, 38:10, 54:11, 55:9, 67:21, 67:23

**guy** [3] - 82:24, 83:4

**H**

**had** [60] - 4:13, 5:12, 5:19, 5:22, 6:25, 7:11, 8:4, 8:8, 8:13, 17:2, 18:6, 20:14, 21:13, 23:22, 26:24, 29:20, 31:24, 33:17, 34:15, 34:19, 37:15, 38:18, 47:1, 47:12, 47:17, 47:20, 47:21, 48:1, 48:5, 49:1, 50:18, 51:3, 51:7, 51:15, 52:4, 52:6, 55:10, 58:10, 61:23, 63:17, 64:24, 66:23, 66:24, 66:25, 70:4, 70:25, 72:8, 72:19, 72:20, 73:14, 73:16, 73:18, 75:3, 78:12, 78:13, 86:14, 93:21, 94:15, 94:16, 98:5

**hadn't** [2] - 48:6, 85:17

**half** [1] - 68:19

**hammer** [1] - 56:11

**hand** [2] - 47:7, 98:9

**happen** [2] - 80:2, 81:22

**happened** [16] - 26:1, 28:3, 28:6, 28:11, 29:12, 32:21, 37:5, 37:9, 50:14, 52:8, 65:2, 66:16, 68:25, 70:21, 72:17, 73:15

**happenstance** [1] - 47:10

**happy** [5] - 17:18, 19:11, 45:24, 56:17, 74:10

**harasses** [1] - 83:10

**hard** [7] - 27:10, 68:24, 81:16, 84:11, 86:4, 86:9, 86:13

**hardship** [18] - 4:22, 21:7, 21:18, 27:22, 27:23, 28:13, 28:23, 32:14, 32:17, 32:25, 33:5, 33:9, 33:14, 33:21, 33:25, 34:6, 81:11, 88:7

**harm** [13] - 57:21, 57:24, 57:25, 61:9, 61:10, 65:16, 65:18, 66:8, 68:12, 82:16, 82:18, 82:19

**harsh** [1] - 63:23

**has** [58] - 4:2, 4:17, 5:5, 5:23, 6:11, 8:12, 10:8, 10:9, 13:18,

18:19, 18:20, 19:18, 20:10, 21:25, 22:1, 30:17, 33:20, 34:3, 38:10, 39:16, 41:10, 41:18, 43:21, 44:4, 44:7, 44:9, 44:13, 44:15, 44:19, 46:5, 46:7, 49:4, 49:13, 50:24, 51:2, 52:25, 53:4, 53:9, 54:17, 54:21, 57:14, 62:5, 65:17, 78:17, 81:9, 82:25, 85:10, 86:10, 87:7, 87:19, 90:19, 90:25, 91:10, 91:18, 92:4, 92:7, 94:11, 96:3

**having** [9] - 6:1, 6:20, 42:13, 44:14, 51:25, 66:18, 82:18, 84:24, 89:8

**Hawes** [2] - 62:19, 62:20

**HAWES** [1] - 62:19

**head** [2] - 59:1, 59:8

**health** [4] - 5:8, 7:5, 30:17, 87:4

**hear** [16] - 19:2, 19:11, 24:16, 40:25, 41:1, 44:1, 44:25, 45:14, 45:17, 45:20, 45:22, 45:24, 56:18, 61:25, 70:4, 70:5

**heard** [5] - 52:10, 55:10, 70:11, 80:21, 80:22

**HEARING** [1] - 1:15

**hearing** [16] - 3:5, 10:19, 11:21, 12:13, 13:15, 14:2, 14:4, 41:15, 49:9, 49:12, 70:3, 71:3, 75:5, 98:3, 98:4, 98:5

**hearings** [1] - 15:21

**heck** [1] - 83:16

**HELD** [1] - 1:16

**held** [5] - 3:1, 50:17, 78:10, 86:21, 98:3

**hello** [1] - 71:19

**help** [2] - 63:10, 83:16

**helpful** [1] - 66:21, 88:21

**hereby** [3] - 89:16, 93:1, 98:2

**hereto** [1] - 98:8

**heretofore** [1] - 98:3

**herring** [1] - 62:2

**high** [5] - 46:25, 52:17, 78:1, 86:15

**high-level** [2] - 46:25, 52:17

**higher** [3] - 43:9, 60:8, 96:24

**highlight** [1] - 24:4

**highly** [1] - 85:2

**himself** [5] - 23:24, 37:15, 50:14, 54:22, 56:7

**hint** [1] - 86:22

**history** [35] - 5:6, 5:7, 5:8, 5:9, 7:3, 10:8, 10:12, 10:13, 10:14, 19:14, 19:15, 19:18, 19:20, 19:21, 25:18, 25:19, 27:11, 31:13, 31:15, 31:22, 34:16, 38:17, 38:20, 40:3, 54:2, 54:12, 54:14, 85:25, 86:3, 87:1, 87:5, 87:7, 87:12

**hold** [4] - 18:24, 72:5, 75:10, 95:11

**home** [4] - 47:13, 50:25, 53:20, 82:4

**homeless** [8] - 23:11, 36:25, 37:14, 46:11, 47:8, 52:16, 82:24, 86:17

**homelessness** [4] - 23:13, 63:9, 63:12, 81:8

**HON** [1] - 1:16

**honest** [1] - 34:15

**honestly** [1] - 72:4

**Honor** [77] - 4:15, 5:13, 5:16, 5:21, 7:12, 7:15, 8:2, 8:7, 8:11, 8:14, 8:17, 10:2, 11:12, 11:15, 11:22, 11:25, 12:2, 13:4, 13:12, 13:20, 14:13, 16:13, 16:19, 16:22, 17:6, 17:10, 17:15, 18:4, 19:7, 19:9, 19:12, 19:13, 19:23, 21:9, 23:8, 24:4, 24:9, 24:20, 25:10, 39:1, 39:22, 40:8, 40:13, 40:16, 41:4, 41:6, 42:4, 45:11, 45:13, 46:1, 46:2, 48:15, 49:23, 50:16, 52:8, 52:22, 54:13, 55:1, 56:1, 56:19, 57:11, 69:17, 70:10, 75:15, 93:6, 93:12, 93:14, 93:17, 93:20, 94:3, 95:21, 96:6, 96:20, 97:11, 97:14, 97:16, 97:18

**Honorable** [1] - 98:3

**hope** [3] - 80:19, 81:2, 95:13

**hospital** [12] - 26:5, 26:16, 46:25, 49:20, 49:22, 52:2, 52:5, 52:6, 52:18, 55:17, 91:25, 95:12

**hospital's** [1] - 47:2

**hospitalization** [8] - 14:19, 16:2, 60:21, 61:6, 91:25, 92:4, 94:23, 95:17

**hospitalized** [1] - 22:22

**Hospitals** [1] - 14:17

**hotdog** [1] - 46:12

**hots** [1] - 84:25

**hours** [4] - 12:8, 12:13, 43:7, 43:9

**housed** [3] - 29:20, 30:8, 63:11

**Hugo** [2] - 77:10, 77:24

**human** [2] - 51:3, 55:21

**humiliation** [2] - 66:10, 66:11

**hundred** [1] - 72:9

**hurt** [4] - 75:20, 75:21, 75:22, 75:23

**hypothesize** [1] - 31:17

**I**

**Ian** [1] - 52:7

**ID** [1] - 34:23

**Idaho** [1] - 76:23

**idea** [2] - 43:17, 78:12

**identifiable** [1] - 17:17

**identification** [9] - 4:25, 21:19, 22:14, 28:25, 29:13, 35:6, 77:4, 81:10, 81:18

**identifications** [2] - 5:1, 35:5

**identified** [7] - 7:10, 11:10, 11:19, 15:13, 23:12, 52:25, 84:10

**identifiers** [2] - 20:14, 96:13

**identifies** [2] - 23:7, 57:13

**identify** [2] - 13:6, 68:25

**identifying** [4] - 5:25, 96:4, 96:8, 96:17

**identities** [1] - 84:11

**identity** [55] - 3:18, 22:2, 27:2, 31:23, 32:4, 33:3, 33:10, 33:16, 34:2, 34:5, 34:18, 34:20, 36:1, 37:19, 46:13, 46:14, 46:19, 46:23, 48:25, 49:10, 50:8, 50:15, 51:2, 51:15, 52:6, 53:1, 58:10, 58:11, 58:15, 59:16, 59:23, 59:25, 61:12, 61:14, 61:15, 61:17, 61:19, 61:20, 62:9, 62:16, 62:18, 70:24, 73:2, 73:6, 77:1, 77:5, 77:11, 77:15, 77:17, 77:20, 81:13, 81:20, 83:1, 84:7, 84:16

**IE** [1] - 15:20

**ignore** [1] - 64:13

**ignores** [2] - 29:10, 64:24

**Ill** [1] - 70:18

**ill** [3] - 30:5, 63:6, 66:2

**illness** [4] - 30:6, 61:7, 63:9, 63:13

**imagine** [4] - 16:14, 53:22, 77:9, 84:23

**imagined** [2] - 46:3, 77:10

**imbalance** [2] - 64:19, 64:23

**imbalances** [1] - 64:21

**immediately** [6] - 31:22, 50:23, 90:23, 91:2, 91:3, 91:16

**impact** [7] - 6:21, 13:17, 15:14, 33:17, 41:13, 43:25, 45:4

**impacted** [1] - 32:10

**impairment** [1] - 22:24

**impersonation** [2] - 48:11, 57:16, 59:16, 59:22, 60:1

**implicitly** [2] - 68:9, 69:11

**important** [5] - 27:9, 49:13, 56:20, 57:22, 61:10

**importantly** [3] - 25:17, 30:16, 62:4

**impose** [4] - 4:7, 4:9, 43:4, 45:23, 46:9, 68:15, 87:4, 87:8

**imposed** [9] - 3:25, 10:17,

43:13, 45:7, 45:16, 53:8, 90:1, 96:23, 97:6

**imposes** [1] - 88:12

**imprisoned** [4] - 28:12, 58:8, 89:17

**imprisonment** [16] - 4:1, 10:15, 29:16, 29:18, 38:21, 40:4, 52:25, 53:11, 55:16, 64:15, 66:7, 89:24, 89:25, 90:8, 92:17, 93:22

**improper** [1] - 29:17

**improperly** [1] - 59:15

**IN** [2] - 1:1, 98:9

**inadequate** [1] - 91:20

**incarcerated** [9] - 22:21, 36:12, 36:16, 36:18, 79:4, 84:17, 84:25, 85:21, 92:10

**incarceration** [9] - 27:24, 27:25, 28:5, 55:15, 60:19, 77:16, 77:21, 80:10, 88:8

**incentive** [1] - 94:25

**incident** [1] - 51:17

**incidental** [1] - 66:12

**include** [1] - 40:19

**includes** [2] - 11:4, 86:4

**including** [2] - 11:16, 63:15

**income** [4] - 27:10, 31:13, 34:16, 81:21

**incompetent** [1] - 74:5

**inconsistency** [1] - 29:7

**inconsistent** [2] - 6:16, 29:1

**incorrect** [2] - 29:2, 58:19

**increase** [3] - 21:5, 29:4, 35:10

**increased** [1] - 39:6

**increases** [1] - 14:24

**increasing** [1] - 29:6

**incremental** [1] - 39:6

**incurred** [2] - 26:19, 26:22

**indeed** [1] - 63:5

**independent** [3] - 61:3, 61:7, 95:12

**independently** [2] - 26:9, 26:11

**INDEX** [1] - 2:1

**indicated** [4] - 12:23, 16:5, 96:12, 98:3

**indication** [2] - 31:14, 32:1

**indicia** [1] - 33:23

**indictment** [1] - 3:13

**individual** [5] - 66:2, 77:17, 80:13, 82:14, 82:15

**inflict** [1] - 33:5

**inform** [1] - 88:21

**information** [14] - 6:16, 16:23, 31:7, 47:2, 49:14, 59:10, 86:11, 90:20, 91:20, 94:13, 96:4, 96:8, 96:17

**informative** [1] - 87:21

**infrastructure** [1] - 62:1

**initial** [1] - 77:3

**initially** [4] - 12:23, 16:23, 18:9, 82:6
**injury** [12] - 5:4, 22:17, 29:15, 30:6, 35:19, 35:25, 36:4, 36:8, 48:13, 66:3, 88:10
**injustice** [1] - 80:13
**ink** [1] - 19:25
**inmates** [1] - 29:24
**innocent** [3] - 79:18, 80:2, 80:10
**insight** [1] - 55:22
**insistence** [5] - 82:22, 83:24, 83:25, 84:15, 84:16
**insisting** [2] - 49:19, 83:18
**instead** [5] - 52:1, 58:11, 58:24, 64:6, 77:18
**institution** [5] - 3:16, 32:2, 83:14, 86:23, 92:14
**institutional** [5] - 30:2, 56:10, 60:14, 63:14, 80:3
**institutionalized** [2] - 83:23, 84:18
**institutions** [8] - 20:12, 32:4, 33:6, 34:11, 34:13, 34:21, 36:14
**instructed** [2] - 46:7, 53:4
**instructions** [1] - 72:23
**insult** [1] - 48:13
**insurance** [1] - 46:17
**insured** [2] - 3:15, 46:21
**intend** [1] - 20:2
**intended** [17] - 6:9, 18:6, 25:21, 26:23, 27:3, 31:10, 31:14, 31:19, 31:22, 32:2, 32:6, 33:11, 33:25, 75:22, 78:19, 82:19
**intending** [4] - 12:24, 13:11, 20:23, 21:6
**intends** [1] - 16:7, 26:15
**intent** [14] - 13:5, 20:11, 25:24, 25:25, 26:25, 57:21, 57:22, 61:9, 66:8, 68:10, 68:12, 69:2, 82:16, 85:20
**intentionally** [1] - 77:20, 85:7
**intentions** [1] - 75:22
**interactions** [1] - 12:14
**interest** [1] - 92:25
**interested** [2] - 17:24, 98:8
**interject** [1] - 49:13
**investigate** [1] - 80:16
**investigated** [1] - 80:22
**investigation** [3] - 3:10, 10:20, 52:12
**investigator** [2] - 44:23, 82:7
**investigators** [3] - 80:16, 81:2, 83:10
**invisible** [1] - 47:14
**involving** [1] - 12:8
**IOWA** [1] - 1:1
**Iowa** [13] - 1:11, 1:13, 1:18,

1:24, 46:22, 46:25, 52:2, 52:18, 91:6, 92:22, 97:3, 98:2, 98:14
**ironic** [1] - 63:23
**issue** [14] - 7:17, 21:20, 23:4, 27:21, 29:7, 40:18, 41:16, 42:16, 42:18, 49:15, 56:23, 58:1, 59:11, 66:14
**issued** [1] - 14:24
**issues** [16] - 12:21, 18:17, 18:23, 19:24, 24:14, 24:17, 37:15, 41:1, 41:5, 42:3, 45:3, 45:17, 65:23, 82:20, 93:21, 94:15
**iterate** [1] - 64:5
**itself** [1] - 55:2

**J**

**J-O-B** [1] - 95:5
**jail** [6] - 57:2, 71:23, 72:17, 74:1, 74:25, 93:24
**Jail** [6] - 29:18, 30:9, 48:12, 49:18, 64:5, 69:16
**January** [2] - 1:17, 15:23
**Jean** [2] - 77:11, 77:13
**Jenkins** [1] - 22:11
**Jenkins-Watts** [1] - 22:11
**jeopardize** [1] - 86:23
**Jill** [1] - 3:9
**job** [4] - 29:23, 61:24, 81:14, 86:18
**judge** [7] - 48:12, 49:19, 49:20, 61:5, 63:19, 63:21, 78:24
**judgment** [6] - 89:15, 90:24, 91:17, 94:3, 94:9, 94:13
**jurisdiction** [1] - 57:14
**justice** [21] - 26:9, 49:3, 55:11, 66:18, 74:20, 74:21, 74:23, 77:19, 79:12, 79:17, 79:21, 79:22, 79:23, 79:25, 80:1, 80:5, 80:11, 84:1, 84:13, 88:24, 89:1, 89:2
**justifiable** [1] - 74:19
**justified** [1] - 26:10, 26:12
**justify** [1] - 54:10, 65:15

**K**

**Kafka** [3] - 46:2, 56:6, 77:9
**Kafkaesque** [4] - 58:4, 58:6, 63:25, 77:8
**keep** [1] - 80:6
**keeps** [2] - 14:4, 73:7
**KEIRANS** [1] - 1:6
**Keirans** [60] - 3:3, 5:18, 7:11, 7:24, 7:25, 8:4, 9:19, 25:16, 25:17, 25:20, 25:21, 26:7, 26:19, 26:24, 26:25, 28:9, 34:1,

43:14, 49:19, 58:10, 58:13, 61:11, 61:13, 61:15, 61:18, 61:19, 62:5, 62:12, 62:15, 62:17, 62:21, 63:8, 63:13, 63:19, 63:22, 64:19, 65:10, 65:22, 66:22, 66:23, 67:5, 67:12, 67:17, 67:19, 67:22, 69:3, 69:5, 69:18, 70:2, 71:25, 72:13, 75:5, 76:11, 89:15, 92:9, 93:10, 94:23, 95:2, 96:21
**Keirans's** [20] - 18:7, 18:10, 18:14, 58:4, 58:7, 58:12, 58:14, 60:20, 61:8, 64:4, 64:7, 64:16, 65:1, 65:3, 65:4, 65:7, 67:9, 68:10, 69:2
**Kentucky** [2] - 22:16, 48:9
**kept** [2] - 73:13, 83:18
**keys** [2] - 47:1, 50:17
**Kierans** [2] - 15:20, 48:14
**killing** [1] - 53:21
**kind** [3] - 23:20, 86:13, 88:15
**kinds** [2] - 74:9, 74:11
**kingdom** [1] - 47:1
**knowing** [1] - 95:1
**knowingly** [1] - 85:7
**known** [1] - 82:5
**knows** [6] - 28:9, 29:22, 60:14, 67:19, 71:13, 76:20

**L**

**LA** [5] - 29:18, 29:22, 64:4, 69:16, 78:22
**lack** [3] - 54:14, 57:6, 84:24
**lacking** [1] - 37:4
**LADA** [2] - 50:5
**LADA's** [12] - 59:5, 59:8, 59:21, 59:24, 60:9, 64:10, 64:14, 64:24, 66:4, 66:15, 95:22
**language** [4] - 22:1, 29:10, 35:14, 88:18
**languished** [1] - 49:2
**LAPD** [9] - 15:16, 48:3, 48:4, 48:20, 50:4, 50:5, 50:15, 51:18, 79:10
**large** [2] - 37:4, 46:25, 47:21, 70:25
**largely** [1] - 86:6
**last** [4] - 23:3, 43:8, 44:21, 51:3
**later** [4] - 26:10, 27:24, 37:12, 62:23
**latest** [1] - 63:5
**law** [8] - 51:12, 62:12, 67:19, 79:19, 81:24, 82:1, 86:2, 88:4
**law-abiding** [3] - 62:12, 67:19, 86:2
**lawfully** [1] - 58:8

**LAWRENCE** [1] - 1:10
**lawyer** [4] - 28:9, 57:17, 59:21, 61:4
**lawyers** [2] - 60:15, 64:21
**lay** [1] - 64:15
**lead** [2] - 62:20, 62:22
**least** [15] - 12:22, 12:23, 23:24, 25:7, 37:17, 39:4, 41:15, 43:21, 44:10, 44:16, 45:1, 62:22, 80:12, 82:6, 92:15
**leave** [1] - 38:16
**leaving** [1] - 88:6
**led** [6] - 52:14, 62:12, 62:13, 65:9, 65:11, 86:2
**left** [3] - 51:2, 51:7, 70:3
**lend** [1] - 20:13
**lending** [1] - 20:12
**length** [1] - 12:9
**Les** [1] - 77:10
**less** [5] - 9:7, 38:13, 50:20, 65:20, 66:3
**lessening** [1] - 22:6
**level** [22] - 9:2, 9:18, 10:2, 10:6, 10:13, 19:1, 24:15, 35:10, 38:1, 38:9, 38:13, 38:16, 38:19, 39:4, 39:5, 39:8, 39:12, 39:21, 39:25, 40:2, 46:25, 52:17
**levels** [9] - 10:5, 22:9, 27:20, 38:5, 39:5, 39:6, 39:7, 60:8
**liberty** [3] - 50:3, 55:16, 56:5
**license** [1] - 48:8
**licenses** [1] - 46:17
**lie** [6] - 65:4, 65:5, 65:8, 65:11, 82:6
**lied** [5] - 31:6, 34:12, 79:18, 79:19, 81:24
**lieu** [1] - 7:17
**life** [18] - 46:15, 47:8, 54:17, 55:15, 56:5, 62:13, 62:14, 62:20, 62:21, 62:22, 65:3, 65:9, 65:10, 65:11, 77:6, 86:2, 86:17
**light** [5] - 21:3, 21:20, 23:4, 33:17, 59:19
**likely** [2] - 43:9, 55:7
**limit** [1] - 26:3
**limited** [2] - 68:5, 68:7
**line** [1] - 55:20
**lines** [3] - 20:21, 20:24, 21:5
**Linn** [1] - 30:8
**liquidity** [1] - 42:21
**list** [2] - 15:3, 87:23
**listened** [2] - 52:10, 80:20
**living** [4] - 46:24, 48:5, 55:18, 81:15
**loan** [6] - 26:2, 31:8, 31:20, 31:24, 46:20, 53:20
**loaned** [3] - 34:13, 34:15, 34:17

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 108 of 116

**loans** [11] - 25:13, 25:17, 25:20, 25:22, 26:25, 27:10, 31:13, 31:15, 31:16, 34:23, 46:17
**local** [1] - 51:14
**locked** [3] - 21:14, 28:3, 28:4
**longer** [1] - 13:2
**look** [7] - 21:9, 39:11, 78:25, 82:17, 82:23, 95:19, 96:2
**looking** [4] - 21:20, 83:12, 83:15, 94:17
**looks** [2] - 83:3, 83:5
**Los** [10] - 15:16, 23:24, 47:9, 47:11, 47:16, 48:12, 49:18, 55:19, 56:22, 59:1
**loss** [33] - 4:19, 6:3, 6:10, 6:23, 9:6, 9:8, 20:5, 20:6, 21:4, 25:9, 25:11, 25:13, 25:19, 25:21, 25:24, 26:3, 26:4, 26:17, 26:20, 26:23, 27:3, 27:15, 27:17, 27:18, 31:3, 31:4, 31:9, 31:10, 32:6, 32:9, 32:12, 39:5
**lost** [3] - 21:15, 41:8, 41:17
**love** [2] - 65:7
**lucky** [1] - 34:22

**M**

**machine** [1] - 1:20
**made** [15] - 21:25, 31:7, 37:10, 41:11, 44:19, 50:4, 50:15, 51:11, 73:4, 73:11, 75:21, 79:9, 83:15, 83:17, 91:5
**mailed** [1] - 7:23
**mailing** [1] - 92:23
**maintain** [1] - 38:23
**maintained** [2] - 37:20, 77:5
**maintaining** [2] - 40:7, 40:9
**make** [27] - 7:21, 13:5, 13:21, 13:22, 14:2, 14:9, 16:21, 17:8, 18:3, 18:22, 36:15, 41:14, 42:23, 43:25, 60:6, 60:17, 70:24, 72:19, 72:20, 73:8, 73:9, 76:5, 76:6, 91:14, 92:11, 94:9
**makes** [4] - 22:11, 40:25, 74:10, 76:24
**making** [4] - 3:14, 5:15, 41:12, 57:11
**malevolent** [1] - 56:8
**Mallory** [6] - 52:7, 52:9, 52:12, 54:23, 72:23, 80:19
**man** [7] - 25:19, 47:6, 67:24, 68:1, 79:18, 80:2, 80:10
**management** [2] - 60:8, 72:6
**manager** [4] - 47:20, 70:23, 71:3, 72:16
**mandated** [1] - 20:18
**mandatory** [9] - 3:24, 4:9,
8:24, 22:4, 38:22, 42:6, 53:3, 53:7, 90:12
**manipulate** [1] - 80:9
**manipulated** [1] - 79:17
**manner** [2] - 25:23, 74:19
**manual** [1] - 38:19
**March** [1] - 46:19
**marginal** [1] - 68:12
**marginalized** [1] - 63:2
**married** [1] - 61:23
**Marshal** [1] - 93:2
**material** [2] - 25:14, 25:16
**Matt** [2] - 71:25, 72:13
**matter** [3] - 3:2, 3:4, 15:19, 22:3, 52:7, 53:1, 57:18, 70:1
**matters** [3] - 31:2, 52:15, 83:20
**MATTHEW** [1] - 1:6
**Matthew** [3] - 3:3, 48:14, 70:2
**maximum** [2] - 4:8, 54:7
**mean** [4] - 27:14, 31:5, 54:14, 74:21
**meaning** [1] - 29:13
**means** [11] - 9:11, 21:19, 22:14, 28:24, 29:13, 38:4, 39:3, 39:15, 39:24, 58:19, 71:14
**meant** [2] - 6:5, 94:6
**measure** [1] - 37:4
**medicated** [1] - 30:1
**medication** [5] - 29:25, 30:5, 36:5, 49:21, 55:14
**medium** [1] - 66:18
**member** [2] - 22:25, 74:24
**members** [1] - 44:23
**memo** [11] - 11:4, 18:9, 25:15, 26:6, 26:13, 27:16, 29:11, 43:8, 68:15, 68:22, 93:22
**memorandum** [6] - 10:23, 11:1, 23:18, 55:4, 55:9, 70:19
**men** [1] - 46:11
**mental** [18] - 5:8, 7:5, 22:25, 23:7, 30:3, 30:6, 36:25, 37:15, 49:20, 49:22, 55:17, 61:7, 63:9, 63:13, 81:9, 82:25, 87:4
**mentally** [4] - 30:5, 63:6, 66:1, 74:5
**mention** [1] - 76:16
**mentioned** [6] - 10:16, 18:16, 87:11, 87:22, 88:22, 94:21
**mere** [1] - 78:16
**mess** [1] - 75:21
**messes** [1] - 73:22
**met** [1] - 7:25
**Mexico** [1] - 46:12
**microphone** [1] - 71:18
**microphones** [1] - 24:23
**middle** [3] - 24:1, 53:14, 54:8

**MidoTV** [2] - 15:6, 15:10
**might** [6] - 8:13, 27:7, 51:25, 53:23, 55:15, 62:8
**militate** [1] - 65:24
**million** [1] - 4:7
**millions** [1] - 53:21
**mind** [4] - 22:23, 58:2, 86:22, 91:23
**mindset** [1] - 55:2
**minimize** [1] - 62:7
**minimum** [3] - 22:4, 53:3, 53:7
**minor** [2] - 87:7, 93:21
**minute** [1] - 96:1
**misplaced** [2] - 6:4, 6:14
**missed** [1] - 39:24
**missing** [1] - 79:14
**misstated** [1] - 19:22
**Misérables** [1] - 77:10
**mitigating** [1] - 54:5
**modern** [4] - 46:2, 47:4, 47:13, 56:6
**modest** [1] - 42:24
**moment** [7] - 7:1, 17:11, 32:15, 75:14, 91:5, 93:16, 95:19
**monetary** [1] - 65:18
**money** [28] - 20:15, 26:20, 27:1, 28:2, 31:8, 32:3, 34:14, 34:17, 46:21, 55:6, 58:14, 58:16, 58:20, 58:21, 59:13, 60:5, 63:4, 63:7, 63:16, 71:14, 72:1, 73:8, 73:9, 73:11, 73:14, 78:14, 92:3
**monies** [1] - 26:21
**monitoring** [1] - 49:24
**monthly** [2] - 92:11, 92:13
**months** [16] - 10:15, 10:17, 38:21, 40:4, 50:20, 68:16, 68:17, 68:21, 69:7, 69:13, 69:14, 69:18, 89:12, 89:18, 89:19
**moral** [2] - 77:24, 78:1
**morning** [6] - 47:16, 47:19, 71:20, 71:21, 74:6, 74:7
**Moskal** [1] - 23:14
**most** [14] - 22:15, 23:1, 33:19, 34:18, 37:9, 43:4, 51:22, 56:20, 57:22, 67:16, 80:20, 80:21, 86:2, 93:25
**mostly** [5] - 65:11, 67:17, 67:24, 67:25
**motion** [6] - 10:4, 10:23, 11:3, 11:5, 93:8, 96:14
**motions** [5] - 24:18, 30:10, 30:12, 45:7, 45:16
**motivation** [1] - 62:10
**motive** [1] - 77:3
**move** [3] - 31:2, 41:2, 93:6
**moved** [1] - 86:17
**moves** [1] - 17:4

**moving** [2] - 11:13, 11:23
**MR** [69] - 4:15, 5:13, 5:16, 5:21, 6:13, 7:12, 7:15, 7:23, 10:1, 11:12, 11:15, 11:22, 11:25, 12:2, 13:4, 13:12, 13:20, 14:13, 15:9, 15:12, 16:3, 16:12, 16:19, 16:22, 17:1, 17:6, 17:10, 17:12, 17:15, 18:4, 18:6, 19:7, 19:9, 19:12, 19:23, 24:9, 24:20, 24:24, 25:5, 25:9, 39:1, 39:13, 39:22, 40:7, 40:13, 41:4, 41:22, 41:25, 42:4, 45:11, 45:13, 46:1, 56:19, 70:10, 70:16, 71:13, 75:14, 93:5, 93:12, 93:16, 93:20, 94:15, 95:21, 95:24, 96:6, 96:11, 96:20, 97:16, 97:18
**multiple** [1] - 21:19
**Murray** [5] - 1:19, 1:23, 98:2, 98:12, 98:12
**must** [10] - 4:9, 39:4, 50:16, 52:24, 90:12, 90:22, 91:1, 92:11, 92:18, 92:21
**myriad** [1] - 53:13

**N**

**name** [27] - 18:10, 20:25, 28:17, 31:12, 31:21, 32:23, 34:14, 37:8, 42:10, 42:13, 47:17, 47:22, 48:2, 48:14, 51:2, 51:5, 51:6, 51:7, 52:5, 57:12, 57:15, 62:14, 62:22, 67:10, 71:6, 78:17, 79:7
**names** [1] - 20:13
**narrative** [3] - 5:6, 6:20, 7:3
**narrow** [1] - 23:25
**Nathan** [36] - 3:8, 5:18, 8:10, 11:10, 12:1, 13:1, 13:10, 16:17, 16:20, 17:5, 19:2, 19:8, 19:24, 24:8, 24:22, 30:25, 35:9, 40:11, 41:1, 41:21, 42:3, 44:11, 44:20, 45:12, 45:17, 56:17, 69:20, 70:14, 71:12, 75:13, 75:17, 82:17, 93:15, 93:19, 96:19, 97:15
**NATHAN** [40] - 1:12, 5:21, 6:13, 7:12, 7:15, 7:23, 11:12, 11:15, 12:2, 13:12, 16:19, 16:22, 17:6, 17:10, 17:12, 17:15, 18:4, 18:6, 19:9, 24:9, 24:20, 24:24, 25:5, 25:9, 40:13, 41:22, 41:25, 42:4, 45:13, 56:19, 71:13, 75:14, 93:16, 93:20, 94:15, 95:21, 95:24, 96:6, 96:20, 97:16
**National** [1] - 3:15
**national** [1] - 47:18
**nature** [5] - 46:8, 52:20, 53:16, 54:1, 88:16

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 109 of 116

**near** [1] - 54:3
**necessary** [3] - 28:15, 61:10, 76:13
**need** [7] - 13:7, 14:5, 18:17, 73:9, 73:10, 95:10
**needed** [1] - 12:16
**needs** [2] - 90:7, 96:2
**negative** [1] - 78:15
**net** [1] - 44:7
**never** [8] - 50:19, 71:24, 75:22, 75:23, 82:23, 84:17, 84:18, 84:19
**nevertheless** [1] - 37:20
**New** [1] - 46:12
**next** [9] - 46:14, 48:20, 49:4, 49:12, 49:22, 52:8, 56:18, 97:3, 97:5
**night** [1] - 72:10
**nightmare** [1] - 48:17
**nobody** [1] - 76:20
**noise** [1] - 61:25
**none** [1] - 83:20
**nonexclusive** [1] - 21:10
**nonexhaustive** [1] - 87:23
**nonexistent** [1] - 25:18
**noninstitution** [1] - 92:15
**nonmaterial** [1] - 53:20
**nonmonetary** [2] - 65:16, 65:18
**nonviolent** [4] - 56:3, 63:23, 64:1, 84:8
**Northern** [4] - 46:22, 91:6, 92:22, 97:2
**NORTHERN** [1] - 1:1
**notably** [1] - 22:15
**note** [11] - 11:4, 13:15, 29:1, 29:4, 29:7, 43:6, 56:1, 65:14, 68:23, 88:1, 91:16
**noted** [4] - 5:22, 20:12, 23:17, 54:18
**notes** [3] - 6:1, 28:17, 63:18
**nothing** [7] - 23:22, 50:24, 51:7, 61:1, 74:2, 74:25, 76:5
**notice** [2] - 97:2, 97:4
**notify** [1] - 92:21
**novel** [1] - 56:6
**November** [7] - 15:3, 15:4, 15:5, 15:22, 49:12
**nowhere** [1] - 81:5
**nuanced** [1] - 37:2
**number** [12] - 4:17, 12:7, 12:21, 15:20, 17:7, 18:16, 20:22, 27:4, 27:20, 48:3, 72:6, 87:19
**numbers** [1] - 18:12
**numerous** [2] - 50:6, 60:23

## O

**object** [1] - 6:9

**objected** [6] - 5:5, 5:25, 6:19, 18:18, 31:3, 90:20
**objected-to** [1] - 90:20
**objecting** [5] - 4:19, 4:23, 5:2, 6:10, 34:25
**objection** [30] - 6:4, 6:5, 6:15, 6:16, 6:17, 6:25, 7:14, 7:16, 7:17, 12:1, 14:11, 16:17, 16:24, 17:1, 27:4, 30:22, 32:8, 32:10, 32:12, 34:7, 34:9, 35:2, 35:6, 35:15, 36:21, 36:23, 37:22, 59:19, 85:22, 96:11
**objections** [14] - 4:17, 5:11, 5:15, 5:22, 7:10, 8:1, 35:1, 38:23, 40:8, 40:9, 85:11, 85:12, 90:15, 90:18
**objects** [2] - 35:16, 85:10
**obligations** [3] - 92:10, 92:17, 92:24
**oblique** [1] - 23:14
**obstruction** [2] - 79:24, 89:1
**obstructive** [1] - 82:3
**obtain** [1] - 4:25
**obtained** [11] - 22:14, 25:14, 27:9, 31:12, 31:24, 32:3, 34:24, 46:15, 46:20, 81:14, 81:15
**obtaining** [2] - 35:4, 86:18
**obvious** [3] - 76:25, 77:4, 84:10
**obviously** [3] - 42:19, 62:23, 68:12
**occasion** [1] - 53:19
**occurred** [3] - 20:19, 21:22, 77:6
**occurs** [1] - 92:23
**October** [2] - 15:21, 49:9
**OF** [2] - 1:1, 1:3
**offender** [1] - 64:2
**offenders** [1] - 66:17
**offense** [44] - 6:21, 9:2, 9:18, 9:19, 10:6, 10:13, 19:1, 20:9, 24:1, 24:15, 25:12, 27:19, 35:10, 38:1, 38:9, 38:10, 38:13, 38:16, 38:19, 39:4, 39:5, 39:12, 39:21, 39:25, 40:2, 46:9, 53:12, 53:17, 53:23, 54:1, 54:9, 54:18, 56:2, 56:3, 58:4, 58:12, 60:20, 62:11, 62:12, 63:23, 65:15, 76:17, 85:11, 88:16
**offenses** [1] - 52:21
**Office** [4] - 1:10, 1:12, 59:2, 92:19
**office** [25] - 4:20, 5:2, 7:23, 8:21, 9:2, 9:4, 9:8, 9:9, 9:12, 9:15, 9:20, 10:7, 10:9, 59:5, 59:9, 59:21, 59:24, 60:9, 64:10, 64:11, 64:14, 64:24, 66:5, 66:15, 95:22
**office's** [1] - 21:3

**Officer** [2] - 3:9, 40:15, 93:13
**officer** [1] - 48:23
**OFFICER** [2] - 40:16, 93:14
**officers** [6] - 48:4, 48:7, 48:10, 79:19, 81:25, 82:2
**officials** [1] - 51:12
**offset** [1] - 26:21
**often** [1] - 63:14
**oftentimes** [1] - 78:14
**old** [1] - 86:2
**omission** [1] - 18:9
**once** [1] - 60:22
**one** [21] - 13:15, 19:15, 19:18, 19:19, 24:23, 26:16, 28:6, 31:1, 41:5, 44:11, 50:9, 53:18, 66:4, 66:10, 67:16, 70:11, 70:12, 75:14, 75:20, 87:17, 93:16
**ones** [1] - 15:10
**only** [18] - 18:9, 22:21, 27:1, 46:2, 48:17, 48:18, 53:2, 54:22, 58:14, 72:12, 77:9, 78:9, 79:11, 82:7, 83:6, 91:11, 95:9
**onward** [1] - 56:9
**open** [4] - 3:1, 38:18, 60:24, 61:2
**opened** [1] - 48:1
**openings** [1] - 14:23
**operating** [1] - 62:1
**opinion** [1] - 78:21
**opportunity** [7] - 4:13, 5:19, 8:5, 13:23, 63:12, 70:14, 75:6
**opposite** [2] - 77:18, 77:23
**option** [1] - 4:5
**orchestration** [1] - 37:18
**ordeal** [1] - 49:16
**order** [3] - 24:10, 81:19, 92:2
**ordered** [11] - 43:23, 49:19, 49:20, 51:4, 51:5, 52:4, 89:24, 90:22, 91:1, 91:14, 92:9
**Ordered** [1] - 1:21
**organ** [1] - 22:25
**original** [1] - 35:5
**originally** [5] - 5:12, 6:25, 7:11, 18:6, 94:16
**otherwise** [12] - 17:15, 17:19, 19:17, 23:9, 33:7, 34:25, 35:11, 67:18, 78:20, 81:18, 90:17, 90:19
**ought** [2] - 26:17, 94:18
**ounces** [1] - 73:18
**outcome** [1] - 62:11
**outreaches** [1] - 80:12
**outside** [1] - 45:8
**outstanding** [1] - 93:3
**over** [16] - 10:10, 16:2, 21:21, 21:24, 37:6, 46:20, 50:19, 56:11, 72:9, 73:16, 81:11, 82:2
**overrule** [2] - 35:1, 85:22

**overruled** [1] - 90:16
**overruling** [9] - 32:11, 34:7, 34:8, 35:6, 35:14, 36:20, 36:23, 37:22, 85:12
**overstate** [1] - 53:19
**overstates** [3] - 27:18, 64:16, 65:1
**owe** [2] - 67:12, 92:16
**owed** [4] - 26:18, 67:10, 78:10, 92:10
**owes** [1] - 43:21
**own** [32] - 8:6, 25:18, 27:10, 27:11, 28:1, 28:5, 28:13, 31:13, 40:24, 51:4, 51:7, 51:10, 51:11, 52:3, 52:4, 54:20, 58:9, 60:19, 61:7, 62:21, 63:15, 64:8, 71:25, 72:1, 73:8, 73:14, 81:15, 84:24, 88:24

## P

**PAGE** [1] - 2:2
**page** [7] - 5:25, 8:22, 17:12, 49:10, 55:8, 56:24, 57:11
**pages** [1] - 20:1
**paid** [11] - 25:20, 33:20, 41:19, 41:23, 42:7, 44:22, 47:4, 67:21, 67:23, 90:25, 91:18
**pain** [2] - 66:6, 76:8
**PAMurrayReporting@ gmail.com** [1] - 1:25
**pandemic** [2] - 30:10, 30:14
**paper** [2] - 28:18, 57:4
**papers** [1] - 50:12
**paragraph** [45] - 4:18, 4:22, 5:1, 5:8, 6:5, 6:9, 6:14, 6:21, 6:23, 6:24, 7:2, 7:3, 7:7, 7:8, 7:14, 8:1, 10:10, 19:16, 19:19, 27:5, 28:18, 32:9, 32:10, 32:12, 35:15, 36:21, 36:22, 36:24, 37:22, 38:1, 38:2, 38:3, 38:7, 51:20, 85:14, 85:20, 87:2, 87:15, 89:22, 89:23, 90:1, 93:23
**paragraphs** [10] - 5:5, 5:6, 6:1, 6:19, 32:11, 34:9, 76:22, 85:11, 87:14, 90:14
**paraphrase** [1] - 59:23
**parents** [2] - 54:20, 86:4
**parole** [1] - 3:23
**parsing** [1] - 27:8
**part** [10] - 13:15, 14:1, 33:19, 36:5, 43:23, 70:18, 71:8, 82:2, 83:25, 84:12
**participating** [1] - 3:8
**particular** [3] - 23:22, 25:2, 36:18
**particularly** [1] - 23:9
**parties** [9] - 10:22, 12:6,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 110 of 116

12:15, 12:17, 18:18, 24:18, 45:8, 98:7, 98:8
**parts** [1] - 52:18
**party** [2] - 66:18, 90:18
**passages** [1] - 25:2
**past** [6] - 5:24, 73:11, 75:19, 76:5, 87:10
**Patrice** [5] - 1:19, 1:23, 98:2, 98:12, 98:12
**pattern** [1] - 77:8
**pause** [1] - 55:23
**pay** [27] - 7:5, 13:25, 20:15, 25:22, 26:21, 26:25, 27:1, 40:22, 40:23, 43:15, 44:3, 44:4, 44:8, 44:10, 44:14, 44:16, 45:1, 67:10, 71:1, 90:22, 91:1, 91:10, 91:13, 92:4, 92:18, 95:12
**payable** [2] - 91:3, 91:16
**payment** [2] - 91:4, 92:20
**payments** [3] - 91:5, 92:11, 92:13
**PD** [2] - 83:5
**Peczuh** [1] - 14:15
**penalties** [1] - 40:18
**people** [14] - 20:13, 21:12, 30:10, 36:6, 51:24, 67:13, 72:3, 74:10, 74:11, 74:20, 75:22, 85:3
**People** [1] - 15:20
**per** [2] - 42:10, 92:15
**percent** [1] - 92:13
**perhaps** [10] - 6:4, 27:7, 34:16, 36:11, 37:2, 55:17, 58:4, 59:15, 87:16
**peril** [1] - 52:3
**period** [1] - 88:8
**periods** [1] - 23:19
**permission** [1] - 46:7
**perpetuate** [1] - 77:19
**persisted** [1] - 51:24
**person** [9] - 74:5, 74:6, 75:25, 76:1, 76:2, 77:12, 80:13, 80:25
**personal** [6] - 5:6, 5:24, 7:3, 54:2, 96:4, 96:8
**personally** [2] - 3:7, 63:22
**perspective** [1] - 25:7
**pertinent** [1] - 11:20
**phone** [1] - 72:10
**phrase** [1] - 23:9
**physical** [8] - 5:7, 7:1, 9:17, 23:5, 23:7, 36:8, 38:8, 39:18
**place** [5] - 4:3, 73:2, 88:11, 98:3, 98:5
**placed** [1] - 90:8
**plain** [2] - 29:10, 29:13
**plainly** [1] - 30:4
**Plaintiff** [1] - 1:4
**plaintiff's** [1] - 83:23
**plan** [1] - 91:4

**planning** [1] - 13:2
**played** [2] - 64:10, 64:14
**playing** [1] - 27:8
**plea** [3] - 10:1, 23:5, 93:5
**plead** [1] - 60:1
**pleadings** [3] - 10:21, 11:11, 11:20
**pleas** [1] - 50:22
**pled** [10] - 3:12, 3:13, 3:17, 9:19, 16:6, 25:16, 38:10, 54:11, 67:21, 67:23
**plus** [1] - 68:18
**PO** [2] - 1:24, 98:13
**pocket** [2] - 26:21, 72:4
**point** [26] - 17:22, 19:13, 19:15, 19:18, 21:9, 23:16, 37:6, 37:18, 41:6, 41:9, 43:14, 44:13, 44:20, 45:3, 45:6, 45:20, 49:24, 50:24, 51:6, 52:3, 54:23, 62:9, 70:12, 70:18, 71:9, 86:15
**pointed** [1] - 12:15
**pointing** [2] - 39:10, 62:8
**points** [5] - 10:12, 19:21, 20:4, 23:25, 67:7
**Police** [1] - 15:16
**police** [4] - 51:14, 58:11, 64:7, 85:18
**politicians** [1] - 60:8
**politics** [1] - 60:18
**poor** [4] - 26:2, 26:4, 66:1, 66:3
**portion** [5] - 44:10, 44:16, 45:1, 92:16, 92:24
**portions** [5] - 6:20, 12:10, 20:10, 37:11, 82:21
**pose** [1] - 55:25
**posed** [4] - 29:18, 76:19, 84:4, 84:10
**position** [11] - 9:23, 13:10, 39:21, 42:22, 43:11, 43:15, 47:1, 83:21, 86:19, 86:23, 96:10
**positive** [1] - 44:7
**possess** [1] - 22:13
**possessions** [1] - 47:13
**possibility** [1] - 3:23
**possible** [2] - 4:8, 27:12
**possibly** [1] - 46:3
**post** [3] - 21:2, 86:21, 94:20
**post-sentencing** [1] - 94:20
**power** [4] - 64:18, 64:21, 64:23, 64:24
**practically** [1] - 58:20
**preferable** [1] - 55:18
**preferred** [1] - 55:15
**prejudices** [1] - 52:11
**preliminary** [2] - 49:9, 71:3
**preparation** [1] - 10:19
**preponderance** [2] - 18:21, 34:4

**present** [1] - 3:7
**presentence** [14] - 3:10, 5:12, 7:11, 7:22, 8:5, 8:9, 8:16, 10:20, 14:18, 16:5, 20:10, 51:20, 90:2, 90:18
**president** [1] - 72:6
**presumably** [1] - 64:19
**pretend** [2] - 65:5, 65:6
**pretense** [1] - 48:9
**pretty** [2] - 68:23, 72:5
**prevent** [1] - 77:15
**previous** [1] - 15:7
**price** [1] - 85:6
**priceless** [5] - 84:22, 85:4, 85:6, 85:9, 88:11
**primary** [2] - 56:8, 66:15
**printed** [1] - 96:4
**prison** [9] - 3:23, 4:2, 30:11, 50:21, 68:1, 69:19, 76:1, 77:13
**prisons** [2] - 30:14, 36:14
**Prisons** [5] - 89:17, 90:5, 92:12, 94:10, 94:12
**probable** [1] - 83:12
**probably** [4] - 45:19, 67:2, 69:12, 93:21
**PROBATION** [2] - 40:16, 93:14
**probation** [26] - 4:5, 4:20, 5:2, 8:21, 9:2, 9:4, 9:7, 9:9, 9:12, 9:15, 9:20, 10:7, 10:9, 21:3, 28:18, 51:19, 51:22, 52:4, 56:24, 57:5, 57:7, 57:19, 85:13, 85:15, 85:16, 85:24
**Probation** [3] - 3:9, 28:21, 92:19
**problem** [3] - 32:14, 57:1, 96:7
**proceed** [1] - 14:12
**Proceedings** [1] - 97:21
**proceedings** [7] - 3:1, 49:5, 50:11, 55:3, 56:22, 98:4, 98:5
**produced** [1] - 22:15
**proffer** [10] - 13:5, 14:10, 14:11, 14:14, 16:18, 16:21, 17:18, 17:23, 59:3, 59:18
**proffering** [1] - 16:23
**proficient** [1] - 47:3
**Program** [1] - 92:12
**prohibition** [1] - 28:19
**prong** [1] - 57:25
**prongs** [1] - 82:18
**pronounce** [1] - 70:7
**proof** [1] - 78:18
**proper** [2] - 29:16, 79:15
**properly** [6] - 28:4, 28:8, 42:18, 42:19, 64:12, 80:16
**prosecute** [5] - 48:24, 49:1, 79:18, 83:7, 85:18
**prosecuted** [12] - 32:22, 37:14, 37:21, 48:22, 49:6,

77:13, 79:4, 82:23, 83:11, 83:24, 84:17
**prosecuting** [1] - 66:20
**prosecution** [6] - 49:8, 77:1, 77:16, 77:21, 78:7, 80:9
**prosecutor** [3] - 57:1, 57:7, 78:23
**prosecutors** [8] - 64:22, 66:19, 78:22, 79:11, 79:19, 80:15, 81:1, 83:10
**prospered** [1] - 46:23
**protagonist** [1] - 77:11
**protect** [1] - 30:14
**protecting** [1] - 29:23
**protested** [1] - 49:8
**protracted** [1] - 22:24
**prove** [2] - 18:20, 61:10
**proved** [1] - 67:19
**proverbial** [1] - 19:25
**provide** [2] - 17:18, 78:18
**provided** [3] - 10:24, 11:1, 65:10
**provides** [1] - 55:22
**provision** [1] - 35:7
**provisions** [2] - 35:24, 88:18
**proximity** [1] - 90:5
**PSR** [9] - 6:1, 7:24, 8:1, 27:5, 28:18, 37:12, 82:21, 90:21
**psychological** [2] - 88:10, 88:12
**psychotropic** [7] - 22:23, 29:25, 36:5, 49:21, 51:1, 55:13, 84:19
**Public** [2] - 1:12, 3:8
**public** [2] - 60:15, 62:25
**pulse** [1] - 60:17
**punishable** [4] - 3:21, 3:22, 3:24, 59:7
**punishing** [1] - 68:13
**punishment** [5] - 55:6, 56:12, 68:3, 68:8, 85:3
**purchase** [1] - 88:2
**purpose** [5] - 18:2, 25:1, 25:10, 57:15, 79:21
**purposes** [1] - 36:19
**pursuant** [4] - 10:1, 90:2, 92:20, 93:5
**pursue** [4] - 16:15, 83:7, 92:19, 95:14
**pursuing** [1] - 16:10
**pursuit** [1] - 92:7
**put** [4] - 72:17, 77:22, 85:6, 86:10
**putting** [1] - 73:13

**Q**

**qualify** [2] - 22:24, 53:20
**quarter** [1] - 92:16
**questions** [5] - 8:13, 8:16,

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 111 of 116

47:24, 55:14, 97:12
**quickly** [1] - 83:4
**quite** [3] - 18:2, 69:22, 87:12
**quote** [13] - 48:23, 48:24, 48:25, 50:6, 50:10, 55:12, 55:13, 59:9, 59:14, 70:22

## R

**racked** [1] - 78:17
**racking** [1] - 79:8
**Rainford** [1] - 23:12
**raise** [4] - 93:21, 94:6, 94:19, 95:4
**raised** [1] - 65:23
**range** [18] - 10:14, 10:16, 10:17, 38:20, 40:3, 43:3, 43:5, 45:9, 53:15, 54:4, 54:8, 67:2, 68:16, 68:20, 69:15, 89:5, 89:10, 89:11
**Rapids** [6] - 1:10, 1:12, 1:18, 1:24, 97:3, 98:14
**rare** [2] - 67:14, 67:15
**rather** [1] - 77:4
**reached** [1] - 89:5
**read** [1] - 25:15
**reading** [1] - 43:12
**real** [7] - 31:23, 34:17, 52:5, 59:20, 61:4, 64:12, 64:25
**realistically** [2] - 16:1, 82:24
**realized** [1] - 34:19
**realizes** [1] - 83:3
**really** [11] - 29:17, 54:25, 57:18, 57:20, 67:1, 71:22, 81:25, 82:18, 83:4, 88:9
**reason** [6] - 28:4, 41:22, 57:19, 61:12, 69:13, 72:12
**reasonably** [1] - 26:6
**reasons** [2] - 26:3, 54:6
**rebuttal** [1] - 70:12
**receive** [3] - 4:6, 9:24, 49:21
**received** [4] - 11:18, 12:5, 15:14, 65:22
**recent** [1] - 21:20
**recently** [1] - 70:24
**recess** [3] - 69:24, 69:25, 97:20
**reckless** [1] - 35:18
**recognize** [1] - 69:12
**recognized** [1] - 82:13
**recognizes** [2] - 54:10, 69:1
**recommend** [1] - 90:4
**recommendation** [1] - 54:7
**record** [22] - 7:21, 26:14, 29:17, 33:12, 33:18, 36:17, 37:4, 42:12, 42:14, 49:14, 51:19, 57:12, 58:18, 61:14, 67:9, 78:11, 79:1, 83:12, 86:19, 90:24, 91:17, 98:5
**recovery** [1] - 72:6

**red** [1] - 62:2
**redact** [2] - 96:6, 96:8
**Redacted** [1] - 1:6
**redacted** [1] - 96:15
**reduced** [1] - 39:5
**reducing** [1] - 29:5
**reduction** [6] - 9:21, 9:25, 10:3, 38:11, 38:14, 39:20
**refer** [1] - 15:14
**reference** [4] - 6:14, 23:14, 26:12, 57:3
**referenced** [1] - 14:18
**references** [1] - 59:3
**referred** [1] - 52:7
**referring** [2] - 59:12, 60:25
**reflect** [8] - 42:5, 42:17, 43:7, 90:24, 91:17, 94:3, 94:10
**reflected** [18] - 14:22, 37:10, 76:22, 77:24, 81:5, 82:1, 82:4, 85:14, 87:2, 87:13, 87:15, 88:9, 88:25, 89:3, 89:22, 92:5, 94:4
**reflects** [2] - 42:12, 77:23
**regard** [1] - 55:21
**regarding** [1] - 7:18, 24:25, 30:19, 30:21, 41:15, 42:4, 42:8, 44:1, 45:15, 65:19, 85:11
**regardless** [1] - 28:21, 62:10, 85:16, 85:23
**reimbursement** [1] - 91:8
**reimbursing** [1] - 43:18
**reiterate** [1] - 71:8
**reject** [3] - 78:4, 79:10, 80:20
**related** [5] - 14:24, 22:7, 93:24, 94:12, 98:6
**relates** [1] - 41:13
**relating** [1] - 14:18
**relative** [3] - 25:12, 54:14, 98:7
**release** [9] - 4:3, 7:6, 7:8, 21:21, 87:5, 90:8, 90:9, 90:12, 92:17
**released** [1] - 50:23
**relentless** [1] - 51:9
**relevant** [2] - 11:10, 11:20
**relief** [1] - 47:11
**rely** [3] - 58:24, 58:25, 59:3
**remain** [2] - 39:12, 92:24
**remainder** [1] - 29:9, 42:8
**remained** [2] - 47:8, 64:4
**remaining** [4] - 8:15, 43:24, 70:4, 93:7
**remains** [4] - 10:12, 19:20, 51:2, 93:3
**remanded** [3] - 48:12, 63:19, 93:1
**remarkable** [3] - 52:8, 80:17, 80:23
**remarkably** [2] - 50:12, 86:16

**remember** [3] - 27:9, 61:11, 74:16
**remembered** [1] - 50:16
**reminding** [1] - 94:7
**remorse** [4] - 54:21, 67:22, 69:4, 69:9
**remotely** [1] - 46:24
**remove** [1] - 96:17
**repaid** [1] - 31:16
**repay** [1] - 31:14
**repeat** [4] - 20:2, 29:11, 66:4, 67:8
**repeated** [1] - 51:1
**repeatedly** [8] - 49:8, 50:4, 51:11, 54:16, 56:10, 70:17, 79:20, 81:24
**replete** [1] - 96:12
**report** [26] - 3:10, 4:14, 5:12, 5:20, 6:7, 7:11, 7:22, 8:5, 8:9, 8:13, 8:16, 10:21, 14:18, 15:17, 16:5, 20:10, 50:15, 51:16, 51:17, 51:21, 58:11, 64:7, 70:24, 86:6, 90:2, 90:18
**reported** [4] - 1:19, 58:14, 64:7, 98:3
**reporter** [2] - 14:8, 56:16
**REPORTER** [1] - 24:22
**Reporter** [4] - 1:20, 1:23, 98:2, 98:13
**reporter's** [1] - 14:5
**reports** [6] - 51:11, 72:19, 72:20, 73:4, 73:5
**represent** [2] - 50:10, 97:9
**representation** [1] - 43:18
**represented** [2] - 3:5, 3:7
**request** [1] - 21:14, 41:11, 41:12, 42:8, 43:2, 49:1, 58:5, 69:17, 91:19, 91:21, 94:3
**requested** [1] - 50:9
**requesting** [1] - 50:6
**requests** [1] - 53:14
**require** [1] - 25:16
**required** [1] - 25:6
**requirement** [4] - 28:15, 39:24, 58:1, 92:25
**residence** [1] - 92:23
**resistance** [2] - 11:2, 11:6
**resisted** [1] - 30:12
**resolve** [1] - 12:22
**resolved** [3] - 14:6, 18:17, 45:5
**resources** [1] - 92:15
**respect** [12] - 14:14, 15:12, 19:24, 20:5, 20:21, 22:15, 22:17, 23:2, 23:17, 24:4, 41:9, 78:21
**respectfully** [6] - 39:1, 50:1, 53:25, 54:13, 55:1, 56:1
**respecting** [4] - 24:21, 24:25, 30:7, 66:1
**respond** [2] - 62:10, 70:14

**response** [1] - 59:24
**Responsibility** [1] - 92:12
**responsible** [6] - 9:21, 10:5, 31:24, 38:12, 76:3, 82:9
**responsible** [15] - 26:8, 66:16, 66:20, 78:10, 81:7, 81:8, 84:15, 86:18, 91:7, 92:3, 92:6, 94:23, 95:2, 95:11, 95:17
**responsive** [2] - 24:5, 70:18
**rest** [4] - 14:8, 24:5, 41:5, 77:6
**restitution** [29] - 14:1, 18:24, 19:4, 21:14, 24:16, 40:19, 40:20, 41:8, 41:15, 41:17, 42:1, 42:5, 42:6, 42:8, 42:14, 43:13, 43:20, 43:23, 43:24, 44:1, 67:10, 67:22, 67:23, 91:14, 91:18, 91:20, 91:22, 92:3, 92:8
**restore** [2] - 30:1, 83:14
**restored** [1] - 66:2
**restraint** [13] - 7:2, 9:17, 23:5, 30:21, 38:8, 39:7, 39:18, 65:19, 65:22, 88:2, 88:3, 88:7, 88:13
**rests** [1] - 30:20
**result** [10] - 20:19, 22:20, 27:25, 32:21, 33:1, 33:9, 33:15, 34:6, 60:20, 92:1
**resulted** [1] - 61:6
**resulting** [1] - 39:3
**resume** [2] - 31:23, 69:23
**retrieve** [1] - 26:16
**return** [1] - 26:1
**returned** [1] - 42:11
**revealed** [1] - 49:25
**review** [4] - 4:13, 5:19, 8:9, 25:6
**reviewed** [4] - 10:19, 10:21, 13:18, 59:9
**reviewing** [1] - 41:7
**revoked** [1] - 51:22
**rewarded** [1] - 80:19
**rhetorical** [1] - 76:19
**rich** [1] - 81:13
**rid** [2] - 72:14, 72:15
**risk** [10] - 5:3, 27:2, 29:15, 30:18, 35:18, 35:25, 36:13, 65:17, 84:5, 84:10
**risked** [1] - 65:16
**risks** [1] - 36:12
**RMR** [2] - 1:23, 98:12
**road** [4] - 47:8, 78:1, 78:3
**role** [2] - 64:10, 65:1
**roles** [1] - 64:13
**room** [1] - 88:5
**roughly** [3] - 44:23, 68:17, 69:15
**rule** [4] - 19:3, 21:4, 31:1, 41:1

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR     Document 69-1     Filed 02/19/25     Page 112 of 116

**ruled** [1] - 90:19
**ruling** [3] - 41:14, 43:25, 45:3
**rulings** [4] - 37:24, 38:24, 40:11
**run** [2] - 31:22, 34:23
**running** [1] - 52:17
**ruthless** [2] - 52:19, 54:16
**ruthlessness** [2] - 48:19, 50:1

## S

**S.E** [3] - 1:10, 1:12, 1:18
**Sachs** [2] - 14:21, 14:25
**sad** [1] - 63:11
**safe** [1] - 36:14
**saga** [1] - 51:8
**salary** [1] - 42:24
**San** [1] - 72:7
**sanity** [1] - 83:14
**schedule** [1] - 92:20
**school** [4] - 74:15, 74:16, 86:15
**score** [4] - 10:11, 19:15, 19:19, 19:21
**scored** [1] - 10:9
**screen** [1] - 56:21
**scrolling** [1] - 56:24
**seal** [1] - 94:16
**sealed** [1] - 94:18
**searched** [1] - 82:4
**Second** [1] - 23:12
**second** [6] - 27:15, 48:21, 51:16, 51:17, 64:9, 72:5
**secondary** [1] - 66:12
**Section** [3] - 3:17, 3:19, 76:15, 89:9
**section** [18] - 4:21, 4:24, 5:4, 5:25, 9:3, 9:5, 9:10, 9:13, 9:16, 9:22, 9:25, 35:4, 38:11, 38:14, 39:2, 68:23, 88:1, 90:3
**sections** [1] - 19:3
**Security** [3] - 46:16, 48:3, 48:8
**security** [2] - 47:23, 90:6
**see** [7] - 12:16, 17:22, 32:14, 74:1, 95:23, 96:2
**seek** [2] - 79:21, 80:9
**seeking** [4] - 21:1, 21:5, 32:13, 33:7
**seem** [1] - 23:1
**self** [2] - 17:21, 86:6
**self-explanatory** [1] - 17:21
**self-report** [1] - 86:6
**semantic** [1] - 27:8
**sense** [8] - 14:9, 18:22, 27:7, 27:13, 40:25, 76:25, 81:23, 92:7
**sent** [4] - 12:25, 59:10, 74:1,

83:13
**sentence** [46] - 3:25, 4:2, 4:24, 8:25, 22:4, 22:6, 28:19, 29:5, 43:2, 45:6, 45:8, 45:15, 45:23, 46:9, 48:16, 52:24, 53:3, 53:6, 53:8, 53:10, 53:14, 54:3, 54:6, 54:7, 54:10, 56:12, 57:2, 57:3, 57:23, 58:6, 67:2, 68:16, 68:21, 69:17, 70:7, 75:8, 76:12, 88:19, 89:13, 89:14, 89:21, 94:2, 94:9, 96:23, 96:24, 97:6
**sentenced** [1] - 93:23
**SENTENCING** [1] - 1:15
**sentencing** [19] - 3:4, 10:22, 10:25, 11:4, 14:7, 25:15, 26:6, 26:13, 43:8, 50:12, 53:5, 53:25, 55:3, 68:14, 69:24, 70:3, 76:14, 94:20
**Sentencing** [2] - 21:11, 52:23
**separate** [1] - 33:3
**September** [1] - 51:16
**series** [2] - 6:6, 47:23
**serious** [6] - 5:4, 22:3, 22:17, 29:15, 35:19, 53:1
**seriousness** [3] - 25:11, 27:18, 87:25
**serve** [3] - 93:24, 94:4, 94:8
**served** [8] - 4:2, 69:16, 89:20, 89:22, 89:25, 90:11, 94:12, 94:14
**services** [1] - 97:7
**set** [5] - 5:24, 89:23, 90:1, 90:13, 98:9
**seven** [1] - 3:13
**seven-count** [1] - 3:13
**Seventh** [2] - 1:10, 1:17
**several** [1] - 78:25
**shame** [2] - 80:15, 80:23
**share** [1] - 56:21
**sharp** [1] - 47:11
**Sheriff's** [1] - 29:22
**shift** [1] - 56:6
**shocks** [1] - 50:1
**short** [1] - 63:8
**Shorthand** [2] - 1:19, 98:2
**shorthand** [2] - 1:20, 98:4
**should** [23] - 9:24, 11:3, 22:5, 27:16, 27:19, 39:6, 43:4, 46:8, 53:6, 55:23, 58:25, 59:2, 59:17, 60:4, 60:7, 62:23, 64:11, 64:12, 67:5, 79:5, 82:5, 92:2, 95:11
**show** [9] - 33:18, 34:4, 35:22, 40:22, 40:23, 47:10, 55:2, 73:12, 74:19
**showed** [2] - 50:2, 73:17
**showing** [2] - 36:4, 36:17
**shown** [1] - 54:21
**shows** [6] - 20:23, 20:24,

21:6, 31:16, 78:8, 85:20
**shred** [2] - 51:3, 78:11
**sic** [1] - 32:10
**sides** [2] - 12:7, 79:14
**significant** [2] - 48:16, 82:9
**significantly** [1] - 43:9
**similarly** [1] - 55:16
**simply** [13] - 7:17, 20:9, 20:12, 26:1, 26:12, 30:16, 32:5, 35:10, 35:13, 42:14, 66:24, 77:5, 79:6
**single** [1] - 78:19
**sisters** [1] - 74:22
**sit** [1] - 17:19
**situation** [5] - 18:1, 22:20, 22:23, 31:17, 49:24
**situations** [1] - 22:5
**six** [1] - 61:24
**six-figure** [1] - 61:24
**skills** [2] - 65:5, 65:6
**smoke** [1] - 62:2
**snapshots** [1] - 47:12
**Social** [3] - 46:15, 48:2, 48:7
**societal** [1] - 64:18
**society** [4] - 47:14, 52:9, 55:25, 85:2
**society's** [2] - 47:5, 52:11
**sole** [1] - 79:21
**solely** [2] - 58:24, 84:14
**somebody** [11] - 31:18, 34:19, 36:15, 78:10, 78:17, 79:7, 80:20, 83:1, 83:18, 88:6, 88:12
**Somebody's** [1] - 78:16
**somebody's** [2] - 77:1, 88:4
**somehow** [2] - 20:8, 33:24, 34:2, 35:24, 81:20, 86:16
**someone** [8] - 30:5, 47:17, 47:20, 62:6, 62:14, 67:14, 67:15, 70:25
**something** [13] - 12:15, 12:19, 25:25, 28:10, 28:11, 29:6, 33:3, 71:24, 73:21, 82:25, 86:12, 88:4
**sometimes** [1] - 78:15
**son's** [1] - 18:10
**soon** [1] - 46:13
**sophisticated** [6] - 9:11, 38:4, 39:3, 39:15, 39:24, 52:19
**sorry** [5] - 8:23, 13:10, 19:17, 76:7, 76:8
**sort** [3] - 23:21, 42:10, 68:9
**sought** [3] - 56:10, 77:20, 78:9
**sounds** [1] - 8:4
**speak** [9] - 13:19, 28:14, 29:17, 70:5, 70:6, 71:17, 71:18, 75:6, 88:15
**special** [6] - 4:10, 41:24, 90:13, 90:15, 90:23, 90:25

**specialized** [1] - 47:4
**specific** [1] - 68:6
**specified** [1] - 90:17
**speculates** [1] - 55:7
**spelled** [1] - 15:20
**spend** [2] - 12:13, 76:17
**spent** [2] - 43:7, 49:22
**spilled** [1] - 19:25
**spoke** [1] - 48:4
**spoken** [1] - 67:8
**spot** [1] - 68:24
**spot-on** [1] - 68:24
**squandered** [1] - 63:11
**staff** [1] - 44:23
**stages** [1] - 37:13
**stamps** [1] - 73:16
**stand** [3] - 26:2, 26:4, 95:18
**stand-in** [2] - 26:2, 26:4
**standard** [1] - 90:13
**standards** [1] - 47:5
**standing** [1] - 69:5
**start** [2] - 14:9, 62:16
**started** [1] - 73:15
**starts** [1] - 46:4
**State** [6] - 15:25, 16:7, 20:17, 59:7, 91:24, 98:2
**state** [10] - 15:19, 25:10, 30:9, 37:3, 48:11, 51:4, 63:18, 63:21, 86:17, 95:15
**statement** [6] - 3:14, 3:22, 13:17, 15:14, 41:13, 43:25, 45:4, 53:12, 53:18, 53:23
**statements** [6] - 9:1, 50:4, 51:12, 82:1, 83:14, 83:17
**STATES** [2] - 1:1, 1:3
**states** [1] - 39:2
**States** [19] - 1:11, 3:3, 3:5, 3:6, 3:9, 3:16, 3:19, 4:12, 10:2, 70:2, 76:15, 89:9, 90:22, 91:5, 92:19, 92:21, 93:2, 93:6, 93:11
**statute** [7] - 3:21, 25:15, 29:1, 43:12, 43:19, 52:24, 53:2
**statutes** [1] - 4:5
**statutorily** [1] - 20:18
**statutory** [6] - 10:17, 53:14, 53:25, 54:4, 54:7, 54:8
**steal** [9] - 28:1, 55:6, 58:14, 58:15, 60:5, 63:3, 63:7, 63:16, 71:4
**stealing** [3] - 53:21, 54:20, 83:1
**stemmed** [1] - 61:6
**step** [2] - 66:21, 80:5
**still** [14] - 13:10, 16:1, 16:10, 20:16, 28:10, 37:20, 39:16, 49:18, 69:5, 70:8, 82:13, 92:10, 92:16, 94:2
**stipulations** [1] - 13:8
**stole** [5] - 61:13, 61:15,

71:24, 71:25, 76:23
**stolen** [2] - 51:15, 52:6
**straightforward** [1] - 17:16
**streets** [5] - 23:24, 47:9, 55:18, 73:20
**strikes** [1] - 54:8
**strive** [1] - 36:15
**struck** [1] - 51:25
**struggles** [4] - 37:1, 47:11, 81:9, 82:25
**studied** [1] - 46:6
**stuff** [2] - 73:25, 74:4
**subject** [5] - 35:23, 41:15, 45:3, 45:7, 83:22
**subjected** [1] - 84:19
**submitted** [2] - 12:7, 43:7
**subparts** [2] - 11:17, 15:8
**subpoena** [1] - 42:11
**subsection** [1] - 7:19
**substance** [2] - 87:7, 87:9
**substantial** [4] - 4:22, 21:7, 21:18, 27:21, 27:23, 28:22, 32:14, 33:5, 33:21, 33:25, 34:5, 35:25, 36:8, 44:15, 65:16
**substantially** [2] - 27:18, 87:24
**subtly** [1] - 68:9
**successful** [1] - 47:6
**suffer** [1] - 28:22
**suffered** [6] - 6:3, 32:16, 33:14, 34:5, 81:11, 92:1
**suffering** [2] - 36:25, 56:9
**sufficient** [6] - 8:9, 33:13, 44:7, 44:10, 44:15, 76:13
**sufficiently** [1] - 65:20
**suggest** [2] - 50:1, 55:1
**suggesting** [1] - 55:16
**suicide** [2] - 87:1, 87:6
**Suite** [1] - 1:12
**summarized** [1] - 10:9
**supervised** [6] - 4:3, 7:6, 7:7, 87:5, 90:9, 90:12
**supervision** [2] - 90:13, 92:18
**supplemented** [1] - 11:8
**support** [4] - 42:14, 55:21, 61:24, 65:9
**supported** [1] - 60:13
**suppose** [2] - 29:19, 29:20
**supposedly** [1] - 26:19
**Supreme** [1] - 21:25
**sure** [12] - 6:8, 14:2, 17:8, 18:2, 18:3, 18:5, 24:10, 24:24, 30:4, 30:15, 83:16, 94:9
**Sure** [1] - 59:24
**susceptible** [1] - 23:10
**suspect** [1] - 48:24
**sustaining** [1] - 32:8
**sympathy** [1] - 63:1
**system** [22] - 26:9, 49:3,

55:11, 63:24, 77:19, 79:13, 79:18, 79:20, 79:23, 80:2, 80:4, 80:5, 80:8, 80:9, 80:11, 80:24, 81:4, 84:1, 84:13, 88:24, 89:2
**systems** [4] - 47:2, 62:2, 62:3, 86:20

## T

**table** [2] - 14:16, 71:17
**tail** [2] - 57:3
**tale** [1] - 46:5
**talk** [7] - 7:1, 57:21, 68:2, 72:2, 72:21, 91:4, 96:22
**talked** [5] - 61:21, 72:3, 72:7, 72:22, 73:4
**talking** [7] - 28:14, 61:8, 61:9, 66:7, 66:8, 76:17, 78:23
**talks** [4] - 6:5, 23:7, 69:3, 69:4
**taxpayers'** [1] - 44:13
**teacher** [1] - 42:24
**technically** [1] - 85:24
**technology** [1] - 47:2
**telephone** [2] - 3:8, 48:5
**tell** [3] - 12:6, 75:6, 86:13
**teller** [1] - 83:3
**telling** [3] - 22:8, 52:16, 86:12
**tells** [1] - 49:10
**tentative** [1] - 45:2
**term** [9] - 3:25, 4:3, 69:18, 89:17, 89:18, 89:24, 89:25, 90:9
**terms** [4] - 21:7, 21:19, 28:14, 30:23
**terrible** [1] - 48:15
**testified** [2] - 71:3, 71:5
**testify** [3] - 14:15, 14:16, 71:4
**testimony** [1] - 13:7
**testing** [1] - 87:9
**thankfully** [1] - 52:7
**THE** [94] - 1:1, 1:1, 1:16, 3:2, 4:16, 5:14, 5:17, 5:22, 6:18, 7:13, 7:20, 8:3, 8:7, 8:8, 8:11, 8:12, 8:14, 8:15, 8:17, 8:18, 10:4, 11:13, 11:16, 11:19, 11:23, 12:1, 12:3, 12:6, 13:9, 13:13, 13:21, 15:7, 15:11, 15:24, 16:9, 16:14, 16:20, 16:25, 17:4, 17:8, 17:11, 17:13, 17:20, 18:5, 18:14, 19:8, 19:10, 19:17, 24:7, 24:13, 25:4, 25:8, 30:25, 39:10, 39:14, 39:23, 40:9, 40:14, 40:17, 41:14, 41:24, 42:2, 43:20, 45:12, 45:14, 56:14, 56:17, 69:20, 70:1, 70:13, 71:11, 71:15, 71:20,

75:4, 75:16, 75:18, 76:11, 93:8, 93:13, 93:15, 93:18, 94:5, 95:6, 95:23, 96:1, 96:7, 96:14, 96:21, 97:11, 97:12, 97:14, 97:15, 97:17, 97:19
**theft** [32] - 3:18, 22:2, 28:12, 33:3, 33:10, 33:16, 34:2, 34:5, 36:1, 37:19, 50:8, 50:15, 53:1, 55:9, 58:11, 58:15, 59:6, 59:16, 59:18, 59:23, 60:1, 60:2, 61:17, 64:13, 66:6, 66:13, 70:24, 73:2, 77:3, 81:10, 84:7, 86:4
**theme** [1] - 20:7
**theory** [1] - 33:8
**thereafter** [1] - 46:13
**thereby** [1] - 31:23
**they've** [2] - 84:10, 84:11
**thief** [2] - 66:14, 70:17
**thievery** [2] - 55:8, 73:6
**thinking** [3] - 21:11, 55:20, 55:23
**thinks** [1] - 84:23
**Third** [1] - 1:12
**third** [2] - 10:2, 66:18
**third-party** [1] - 66:18
**thorough** [1] - 52:12
**thoughts** [1] - 88:21
**thousand** [1] - 23:21
**three** [3] - 18:7, 46:14, 84:25
**tied** [1] - 36:2
**Tim** [1] - 3:6
**timely** [1] - 25:23
**TIMOTHY** [1] - 1:10
**title** [1] - 42:18
**Title** [4] - 3:16, 3:19, 76:15, 89:8
**titled** [1] - 42:19
**titles** [1] - 46:17
**today** [13] - 8:15, 13:11, 14:16, 15:15, 16:4, 50:13, 55:4, 55:10, 55:23, 70:17, 75:24, 76:1, 97:13
**today's** [2] - 10:19, 11:21
**told** [10] - 28:10, 30:2, 47:20, 52:5, 63:14, 70:23, 72:15, 73:17, 86:9
**tomorrow** [1] - 75:25
**took** [6] - 20:16, 21:13, 31:20, 50:21, 50:23, 72:14
**tools** [1] - 56:11
**toothless** [1] - 28:20
**top** [4] - 43:3, 54:3, 54:10, 83:16
**total** [10] - 4:8, 4:11, 10:6, 10:13, 38:16, 38:19, 39:20, 40:2, 44:19, 89:14
**totally** [1] - 54:23
**touch** [2] - 62:23, 73:14
**tougher** [1] - 47:7
**toward** [3] - 29:17, 32:19,

56:23
**track** [1] - 18:22
**tracking** [1] - 17:9
**Trade** [4] - 72:20, 72:24, 73:1, 73:3
**tragedy** [1] - 46:4
**transactions** [1] - 31:16
**transcribed** [1] - 98:4
**Transcript** [3] - 1:6, 1:21, 1:21
**transcript** [3] - 56:21, 83:15, 98:5
**transcripts** [2] - 15:18, 49:5
**transfer** [2] - 22:13, 33:24
**transferred** [2] - 42:20
**transient** [1] - 47:8
**transparently** [1] - 95:1
**travesty** [1] - 91:23
**treat** [1] - 30:6
**treatment** [2] - 87:4, 87:9
**tried** [7] - 58:13, 58:14, 60:5, 63:3, 63:7, 63:10, 72:2
**tries** [1] - 50:13
**true** [9] - 8:6, 27:2, 46:5, 48:10, 61:1, 61:3, 61:18, 62:25, 98:5
**truly** [1] - 28:12
**trust** [2] - 80:3, 80:4
**trustworthy** [1] - 47:6
**truth** [1] - 52:17
**try** [7] - 30:10, 62:6, 63:16, 74:7, 74:8, 74:18, 85:18
**trying** [12] - 28:1, 51:21, 51:23, 55:6, 71:5, 71:24, 73:7, 73:8, 73:22, 73:24, 74:17, 94:24
**Tuesday** [1] - 47:15
**turn** [10] - 8:19, 19:4, 24:15, 24:17, 26:10, 27:4, 27:24, 40:17, 54:22, 68:14
**turned** [1] - 56:5
**turning** [7] - 27:21, 28:24, 29:15, 42:16, 43:6, 65:13, 85:25
**two** [7] - 3:12, 18:11, 19:20, 47:11, 57:22, 60:5, 82:18

## U

**U.S** [6] - 1:10, 14:21, 18:8, 28:21, 58:15, 66:23
**UIHC** [2] - 62:2, 86:20
**UIHC's** [1] - 62:3
**ultimate** [1] - 45:6
**ultimately** [1] - 43:11
**ultra** [4] - 21:22, 22:10, 29:2, 35:7
**unable** [4] - 40:22, 40:23, 47:25
**unclear** [1] - 26:15

*Contact Patrice Murray at PAMurrayReporting@gmail.com*
*for a complete copy of the transcript.*
Case 2:23-cr-01020-CJW-MAR    Document 69-1    Filed 02/19/25    Page 114 of 116

**uncomfortable** [1] - 43:17
**uncover** [1] - 80:17
**uncovered** [1] - 80:22
**under** [39] - 4:5, 4:21, 4:24, 5:4, 7:19, 9:3, 9:5, 9:10, 9:13, 9:16, 9:21, 9:25, 10:3, 26:2, 26:10, 28:15, 29:1, 31:21, 32:6, 34:14, 34:17, 35:3, 35:13, 35:17, 35:20, 37:17, 38:11, 38:14, 46:18, 46:23, 47:3, 48:13, 62:14, 65:25, 77:17, 88:3, 88:19, 94:8, 94:16
**undercut** [1] - 22:6
**undergone** [1] - 51:25
**underlying** [2] - 15:19, 78:7
**undermine** [1] - 65:8
**undermined** [1] - 22:6
**understandable** [1] - 17:22
**understate** [1] - 87:24
**understood** [1] - 42:2
**undertook** [1] - 26:24
**undisputed** [1] - 20:10
**undoubtedly** [1] - 29:3
**unemployed** [1] - 33:19
**unfortunately** [1] - 36:13
**unhoused** [6] - 25:19, 33:18, 62:25, 63:3, 63:4, 63:6
**union** [3] - 6:11, 9:1, 53:12
**Union** [1] - 3:15
**unions** [10] - 6:2, 6:22, 20:8, 25:13, 27:6, 27:13, 31:5, 31:6, 32:20, 46:21
**unique** [6] - 31:11, 32:7, 66:21, 68:3, 68:6, 76:18
**uniquely** [1] - 66:19
**unit** [1] - 29:19
**UNITED** [2] - 1:1, 1:3
**United** [19] - 1:11, 3:3, 3:5, 3:6, 3:9, 3:16, 3:19, 4:12, 10:2, 70:2, 76:15, 89:9, 90:22, 91:5, 92:18, 92:21, 93:1, 93:6, 93:11
**unlawful** [4] - 25:25, 30:21, 88:3, 88:13
**unless** [3] - 12:15, 16:24, 90:17
**unlikely** [1] - 43:14
**unobjected** [2] - 37:11, 82:21
**unobjected-to** [2] - 37:11, 82:21
**unpaid** [1] - 92:24
**unprecedented** [2] - 21:8, 22:18
**unrebuttable** [1] - 82:8
**unredacted** [1] - 49:5
**unrelated** [1] - 62:6
**unseal** [1] - 96:14
**unsealed** [1] - 96:5
**unsealing** [1] - 96:11

**unsupported** [1] - 58:18
**unusual** [4] - 32:7, 76:18, 81:23, 89:6
**up** [30] - 3:22, 4:4, 4:7, 7:24, 12:18, 20:1, 21:2, 21:14, 28:3, 28:4, 37:6, 38:18, 39:16, 44:20, 47:9, 50:21, 63:21, 73:22, 74:7, 74:14, 77:6, 78:17, 79:8, 81:12, 85:17, 93:22, 94:5, 97:5
**upbringing** [1] - 86:14
**update** [1] - 43:9
**updates** [3] - 18:1, 50:6, 50:9
**upset** [1] - 74:24
**upward** [15] - 7:18, 11:5, 11:6, 30:24, 65:13, 65:15, 65:21, 65:24, 68:25, 69:12, 87:20, 87:23, 89:4, 89:10, 89:14
**urged** [1] - 87:19
**use** [15] - 4:24, 9:11, 22:13, 24:23, 34:23, 51:4, 51:5, 52:4, 56:10, 57:12, 79:20, 81:12, 81:20, 85:3, 87:10
**used** [7] - 5:23, 42:23, 46:14, 62:20, 62:21, 77:19, 80:8
**uses** [1] - 57:15
**using** [13] - 1:20, 28:17, 31:12, 32:3, 32:23, 34:19, 47:20, 48:2, 48:25, 70:25, 78:17, 79:7, 81:4
**usual** [1] - 38:18

## V

**vacate** [1] - 59:25
**vacating** [1] - 59:22
**valid** [2] - 62:9, 62:10
**Valjean** [2] - 77:11, 77:13
**value** [5] - 53:19, 68:4, 68:6, 85:2, 88:11
**variance** [1] - 10:23, 11:3, 11:6, 45:10, 45:16, 65:14, 67:4, 69:12, 89:10
**variant** [2] - 48:14, 51:6
**various** [2] - 14:20, 46:18
**vary** [4] - 24:18, 69:6, 89:4, 89:13
**VAVRICEK** [31] - 1:10, 4:15, 5:13, 5:16, 10:1, 11:22, 11:25, 13:4, 13:20, 14:13, 15:9, 15:12, 16:3, 16:12, 17:1, 19:7, 19:12, 19:23, 39:1, 39:13, 39:22, 40:7, 41:4, 45:11, 46:1, 70:10, 70:16, 93:5, 93:12, 96:11, 97:18
**Vavricek** [25] - 3:6, 4:12, 9:23, 11:19, 13:3, 13:9, 13:13, 14:9, 16:25, 18:18, 19:6, 19:10, 24:7, 38:23, 39:11, 40:5, 41:3, 45:5, 45:24, 56:14,

70:8, 71:16, 93:3, 96:10, 97:17
**vehicle** [1] - 93:25
**vehicles** [4] - 42:19, 76:23, 76:24
**version** [1] - 96:16
**versus** [2] - 3:3, 70:2
**very** [17] - 5:17, 7:20, 8:18, 15:11, 17:20, 23:25, 32:7, 34:11, 34:24, 47:4, 54:3, 75:21, 79:24, 83:3, 85:12, 86:13, 86:16
**via** [1] - 48:4
**vice** [1] - 72:6
**victim** [108] - 6:6, 6:21, 6:25, 7:2, 9:14, 9:17, 12:8, 12:14, 13:14, 13:16, 13:17, 15:13, 15:15, 16:1, 16:4, 16:11, 20:8, 21:13, 21:17, 22:21, 23:2, 23:6, 27:12, 27:14, 30:19, 31:5, 32:16, 32:21, 32:23, 33:4, 33:9, 33:14, 33:17, 34:1, 34:2, 34:3, 34:4, 35:19, 35:25, 36:4, 36:9, 36:17, 36:23, 36:24, 37:2, 37:5, 37:13, 37:14, 37:20, 37:21, 37:23, 38:6, 39:7, 39:17, 41:10, 41:13, 41:16, 42:9, 43:22, 43:25, 44:1, 45:4, 45:21, 50:7, 70:4, 70:8, 71:16, 77:21, 78:4, 78:9, 78:12, 79:2, 79:5, 79:10, 79:22, 80:6, 81:4, 81:9, 81:11, 81:19, 81:20, 82:12, 82:22, 83:11, 83:13, 83:21, 83:24, 84:3, 84:6, 84:9, 84:16, 84:17, 84:22, 85:1, 85:5, 85:9, 85:15, 85:19, 85:21, 85:23, 86:24, 91:15, 91:24, 92:4, 95:11, 95:16
**victim's** [12] - 14:19, 20:25, 33:16, 62:20, 77:3, 81:8, 81:13, 81:18, 81:20, 81:21, 91:19
**victimization** [1] - 36:2
**victimize** [1] - 86:24
**victimized** [1] - 80:7
**victims** [6] - 6:23, 27:13, 34:11, 34:12, 34:21, 34:24
**Victor** [2] - 77:9, 77:24
**videos** [9] - 12:8, 12:9, 12:11, 12:14, 12:16, 12:20, 25:1, 25:3, 25:6
**view** [7] - 32:5, 35:9, 35:21, 37:1, 44:11, 79:24, 88:25
**violation** [2] - 3:16, 3:19
**violence** [2] - 36:13, 52:1
**violent** [1] - 56:4
**vires** [4] - 21:22, 22:10, 29:2, 35:7
**vlog** [1] - 15:5
**vlogs** [6] - 15:1, 23:17,

23:19, 23:20, 23:21, 47:10
**voice** [1] - 80:21
**volition** [1] - 51:11
**VS** [1] - 1:5
**vulnerability** [1] - 23:13
**vulnerable** [13] - 6:24, 9:14, 23:2, 23:6, 30:19, 36:22, 36:24, 37:3, 37:20, 37:23, 38:6, 39:7, 39:17

## W

**W's** [16] - 46:13, 46:14, 46:18, 46:23, 47:11, 48:2, 48:17, 49:16, 50:7, 50:17, 51:8, 51:22, 52:12, 55:16, 56:9
**wages** [2] - 41:8, 41:17
**waived** [1] - 92:25
**walk** [4] - 47:7, 76:1, 76:2, 79:6
**walked** [1] - 47:17
**walks** [2] - 78:16, 82:24
**want** [20] - 12:11, 12:19, 14:1, 17:8, 18:23, 19:1, 24:13, 40:17, 41:9, 56:20, 57:21, 67:8, 68:2, 71:1, 75:24, 76:4, 76:17, 78:18, 82:20, 96:1
**wanted** [11] - 12:17, 24:3, 24:10, 41:5, 48:22, 70:23, 71:7, 71:8, 76:24, 93:21, 95:4
**wants** [2] - 83:1, 83:7
**warrant** [1] - 48:16
**warrants** [1] - 54:3
**watch** [1] - 12:9
**watched** [1] - 12:10
**watching** [1] - 12:13
**Watts** [1] - 22:11
**Waverly** [1] - 7:24
**ways** [2] - 53:13, 80:12
**weapon** [1] - 88:5
**weaponization** [1] - 88:23
**weaponized** [1] - 79:12
**week** [2] - 43:8, 44:21
**weight** [3] - 60:4, 60:7, 86:11
**weird** [1] - 31:11
**welfare** [2] - 73:15, 73:17
**whatsoever** [6] - 55:21, 78:5, 78:6, 78:8, 78:19, 81:6
**WHEREOF** [1] - 98:9
**whole** [4] - 57:18, 74:24, 75:20, 76:9
**wife** [7] - 42:23, 61:23, 61:25, 65:7, 74:22, 86:7, 86:13
**WILLIAMS** [1] - 1:16
**Williams** [1] - 98:3
**Wisconsin** [5] - 46:24, 48:6, 48:8, 51:12, 51:14
**wish** [3] - 13:14, 16:21, 70:9

**wishes** [10] - 13:19, 13:20, 44:2, 45:21, 45:22, 48:24, 70:5, 70:6, 70:15, 71:16

**withdraw** [3] - 7:16, 58:20, 71:14

**withdrawal** [1] - 23:5

**withdrawing** [1] - 7:14

**withdraws** [1] - 30:22

**WITNESS** [1] - 98:9

**witnesses** [3] - 12:24, 13:2, 13:11

**wonder** [1] - 94:24

**word** [1] - 27:7

**words** [9] - 23:21, 27:8, 58:24, 58:25, 59:8, 60:4, 60:13, 66:4, 76:7

**work** [13] - 5:9, 27:10, 65:4, 65:6, 67:18, 73:7, 73:8, 73:23, 80:18, 80:19, 80:23, 80:24, 81:16

**working** [3] - 46:12, 46:24, 52:2

**works** [1] - 74:5

**worse** [3] - 56:3, 67:2, 95:9

**worst** [1] - 49:17

**worth** [5] - 23:21, 44:7, 61:19, 67:6, 68:13

**write** [2] - 61:12, 64:20

**writes** [9] - 27:22, 28:16, 28:25, 58:3, 58:17, 64:3, 64:18, 65:3, 65:14

**writing** [2] - 43:8, 60:3

**written** [5] - 13:16, 15:13, 67:8, 97:1, 97:4

**wrongdoer** [1] - 55:5

**wrongful** [3] - 77:16, 80:9, 86:20

**wrongfully** [2] - 79:3, 79:4

**wrote** [8] - 26:5, 27:16, 29:9, 29:11, 30:9, 30:12, 43:16, 68:22

**Y**

**year** [2] - 4:4, 90:10

**years** [25] - 3:23, 4:4, 37:6, 48:18, 50:21, 52:24, 53:10, 53:15, 56:12, 57:7, 57:9, 63:1, 67:6, 68:1, 68:18, 68:19, 78:24, 78:25, 81:12, 86:1, 89:14, 89:18, 90:9, 90:10

**yesterday** [2] - 18:11, 75:25

**YouTube** [4] - 12:7, 12:14, 25:1, 25:3

**YouTuber** [1] - 63:10

**Z**

**zero** [2] - 19:19, 53:10